# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: SMITTY'S/CAM2 303 TRACTOR HYDRAULIC FLUID MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | \|    MDL No. 2936 <br> \| <br> \|    Master Case No. 4:20-MD-02936-SRB <br> \| <br> \|    ALL ACTIONS |

ALLICKS EXCAVATING,                )
ELLEN ALLICKS,                     )
WILLIAM ANDERSON,                  )
ROGER BIAS,                        )
TERRY BLACKMORE,                   )
SAMUEL BLAKENEY,                   )
GEORGE BOLLIN,                     )
KYLE BOYD,                         )
SEAN BUFORD,                       )
STEVE BURGDORF,                    )
TODD CARUSILLO,                    )
DOUGLAS CLOUGH,                    )
CLINTON CURRY,                     )
SAWYER DEAN,                       )
DANIEL DENTON,                     )
KIRK EGNER,                        )
KYLE FELDKAMP,                     )
NORMAN FOHNE,                      )
DUANE FOSDICK,                     )
ROBERT GOSCHE,                     )
PATRICK GISI,                      )
ARNO GRAVES,                       )          JURY TRIAL(S) DEMANDED
H & S FARMS, INC.                  )
MICHAEL HAMM,                      )
ALAN HARGRAVES,                    )
JEFFERY HARRISON,                  )
BRIAN HAYES,                       )
FRANK JAMES,                       )
WILLIAM JAMES,                     )
JACK KIMMICH,                      )
JASON KLINGENBERG,                 )
JUSTIN LEMONDS,                    )
JOSH LESKO,                        )

LARRY WYATT LOEFFLER,                    )
JACOB MABIE,                             )
KYLE MINICH,                             )
RON NASH,                                )
BRYAN NELMS,                             )
MATT ORTNER,                             )
RICKY PECK,                              )
MIKE PING,                               )
STANLEY RICHARDSON,                      )
WAYNE RUPE,                              )
ADAM SEVY,                               )
ANTHONY SHAW,                            )
RUSTY SHAW,                              )
JOHN SIGMON,                             )
JAY SIMPSON,                             )
DONALD SNYDER,                           )
CHARLES STRICKLAND,                      )
TIM SULLIVAN,                            )
TRACY SULLIVAN,                          )
JERRY TERRY,                             )
TWIN MILLS TIMBER & TIE CO. INC.,        )
STEVE UPCHURCH,                          )
RANDY VILELA,                            )
ROSS WATERMAN,                           )
DALE WENDT,                              )
WILLIAM WHITE,                           )
WINDMILL ACRES, INC.                     )
DWAYNE WURTH,  and,                      )
TERRY ZORNES,                            )
                                         )
        Plaintiffs, on behalf of themselves )
        and all others similarly situated, )
                                         )
        v.                               )
                                         )
SMITTY'S SUPPLY, INC.,                   )
CAM2 INTERNATIONAL, LLC,                 )
ATWOOD DISTRIBUTING, LP,                 )
TRACTOR SUPPLY COMPANY,                  )
RURAL KING ADMINISTRATION, INC., )
RURAL KING DISTRIBUTION &                )
MANAGEMENT, INC.,                        )
RURAL KING HOLDING CO., and              )
ORSCHELN FARM AND HOME, LLC              )
d/b/a ORSCHELN FARM AND HOME)            )
                Defendants.              )

2

## CONSOLIDATED AMENDED COMPLAINT

COME NOW Plaintiffs Allicks Excavating, Ellen Allicks, William Anderson, Roger Bias, Terry Blackmore, Samuel Blakeney, George Bollin, Kyle Boyd, Sean Buford, Steve Burgdorf, Todd Carusillo, Douglas Clough, Clinton Curry, Sawyer Dean, Daniel Denton, Kirk Egner, Kyle Feldkamp, Norman Fohne, Duane Fosdick, Patrick Gisi, Robert Gosche, Arno Graves, H & S Farms, Inc., Michael Hamm, Alan Hargraves, Jeffery Harrison, Brian Hayes, Frank James, William James, Jack Kimmich, Jason Klingenberg, Justin Lemonds, Josh Lesko, Larry Wyatt Loeffler, Jacob Mabie, Kyle Minich, Ron Nash, Bryan Nelms, Matt Ortner, Ricky Peck, Mike Ping, Stanley Richardson, Wayne Rupe, Adam Sevy, Anthony Shaw, Rusty Shaw, John Sigmon, Jay Simpson, Donald Snyder, Charles Strickland, Tim Sullivan, Tracy Sullivan, Jerry Terry, Twin Mills Timber & Tie Co., Inc., Steve Upchurch, Randy Vilela, Ross Waterman, Dale Wendt, William White, Windmill Acres, Inc., Dwayne Wurth, and Terry Zornes, on behalf of themselves and all others similarly situated, and for their Consolidated Amended Complaint state and allege as follows:

## NATURE OF THIS CONSOLIDATED COMPLAINT

1.	This Consolidated Amended Complaint ("CAC") sets forth the putative class and individual claims subsumed within this multidistrict litigation proceeding for claims relating to Smitty's/Cam2 303 Tractor Hydraulic Fluid Marketing, Sales Practices, and Product Liability Litigation ("Smitty's/Cam2 303 THF MDL"). This CAC is filed pursuant to the Court's Orders of July 8, 2020 (Doc. 25) and August 3, 2020 (Doc. 46).

2.	For the class and individual claims from the following cases which were transferred into this Smitty's/Cam2 303 THF MDL, the transferor forums' choice-of-law principles will apply with respect to each class and individual Plaintiff's claims, notwithstanding this filing of this CAC:

3

(a) *Zornes, et al. v. Smitty's Supply, Inc., et al.*
Case No. 19-cv-2257-JAR-TJJ (D. Kan.)
(Kansas Purchases)

(b) *Wurth, et al. v. Smitty's Supply, Inc., et al.*
Case No. 19-cv-00092-TBR (W.D. Kent.)
(Kentucky Purchases)

(c) *Buford v. Smitty's Supply, Inc.*, et al.
Case No. 1:19-cv-00082-BRW ( E.D. Ark.)
(Arkansas Purchases)

(d) *Mabie v. Smitty's Supply, Inc., et al.*
Case No. 4:19-cv-03308 (S.D. Tex.)
(Texas Purchases)

(e) *Blackmore, et al. v. Smitty's Supply, Inc., et al.*,
Case No. 5:19-cv-04052 (N.D. Iowa)
(Iowa Purchases)

(f) *Fosdick, et al. v. Smitty's Supply, Inc., et al.*
Case No. 2:19-cv-01850-MCE-DMC (E.D. Cal.)
(California Purchases)

(g) *Klingenberg v. Smitty's Supply, Inc., et al.*
Case No. 19-cv-2684-ECT/ECW (D. Minn.)
(Minnesota Purchases)

(h) *Graves, et al. v. Smitty's Supply, Inc., et al.*
Case No. 34:19-cv-05089-SRB (W.D.Mo.)
(Multi-State Class for Purchases in 42 States)

(i) *Feldkamp, et al. v. Smitty's Supply, Inc., et al.*
Case No. 2:20-cv-02177-CSB-EIL
(Nationwide and Illinois Purchases)

3.    For the class and individual claims which are being directly filed through this CAC, the choice-of-law principles of the forum where those claims would have originally been filed were it not for the direct filing in this Smitty's/Cam2 303 THF MDL, will apply as follows:

(a)  Alabama:  Plaintiff Brian Nelms and the Alabama Purchases Sub-Class;

(b) Colorado:  Plaintiffs Ross Waterman and the Colorado Purchases Sub-Class;

4

(c) Connecticut: Plaintiff Todd Carusillo and the Connecticut Purchases Sub-Class;

(d) Florida:  Plaintiff Charles Strickland and the Florida Purchases Sub-Class;

(e) Georgia:  Plaintiffs Anthony Shaw, Rusty Shaw, and the Georgia Purchases Sub-Class;

(f) Indiana:  Plaintiff Frank James and the Indiana Purchases Sub-Class;

(g) Michigan:  Plaintiff Douglas Clough and the Michigan Purchases Sub-Class;

(h) Mississippi: Plaintiff Samuel Blakeney and the Mississippi Sub-Class;

(i) Nebraska:  Plaintiffs Wyatt Loeffler, Jay Simpson, and the Nebraska Purchases Sub-Class;

(j) New York: Plaintiff Sawyer Dean and the New York Purchases Sub-Class;

(k) North Carolina:  Plaintiff H& S Farms, Inc., John Sigmon, and Windmill Acres (collectively referred to as "John Sigmon Entities"), Plaintiffs Justin Lemonds, Steve Upchurch, William White, and the North Carolina Purchases Sub-Class;

(l) Ohio: Plaintiffs Robert Gosche, Brian Hayes, Matt Ortner, and the Ohio Purchases Sub-Class;

(m) Oklahoma:  Plaintiffs Arno Graves, Ron Nash, and the Oklahoma Purchases Sub-Class;

(n) Pennsylvania:  Plaintiff Kyle Minich and the Pennsylvania Purchases Sub-Class;

(o) South Carolina:  Plaintiff Mike Ping and the South Carolina Purchases Sub-Class;

(p) South Dakota:  Plaintiff Patrick Gisi and the South Dakota Purchases Sub-Class;

5

(q) Tennessee:  Plaintiffs William James, Jerry Terry, and the Tennessee Purchases Sub-Class;

(r) West Virginia: Plaintiffs Roger Bias, Clinton Curry, and the West Virginia Purchases Sub-Class; and,

(s) Wisconsin:  Plaintiffs Michael Hamm, Dale Wendt, and the Wisconsin Purchases Sub-Class.

4.      Plaintiffs agree that the filing of this CAC does not waive any Parties' venue or jurisdictional objections pursuant to *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26 (1988).

## SUMMARY OF THIS ACTION

5.      Plaintiffs, by and through the undersigned counsel, bring this action on their own behalves, on behalf of the nationwide classes asserted herein, and on behalf of the state-specific sub-classes (collectively referred to as "Sub-Classes") defined below to redress the negligent, wrongful, unlawful, unfair, unconscionable and/or deceptive practices, acts, and/or omissions of Defendants in connection with their manufacturing, marketing, and/or sale of Smitty's/Cam2 303 Tractor Hydraulic Fluid.  Plaintiffs seek, on behalf of themselves and all others similarly situated, relief for Defendants' negligence, breach of express warranties, breach of implied warranties or merchantability and fitness for a particular purpose, unjust enrichment, fraudulent and negligent misrepresentations, and for their violation of various statutes, all as set forth more fully below. Plaintiffs also seek, on behalf of themselves and all others similarly situated, disgorgement of Defendants' profits from the sale of the Smitty's/Cam2 303 Tractor Hydraulic Fluid Products at issue in this MDL.  Plaintiffs also seek other economic damages, including recovery for property damages that Defendants' conduct and products commonly caused to Plaintiffs and Class

6

Members' tractors and other equipment. Plaintiffs also seek punitive and statutory additional damages. Finally, Plaintiffs seek injunctive relief precluding Defendants from engaging in similar wrongful conduct in the future.

## BACKGROUND AND GENERAL FACTUAL ALLEGATIONS

6.     For years, Defendants have deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as "303" fluid meeting "303" specifications when, in fact, the "303" designation is obsolete and 303 specifications have not been available for over forty (40) years. Defendants have also deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as meeting certain manufacturer specifications and providing certain anti-wear and protective benefits when, in fact, Defendants knew, or should have known, the fluid they are selling does not meet all listed manufacturer specifications and does not contain the anti-wear and protective properties required in Tractor Hydraulic Fluid. Instead, the "303" fluid is a fluid mixed from line wash and other lubricant products (including some used products) that are not suitable for use as ingredients in a tractor hydraulic fluid.

7.     Tractor Hydraulic Fluid (THF) is a multifunctional lubricant that has been manufactured for and used in tractors and equipment for over fifty (50) years. It is designed to act as a hydraulic fluid, transmission fluid and gear oil for this equipment. In the 1960s and early 1970s, John Deere (Deere) manufactured a popular and widely used THF called JD-303 or simply "303," and the term "303" became synonymous with the John Deere name and this high-quality and effective THF product.

8.     Sperm whale oil was an essential ingredient in Deere's 303 THF. In the mid-1970s, the passage of laws protecting endangered species outlawed the use of sperm whale oil. Deere's "303" formula could no longer be manufactured or sold, and because its essential ingredient—

sperm whale oil—could no longer be used, the designation became obsolete and there are no specifications now available for "303" tractor hydraulic fluids. Deere was forced to manufacture a new tractor hydraulic fluid with different additives that would be both effective and affordable.

9. After it stopped producing and selling its 303 THF, Deere manufactured and sold several THF products with certain ingredient, viscosity, anti-wear and detergent additive specifications, including initially offering J14B, J20A and J20B. Many other manufacturers created and sold fluids that purported to be similar to these new products while others continued to offer what they termed a "303" product. The J14B specification became obsolete in the late 1970s. J20A and J20B were then offered and, during the time the J20A/B specifications were in use, Deere used a licensing program called Quatrol to police the quality of THF products in the marketplace. The Quatrol program required blenders and sellers of competing THF products to submit test data to Deere prior to the use of the J20A/B specification on their product labels, to ensure the products met the advertised specifications.

10. In the late 1980s or early 1990s, Deere abandoned the J20A/B specification as well. John Deere then and now manufactures and sells THF meeting a specification called J20C or J20D (low viscosity). The J20C fluid is sold under the name "Hy-Gard," and many other manufacturers market and sell products which they contend meet the J20C specification in order to compete with John Deere. The following timeline illustrates the history of 303 THF:



**TRACTOR HYDRAULIC FLUID (THF) TIMELINE**

JOHN DEERE THF SPECIFICATIONS

| John Deere Specification | Comment | JD Issue Date |
|---|---|---|
| JDM J20D³ | THF for cold climates | 1989 - Current |
| JDM J20C² | Primary THF specification | 1989 - Current |
| JDM J20B³ | DISCONTINUED – replaced by JDM J20D | 1978 - 1989 |
| JDM J20A² | DISCONTINUED – replaced by JDM J20C | 1978 - 1989 |
| JDM J14B | DISCONTINUED – replaced by JDM J20A/B | 1974 - 1978 |
| JDM J303¹ | DISCONTINUED – replaced by JDM J14B | 1960 - 1974 |

Footnotes:

1. There are no specifications available for 303 Tractor Hydraulic Fluids and, as such, products making only "303" claims cannot be tested to assure compliance with any known specifications.

2. Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Summer or warm weather climates)

3. Low Viscosity Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Winter or cold weather climates)

11.      John Deere discontinued the Quatrol program around the time J20A was discontinued (approximately 1989). The subsequent lack of a quality control program or policing of the products in the market resulted in a "free for all" with respect to the THF manufactured and sold in the open market and the opportunity for unscrupulous manufacturers and sellers to falsely use the Deere specifications (and other manufacturers' specifications) on the labels of the THF products they sell.

12.      Defendants deceptively and illegally traded on the obsolete and non-existent "303" designation, the other obsolete J14B and J20A specifications, and the John Deere trade name that was and has continued to be so prevalent in the industry.  This was deceptive as there is no known "303" specification, and there is no way for manufacturers, sellers, or anyone else to truthfully claim the products meets or is in compliance with any such specification.  This was also deceptive because Defendants knew their 303 THF Products did not meet the J20A specification Defendants advertised on the label.

9

13.     Nonetheless, Defendants manufactured and sold their Super S Super Trac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 Promax 303 Tractor Hydraulic Oil, and Cam2 303 Tractor Hydraulic Oil (together referred to as "303 THF Products") as a lower cost alternative, and offered them for sale as economically priced tractor hydraulic fluids that met or had an equivalency to many (or in some cases all) manufacturers' specifications, had effective lubricant and anti-wear additives and properties, and were safe for use in purchasers' equipment. The Cam2 Promax 303 Tractor Hydraulic Oil was the same fluid as Super S 303 Tractor Hydraulic Fluid, Super S Super Trac 303 Tractor Hydraulic Fluid, and Cam2 303 Tractor Hydraulic Oil, all also manufactured by Smitty's. Defendants sold their 303 THF Products with eye-catching photos of modern tractors and industrial equipment and in bright, yellow 5-gallon buckets.  By name dropping a list of equipment manufacturers, Defendants sought to create an impression of quality and take advantage of consumers' lack of understanding of the multitude of complex manufacturer specifications that were being ignored.

14.     In addition to deceptively promoting a designation that was obsolete, Defendants used poor quality base oils, waste oil, line flush, and used oils and diluted additive packages, if any, in their 303 THF Products in order to keep production costs down and increase profits.  As a result of the inferior ingredients and this "down-treating" of any additive packages, Defendants' 303 THF Products not only lacked the required lubricant and protective benefits offered to purchasers, the fluids actually exposed purchasers' equipment to increased wear and risk of damage to the spiral gear, excessive wear in the planetaries, improper and poor shifting, seal leakage, and improper operation of the wet brakes. Despite use of these inferior ingredients and inadequate protective additives, the 303 THF Products were labeled and marketed to unsuspecting

10

purchasers as meeting or having an equivalency to manufacturer specifications and providing certain benefits and anti-wear properties.

15. In November 2017, because of the deceptive nature of the 303 THF Products, the failures of the 303 THF Products to meet any published specification, and the damage the products could cause to consumers' equipment, the State of Missouri's Department of Agriculture, Division of Weights and Measures, banned Defendants and all other manufacturers and sellers from offering these type of "303" tractor hydraulic fluid products for sale in Missouri. The states of Georgia and North Carolina followed suit.

16. Despite the ban of "303" THF in several states and the increased scrutiny on those products throughout the country, Defendants continued for some time to sell their 303 THF Products in all states where the fluid had not been banned.

17. Defendants' conduct has harmed purchasers like Plaintiffs, who purchased Defendants' 303 THF Products that were offered and sold as acceptable tractor hydraulic fluids that met or had an equivalency to certain manufacturer specifications, as fluids that were safe for use in farm, construction and logging equipment, and as having certain characteristics and qualities that protected equipment from wear and damage.

18. In reality, instead of receiving a product that was an acceptable tractor hydraulic fluid that met or had an equivalency to manufacturers' specifications, Plaintiffs and other purchasers received 303 THF Products that, contrary to Defendants' labeling, had no known or industry-approved specifications, had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications on these products. These products therefore exposed purchasers'

equipment to harm, increased wear and damage, and caused purchasers to overpay for a product that was worthless and/or worth much less than the sale price.

19.     In late 2017, around the time of the stop sale order and ban of 303 THF in Missouri and other states, Defendants Smitty's and Cam2 modified the label of their Super S Super Trac 303 Tractor Hydraulic Fluid and Cam2 Promax 303 Tractor Hydraulic Oil, changing the names to "Super S 303 Tractor Hydraulic Fluid" and "Cam2 303 Tractor Hydraulic Oil."  Because the photos of the equipment on certain labels were deceptive and misleading, Smitty's removed the pictures of the modern equipment and replaced those pictures with images of older, simpler tractors on the front of the label.

20.     At that time, however, no others changes were made to the labels despite the fact that management employees at Smitty's and Cam2 knew of the deceptive and misleading representations about the physical and performance properties of the fluid, the representations about the testing that was purportedly performed on the fluid, and the list of equipment manufacturers' names contained on the Super S 303 and Cam 2 303 labels.  Incredibly, Smitty's and Cam2 continued to sell the 303 THF Products in all states in which it had not been banned, with those misrepresentations knowingly being made to purchasers like Plaintiffs.

21.     Like many other purchasers and consumers throughout Alabama, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Nebraska, Michigan, Minnesota, Missouri, New York, North Carolina, Oklahoma, Pennsylvania, Ohio, South Carolina, South Dakota, Tennessee, Texas, Virginia, West Virginia, Wisconsin, and other states throughout the United States, Plaintiffs purchased Defendants' 303 THF Products and suffered damage as a result.

12

22. In October 2017, in connection with its issuance of a stop sale order and the ban on 303 THF Products, the State of Missouri's Department of Agriculture, Division of Weights and Measures, stated publicly that it had performed testing on the 303 THF Products and that the testing revealed that the products did not meet any manufacturers' current tractor hydraulic fluid specifications and were underperforming to the point damage was likely to result from use.

23. Defendants continued to sell their products and concealed any internal test data and the truth about the 303 THF products at all relevant times.

## PARTIES

24. Plaintiff Allicks Excavating is a sole proprietorship business owned by Ellen Allicks and located in Princeton, Illinois. It is a member of the Class and the Illinois Sub-Class alleged herein.

25. Plaintiff Ellen Allicks is a citizen and resident of Princeton, Illinois. She is a member of the Class and the Illinois Sub-Class alleged herein.

26. Plaintiff William Anderson is a citizen and resident of Devalls Bluff, Arkansas. He is a member of the Class and the Arkansas Sub-Class alleged herein.

27. Plaintiff Roger Bias is a citizen and resident of West Virginia. He is a member of the Class and the West Virginia Sub-Class alleged herein.

28. Plaintiff Terry Blackmore is a citizen and resident of Plymouth County, Iowa. He is a member of the Class and the Iowa Sub-Class alleged herein.

29. Plaintiff Samuel Blakeney is a citizen and resident of Bay Springs, Mississippi. He is a member of the Class and the Mississippi Sub-Class alleged herein.

30. Plaintiff George Bollin is a citizen and resident of Leavenworth, Kansas. He is a member of the Class and the Kansas Sub-Class alleged herein.

31.     Plaintiff Kyle Boyd is a citizen and resident of Harrison, Arkansas. He is a member of the Class and the Arkansas Sub-Class alleged herein.

32.     Plaintiff Sean Buford is a citizen and resident of Jackson County, Arkansas. He is a member of the Class and the Arkansas Sub-Class alleged herein.

33.     Plaintiff Steve Burgdorf is a citizen and resident of Redbud, Illinois. He is a member of the Class and the Illinois Sub-Class alleged herein.

34.     Plaintiff Todd Carusillo is a citizen and resident of Goshen, Connecticut. He is a member of the Class and the Connecticut Sub-Class alleged herein.

35.     Plaintiff Douglas Clough is a citizen and resident of Boon, Michigan. He is a member of the Class and the Michigan Sub-Class alleged herein.

36.     Plaintiff Clinton Curry is a citizen and resident of Kanawha County, West Virginia. He is a member of the Class and the West Virginia Sub-Class alleged herein.

37.     Plaintiff Sawyer Dean is a citizen and resident of Fort Edward, New York. He is a member of the Class and the New York Sub-Class alleged herein.

38.     Plaintiff Daniel Denton is a citizen and resident of Plantersville, Texas. He is a member of the Class and the Texas Sub-Class alleged herein.

39.     Plaintiff Kirk Egner is a citizen and resident of Kevil, Kentucky. He is a member of the Class and the Kentucky Sub-Class alleged herein.

40.     Plaintiff Kyle Feldkamp is a citizen and resident of Altamount, Illinois. He is a member of the Class and the Illinois Sub-Class alleged herein.

41.     Plaintiff Norman Fohne is a citizen and resident of Troy, Illinois. He is a member of the Class and the Illinois Sub-Class alleged herein.

42. Plaintiff Duane Fosdick is a citizen and resident of California. He is a member of the Class and the California Sub-Class alleged herein.

43. Plaintiff Patrick Gisi is a citizen and resident of South Dakota. He is a member of the Class and the South Dakota Sub-Class alleged herein.

44. Plaintiff Robert Gosche is a citizen and resident of Tiffin, Ohio. He is a member of the Class and the Ohio Sub-Class alleged herein.

45. Plaintiff Arno Graves is a citizen and resident of Ottawa County, Oklahoma. He is a member of the Class and the Missouri and Oklahoma Sub-Classes alleged herein.

46. Plaintiff Michael Hamm is a citizen and resident of Waupaca, Wisconsin. He is a member of the Class and the Wisconsin Sub-Class alleged herein.

47. Plaintiff Alan Hargraves is a citizen and resident of Helena, Arkansas. He is a member of the Class and the Arkansas Sub-Class alleged herein.

48. Plaintiff Jeffery Harrison is a citizen and resident of Haskell, Arkansas. He is a member of the Class and the Arkansas Sub-Class alleged herein.

49. Plaintiff Brian Hayes is a resident of Ohio. He is a member of the Class and the Ohio Sub-Class alleged herein.

50. Plaintiff Frank James is a citizen and resident of Crawfordsville, Indiana. He is a member of the Class and the Indiana Sub-Class alleged herein.

51. Plaintiff William James is a resident of Tennessee. He is a member of the Class and the Tennessee Sub-Class alleged herein.

52. Plaintiff Jack Kimmich is a citizen and resident of California. He is a member of the Class and the California Sub-Class alleged herein.

15

53.     Plaintiff Jason Klingenberg is a citizen and resident of Lyon County, Iowa.  He is a member of the Class and the Iowa and Minnesota Sub-Classes alleged herein.

54.     Plaintiff Justin Lemonds is a citizen and resident of Robbins, North Carolina.  He is a member of the Class and the North Carolina Sub-Class alleged herein.

55.     Plaintiff Josh Lesko is a citizen and resident of Sheridan, Illinois.  He is a member of the Class and the Illinois Sub-Class alleged herein.

56.     Plaintiff Larry Wyatt Loeffler is a citizen and resident of Mitchell, Nebraska.  He is a member of the Class and the Nebraska Sub-Class alleged herein.

57.     Plaintiff Jacob Mabie is a citizen and resident of Michigan.  He is a member of the Class and the Texas Sub-Class alleged herein.

58.     Plaintiff Kyle Minich is a citizen and resident of Rimersburg, Pennsylvania.  He is a member of the Class and the Pennsylvania Sub-Class alleged herein.

59.     Plaintiff Ron Nash is a citizen and resident of Cherokee County, Kansas.  He is a member of the Class and the Missouri and Oklahoma Sub-Classes alleged herein.

60.     Plaintiff Bryan Nelms is a resident of Tuscaloosa, Alabama.  He is a member of the Class and the Alabama Sub-Class alleged herein.

61.     Plaintiff Matt Ortner is a resident of Ohio.  He is a member of the Class and the Ohio Sub-Class alleged herein.

62.     Plaintiff Ricky Peck is a citizen and resident of Paducah, Kentucky. He is a member of the Class and the Kentucky Sub-Class alleged herein.

63.     Plaintiff Mike Ping is a citizen and resident of Rock Hill, South Carolina.  He is a member of the Class and the South Carolina Sub-Class alleged herein.

64.     Plaintiff Stanley Richardson is a citizen and resident of Marshall, Texas.  He is a member of the Class and the Texas Sub-Class alleged herein.

65.     Plaintiff Wayne Rupe is a citizen and resident of Wapello County, Iowa.  He is a member of the Class and the Iowa Sub-Class alleged herein.

66.     Plaintiff Adam Sevy is a citizen and resident of Cass County, Missouri.  He is a member of the Class and the Kansas Sub-Class alleged herein.

67.     Plaintiff Anthony Shaw is a resident of Byron, Georgia.  He is a member of the Class and the Georgia Sub-Class alleged herein.

68.     Plaintiff Rusty Shaw is a resident of Byron, Georgia.  He is a member of the Class and the Georgia Sub-Class alleged herein.

69.     Plaintiffs Windmill Acres, Inc. and H&S Farms, Inc. (collectively referred to as "John Sigmon Entities") are corporate entities solely and/or primarily owned by John Sigmon. Mr. Sigmon is a resident of Newton, North Carolina.  They are members of the Class and the North Carolina Sub-Class alleged herein.

70.     Plaintiff Jay Simpson is a resident of Nebraska.  He is a member of the Class and the Nebraska Sub-Class alleged herein.

71.     Plaintiff Donald Snyder is a citizen and resident of Bonnerdale, Arkansas.  He is a member of the Class and the Arkansas Sub-Class alleged herein.

72.     Plaintiff Charles Strickland is a citizen and resident of Fort White, Florida.  He is a member of the Class and the Florida Sub-Class alleged herein.

73.     Plaintiff Tim Sullivan is a citizen and resident of Kevil, Kentucky. He is a member of the Class and the Kentucky Sub-Class alleged herein.

17

74.     Plaintiff Tracy Sullivan is a citizen and resident of Kevil, Kentucky. He is a member of the Class and the Kentucky Sub-Class alleged herein.

75.     Plaintiff Jerry Terry is a citizen and resident of Springfield, Tennessee. He is a member of the Class and the Tennessee Sub-Class alleged herein.

76.     Plaintiff Twin Mills Timber & Tie Co., Inc. is a company located in West Frankfurt, Illinois. It is a member of the Class and the Illinois Sub-Class alleged herein.

77.     Plaintiff Steve Upchurch is a citizen and resident of Robbins, North Carolina. He is a member of the Class and the North Carolina Sub-Class alleged herein.

78.     Plaintiff Randy Vilela is a resident of Pittsburgh, Kansas. He is a member of the Class and the Missouri Sub-Class alleged herein.

79.     Plaintiff Ross Waterman is a citizen and resident of Vona, Colorado. He is a member of the Class and the Colorado and Kansas Sub-Classes alleged herein.

80.     Plaintiff Dale Wendt is a citizen and resident of Weyauwega, Wisconsin. He is a member of the Class and the Wisconsin Sub-Class alleged herein.

81.     Plaintiff William White is a citizen and resident of Crouse, North Carolina. He is a member of the Class and the North Carolina Sub-Class alleged herein.

82.     Plaintiff Dwayne Wurth is a citizen and resident of Paducah, Kentucky. He is a member of the Class and the Kentucky Sub-Class alleged herein.

83.     Plaintiff Terry Zornes is a citizen and resident of Allen County, Kansas. He is a member of the Class and the Kansas Sub-Class alleged herein.

84.     Defendant Smitty's Supply, Inc. is a for-profit company incorporated in Louisiana and with its principal place of business in Roseland, Louisiana. Defendant Smitty's Supply, Inc. owns Cam2 International, L.L.C., and so the companies together will be referred to herein as

"Smitty's." Smitty's has advertised and sold its products, including the 303 THF Products throughout the United States, including at Atwoods, Tractor Supply Company, Rural King, Orscheln, and other retail stores.

85. Defendant Cam2 International, L.L.C. ("Cam2") is a for-profit company incorporated in Louisiana and with its principal place of business in Roseland, Louisiana. Cam2 has advertised and sold the 303 THF Products throughout the United States at various retail stores, including those owned and operated by Atwood Distributing, LP, Tractor Supply Company, Rural King, and other retail stores.

86. Defendant Tractor Supply Company ("Tractor Supply") is a for-profit company with its principal place of business in Brentwood, Tennessee. Defendant Tractor Supply Company has advertised and sold the 303 THF Products throughout the United States at its retail stores.

87. Defendants Rural King Administration, Inc. and Rural King Holding Co. (collectively "Rural King") are for-profit companies with their principal place of business located at 4216 DeWitt Avenue, Mattoon, Illinois 61938. Rural King has advertised and sold the 303 THF Products at its retail stores in several states including Alabama, Florida, Illinois, Indiana, Kentucky, Tennessee, Ohio, Michigan, Missouri, North Carolina, Pennsylvania, Virginia, and West Virginia.

88. Defendant Orscheln Farm and Home, LLC d/b/a/ Orscheln Farm and Home ("Orscheln") is a for-profit limited liability company with its principal place of business in Moberly, Missouri. Orscheln has advertised and sold the 303 THF Products in several states including Arkansas, Illinois, Indiana, Iowa, Kansas, Kentucky, Missouri, Ohio, Oklahoma, Nebraska, and Texas.

89.     Defendant Atwood Distributing, LP ("Atwoods") is a for-profit limited liability company incorporated in Oklahoma and with its principal place of business in Enid, Oklahoma. Defendant Atwoods has advertised and old the 303 THF Products at its Atwoods Ranch and Home retail stores in several states including Arkansas, Kansas, Missouri, Oklahoma, and Texas.

90.     Defendants' conduct has harmed purchasers like Plaintiffs by inducing them to purchase and use Defendants' 303 THF Products through the false promise that the 303 THF Products met or had an equivalency to certain specifications (including JD-303 and J20A) and by directly or implicitly representing that the products were safe for use in farm, construction and logging equipment and had certain characteristics and qualities that protected equipment from wear and damage when, in reality, the products did not meet any specifications and caused harm, increased wear and damage to Plaintiffs' equipment.

## JURISDICTION AND VENUE

91.     Federal Jurisdiction is proper pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class Member is a citizen of a state different from any Defendant, there are more than 100 Class Members, and the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

92.     Venue is proper in this District Court for all pretrial proceedings pursuant to 28 U.S.C. § 1407 and pursuant to the June 2, 2020 Transfer Order of the Judicial Panel on Multidistrict Litigation.

93.     With regard to the transferred action of *Zornes, et al. v. Smitty's Supply, Inc., et al.*, Case No. 19-cv-2257-JAR-TJJ (D. Kan.), the United States District Court for the District of Kansas is an appropriate venue for trial because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment occurred in Kansas and elsewhere.  The United

States District Court of Kansas has personal jurisdiction over Defendants Smitty's, Cam2, Tractor Supply, and Orscheln, and Atwoods because those Defendants transact business in Kansas, through their various advertising methods and product sales directed toward Kansas residents. Additionally, Plaintiffs Zornes, Sevy, and Bollin purchased the 303 THF Products at issue in Kansas. Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).

94. With regard to the transferred action of *Wurth, et al. v. Smitty's Supply, Inc., et al.*, Case No. 19-cv-00092-TBR (W.D. Kentucky), the United States District Court for the Western District of Kentucky is an appropriate venue for trial because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment occurred in the Western District of Kentucky and elsewhere. The United States District Court for the Western District of Kentucky has personal jurisdiction over Defendants Smitty's, Cam2, Tractor Supply, Orscheln, and Rural King because those Defendants transact business in Kentucky, through their various advertising methods and product sales directed toward Kentucky. Additionally, Plaintiffs Wurth, Egner, Tim Sullivan, Tracy Sullivan, and Peck purchased the 303 THF Products at issue in Kentucky. Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).

95. With regard to the transferred action of *Buford v. Smitty's Supply, Inc.*, et al. Case No. 1:19-cv-00082-BRW ( E.D. Ark.), the United States District Court for the Eastern District of Arkansas is an appropriate venue for trial because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment occurred in the Eastern District of Arkansas and elsewhere. The United States District Court for the Eastern District of Arkansas has personal jurisdiction over Defendants Smitty's, Cam2, Tractor Supply, Orscheln, and Atwoods because those Defendants transact business in Arkansas, through their various advertising methods and

product sales directed toward Arkansas. Additionally, Plaintiffs Buford, Anderson, Boyd, Hargraves, Harrison, and Snyder purchased the 303 THF Products at issue in Arkansas. Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).

96.    With regard to the transferred action of *Mabie v. Smitty's Supply, Inc., et al.*, Case No. 4:19-cv-03308 (S.D. Tex.), the United States District Court for the Southern District of Texas is an appropriate venue for trial because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment occurred in the Southern District of Texas and elsewhere. The United States District Court for the Southern District of Texas has personal jurisdiction over Defendants Smitty's, Cam2, Tractor Supply, Orscheln, and Atwoods because those Defendants transact business in Texas, through their various advertising methods and product sales directed toward Texas. Additionally, Plaintiffs Mabie and Denton purchased the 303 THF Products at issue in Texas. Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).

97.    With regard to the transferred action of *Blackmore, et al. v. Smitty's Supply, Inc., et al.*, Case No. 5:19-cv-04052 (N.D. Iowa), the United States District Court for the Northern District of Iowa is an appropriate venue for trial because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment occurred in the Northern District of Iowa and elsewhere. The United States District Court for the Northern District of Iowa has personal jurisdiction over Defendants Smitty's, Cam2, Tractor Supply, and Orscheln because those Defendants transact business in Iowa, through their various advertising methods and product sales directed toward Iowa. Additionally, Plaintiffs Blackmore, Klingenberg, and Rupe purchased the 303 THF Products at issue in Iowa. Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).

98.     With regard to the transferred action of *Fosdick, et al. v. Smitty's Supply, Inc., et al.,* Case No. 2:19-cv-01850-MCE-DMC (E.D. Cal.), the United States District Court for the Eastern District of California is an appropriate venue for trial because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment occurred in the Eastern District of California and elsewhere.  The United States District Court for the Eastern District of California has personal jurisdiction over Defendants Smitty's, Cam2, and Tractor Supply because those Defendants transact business in California, through their various advertising methods and product sales directed toward California.  Additionally, Plaintiffs Fosdick and Kimmich purchased the 303 THF Products at issue in California.  Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).

99.     With regard to the transferred action of *Klingenberg v. Smitty's Supply, Inc., et al.*, Case No. 19-cv-2684-ECT/ECW (D. Minn.), the United States District Court for the District of Minnesota is an appropriate venue for trial because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment occurred in the District of Minnesota and elsewhere.  The United States District Court for the District of Minnesota has personal jurisdiction over Defendants Smitty's, Cam2, and Tractor Supply because those Defendants transact business in Minnesota, through their various advertising methods and product sales directed toward Minnesota.  Additionally, Plaintiff Klingenberg purchased the 303 THF Products at issue in Minnesota.  Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).

100.    With regard to the transferred action of *Graves, et al. v. Smitty's Supply, Inc., et al.*, Case No. 4:19-cv-05089-SRB (W.D.Mo.), the United States District Court for the Western District of Missouri is an appropriate venue for trial because the false representations, deceptive,

23

dishonest, and misleading practices and the unjust enrichment occurred in the Western District of Missouri and elsewhere. The United States District Court for the Western District of Missouri has personal jurisdiction over Defendants Smitty's, Cam2, Tractor Supply, Orscheln, Rural King, and Atwoods because those Defendants transact business in Missouri, through their various advertising methods and product sales directed toward Missouri. Additionally, Plaintiffs Graves, Nash, and Vilela purchased the 303 THF Products at issue in Missouri. Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).

101. With regard to the transferred action of *Feldkamp, et al. v. Smitty's Supply, Inc., et al.*, Case No. 2:20-cv-02177-CSB-EIL, the United States District Court for the Central District of Illinois is an appropriate venue for trial because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment occurred in the Central District of Illinois and elsewhere. The United States District Court for the Central District of Illinois has personal jurisdiction over Defendants Smitty's, Cam2, Tractor Supply, Orscheln, and Rural King because those Defendants transact business in Illinois, through their various advertising methods and product sales directed toward Illinois. Additionally, Plaintiffs Feldkamp, Lesko, Fohne, Burgdorf, Allicks, and Twin Mills purchased the 303 THF Products at issue in Illinois. Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).

102. With regard to the claims directly filed in this CAC, the following are the respective appropriate venues for trial:

    (a) Plaintiff Brian Nelms and the Alabama Purchases Sub-Class: United States District Court, Northern District of Alabama;

    (b) Plaintiff Ross Waterman and the Colorado Purchases Sub-Class: United States District Court, District of Colorado;

(c) Plaintiff Todd Carusillo and the Connecticut Purchases Sub-Class: United States District Court, District of Connecticut;

(d) Plaintiff Charles Strickland and the Florida Purchases Sub-Class: United States District Court, Middle District of Florida;

(e) Plaintiffs Anthony Shaw, Rusty Shaw, and the Georgia Purchases Sub-Class: United States District Court, Middle District of Georgia

(f) Plaintiff Frank James and the Indiana Purchases Sub-Class: United States District Court, North District of Indiana;

(g) Plaintiff Douglas Clough and the Michigan Purchases Sub-Class: United States District Court, Western District of Michigan;

(h) Plaintiff Samuel Blakeney and the Mississippi Sub-Class: United States District Court, Southern District of Mississippi;

(i) Plaintiffs Larry Wyatt Loeffler, Jay Simpson, and the Nebraska Purchases Sub-Class: United States District Court, District of Nebraska;

(j) Plaintiffs Sawyer Dean and the New York Purchases Sub-Class: United States District Court, Northern District of New York;

(k) Plaintiffs Justin Lemonds, Sigmon Entities, Steve Upchurch, William White, and the North Carolina Purchases Sub-Class: United States District Court, Middle District of North Carolina;

(l) Plaintiffs Robert Gosche, Brian Hayes, Matt Ortner, and the Ohio Purchases Sub-Class: United States District Court, Southern District of Ohio;

(m) Plaintiffs Arno Graves, Ron Nash, and the Oklahoma Purchases Sub-Class --

(n) Plaintiff Kyle Minich and the Pennsylvania Purchases Sub-Class: United States District Court, Western District of Pennsylvania;

(o) Plaintiff Mike Ping and the South Carolina Purchases Sub-Class: United States District Court, District of South Carolina;

(p) Plaintiff Patrick Gisi and the South Dakota Purchases Sub-Class: United States District Court, District of South Dakota;

(q) Plaintiffs William James, Jerry Terry, and the Tennessee Purchases Sub-Class: United States District Court, Middle District of Tennessee;

(r) Plaintiffs Roger Bias, Clinton Curry, and the West Virginia Purchases Sub-Class: United States District Court, Southern District of West Virginia; and,

(s) Plaintiffs Michael Hamm, Dale Wendt, and the Wisconsin Purchases Sub-Class: United States District Court, Eastern District of Wisconsin.

## <u>FACTUAL ALLEGATIONS COMMON TO ALL COUNTS</u>

103. Defendants Tractor Supply, Rural King, Orscheln, and Atwoods are in the business of selling and advertising for sale certain merchandise or retail products in trade or commerce at retail stores throughout the United States.

104. Defendant Smitty's (which as set forth above, includes Cam 2) is in the business of manufacturing certain merchandise or retail products which are to be sold in trade or commerce at retail stores and through distributors throughout the United States.

105. Defendant Cam 2 is in the business of manufacturing certain merchandise or retail products which are to be sold in trade or commerce at retail stores and through distributors throughout the United States.

26

106. During some or all of the time period from 2013 to present, Defendants Tractor Supply, Rural King, Orscheln, Atwoods, and other retailers sold and advertised in yellow buckets the 303 THF Products. These products were sold throughout the United States.

107. During some or all of the time period from 2013 to the present, Defendants Smitty's and Cam2 manufactured and advertised these 303 THF Products which were sold by Tractor Supply, Rural King, Orscheln, Atwoods, , and other retailers.

## Defendants' Deceptive Labeling, Marketing and Advertising

108. During some or all of the time from 2013 to the present, Defendants offered the 303 THF Products for sale at stores all over the United States as products suitable for use as tractor hydraulic fluid and as fluids that provided certain performance benefits and met or had equivalency to a wide number of manufacturers' specifications. The average sale price for a five (5) gallon bucket of Defendants' 303 THF Products was generally between $20.00 and $25.00.

109. Defendants falsely and deceptively labeled, marketed and offered for sale the 303 THF Products, including (1) as meeting manufacturer specifications and being acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) as a substitute for and satisfying John Deere's JD-303 and J20A specifications; (3) as a fluid that provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) as a fluid that protects against rust and corrosion; and (5) as a fluid designed for use in equipment manufactured by Allis-Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere, Oliver, Ford and Caterpillar.

110. Defendants' labeling, marketing, advertising and sale of the 303 THF Products was widespread, continuous and contained on various signs, labels and advertisements throughout the United States for years.

27

111.    Up until late 2017 or early 2018, Defendants' Cam2 ProMax 303 Tractor Hydraulic

Oil was specifically labeled, marketed and advertised as follows:



112.    These representations were also contained in Defendants' advertising circulars

and/or on Defendants' websites, such as the following:



113.    Up until late 2017 or early 2018, Defendants' Super S Super Trac 303 Tractor

Hydraulic Fluid was specifically labeled, marketed and advertised as follows:



114.    The Super S Super Trac 303 buckets contain the following, similar information:



115.    These representations regarding Super S Supertrac 303 Tractor Hydraulic Fluid were also contained in Defendants' advertising circulars and/or on Defendants' websites.

116.    Defendants' labeling thus specifically represented that the 303 THF Products being sold were acceptable for use and were:

- Field Tested

- Suitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality if recommended: Allis Chalmers, Allison, Caterpillar, Deutz, Ford Tractor, International Harvester, JI Case/David Brown, John Deere 303, Kubota, Massey Ferguson, Oliver, White

- Providing excellent results in the areas of:
    1. Anti-wear properties
    2. Brake Chatter
    3. Extreme Pressure Properties
    4. Foam Suppression

30

5. PTO Clutch Performance
6. Rust Protection
7. Water Sensitivity

117. By naming, labeling, marketing, advertising and selling the 303 THF Products in the foregoing manner, and by describing the products using words such as "303" and "multi-functional," Defendants sought to create, and did create, an image of the 303 THF Products in the minds of Plaintiffs and other purchasers that would lead a reasonable purchaser to conclude that Defendants' 303 THF Products were completely safe and effective for use in their equipment and in all equipment made by the listed manufacturers.

118. Defendants' name, labeling, advertising and marketing of their 303 THF Products were material to the reasonable purchaser.

119. At the time of Defendants' labeling, advertisements, marketing and other representations, and as Defendants already knew or should have known, the representations regarding 303 THF Products were false, deceptive and misleading to consumers and others seeking to purchase tractor hydraulic fluid.

120. The John Deere "303" designation is over 50 years old and has been obsolete for many years. Certain ingredients of the original John Deere 303 fluid—such as sperm whale oil—have been banned since the 1970s and are no longer available for use. As a result, manufacturers have been unable to make and sell true "303" fluid for over forty (40) years and there are no longer any specifications for 303 fluid. Defendants knew or should have known that at the time they were marketing and selling the 303 THF Products during the Class Period, there were no specifications available for "303" tractor hydraulic fluid and, therefore, claims that the 303 THF Products met "303" specifications could not possibly be true, and Defendants had no way to ensure

the accuracy of representations that their 303 THF Products were in compliance with any known specifications and in fact knew their 303 THF Products did not meet the J20A specifications.

121. As Defendants knew, or should have known, the 303 THF Products manufactured by Defendants and sold in the yellow buckets lacked some or all of the additives required to provide the advertised "results," "features" and "benefits."

122. As Defendants knew, or should have known, the 303 THF Products manufactured by Defendants and sold in the yellow buckets were made using flush oil, line wash, used transformer oil, used turbine oil, and/or other waste oil products containing motor oil components and other additives and contaminants that are never appropriate for use in a tractor hydraulic fluid.

123. As Defendants knew, or should have known, the 303 THF Products manufactured by Defendants and sold in the yellow buckets did not meet or have an equivalency to all current specifications (and failed to meet certain obsolete specifications) for any manufacturers of farm, logging and construction equipment. Alternatively, Defendants knew, or should have known, they had no basis on which to sell the 303 THF Products as a tractor hydraulic fluid that met or had an equivalency to the specifications of all manufacturers listed on the label because, on information and belief, either 1) Defendants' test data showed the viscosity, pour point and additive levels of the 303 THF Products varied, were inconsistent, and did not meet some or all of the specifications of the manufacturers listed on the labels; or 2) Defendants did not have any test data to confirm the 303 THF Products always had the viscosity, pour point or additive levels that met all manufacturers' specifications or that were needed for a fluid suitable for use in purchasers' equipment.

124. At no point in time on the label of the 303 THF Products did Defendants tell purchasers the truth, including that:

(a) The "303" specification does not exist, is obsolete, could not be tested, and true 303 fluid was banned in the 1970s;

(b) Defendants used low quality base oil, flush oil, line wash, used transformer oil, used turbine oil or other reclaimed oil in the 303 THF Products, all of which are unfit for use in hydraulic systems and should never be contained in a tractor hydraulic fluid;

(c) The 303 THF Products contained a "down-treated" and/or no additive package;

(d) Defendants' test data did not confirm that the 303 THF Products met all manufacturers' specifications, including the advertised J20A specification;

(e) Defendants have no idea whether the 303 THF Products they offered for sale met the requirements of, has acceptable anti-wear properties, or is suitable for use in tractors or other equipment; and

(f) The 303 THF Products may expose purchasers' equipment to increased wear and damage.

125. Instead, the 303 THF Products were deceptively offered for sale as fluids containing quality base oils, sufficient additives, and meeting or having equivalency to the obsolete J20A specification, the long-defunct and now non-existent "303" specification and many other equipment manufacturer specifications.

## The State of Missouri's Testing of 303 THF

126. Because of the poor, uncertain quality of 303 tractor hydraulic fluids and the deceptive way in which they are manufactured and sold, several private and governmental entities have been concerned about the sale of the fluids, the misleading nature of the labeling, and the

33

damage the fluids can do to tractors and other equipment. The Missouri Department of Agriculture (MDA) is one such entity.

127.    In the summer of 2017, the MDA sampled fourteen (14) different "303" tractor hydraulic fluid products, many of which claimed to meet manufacturers' specifications and claimed to work in almost every tractor. Defendants' 303 THF Products Super S Supertrac 303 and Cam2 Promax 303 were purchased in Missouri by the MDA in 2017 and were two of the products tested.

128.    The MDA tested the fluids' viscosity, pour point, and additive and detergent levels to determine whether those levels met any current industry tractor hydraulic fluid specifications, namely, John Deere's J20C specifications.

129.    As a result of the testing, the MDA concluded that all fourteen (14) of these "303" tractor hydraulic fluid products failed to meet any current specifications and were found to be underperforming to the point that damage was likely to result from use.

130.    Defendants' 303 THF Products were two of the fluids that failed to meet current specifications. More specifically, Defendants' Super S Supertrac 303 THF Product had a viscosity (Kinematic Viscosity @ 100C) level of 7.647, and Cam2 Promax 303 THF Product had a viscosity (Kinematic Viscosity @ 100C) level of 7.633. The J20C and J20A specifications for KV@100C requires a minimum of 9.1 and therefore Defendants' 303 THF Products fell short of the standard.

131.    Defendants' 303 THF Products were also found to have additive levels of calcium, phosphorous and zinc that were well below (50% or more less than) the additive levels found in fluids meeting the J20C specification.

34

132.   Furthermore, Defendants' 303 THF Products' Kinematic Viscosity @ 100C level did not meet many or all of the specifications of the other manufacturers Defendants listed on the labels and advertising of their 303 THF Products, including the J20A specification.

133.   The MDA's tests also indicated that Defendants' THF Products used waste, or "line flush" oil, which contain ingredients inappropriate for use in a tractor hydraulic fluid.

134.   In or around October 2017, the MDA notified Defendants, by letter, of its findings regarding the 303 THF Products in the marketplace.  The MDA notified Defendants it concluded the 303 THF Products were mislabeled, misbranded, that the labels were deceptive and misleading, and that the products were exposing equipment to increased wear and damage. As a result, the MDA ordered Defendants to stop selling their 303 THF Products in Missouri.

135.   Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Classes, were not reasonably ascertainable to Class Members.  Defendants concealed any internal test data and the truth about the 303 THF Products at all relevant times during the Class Period.

### Defendants Continue to Sell the Deceptive, Poor Quality 303 THF Products

136.   Despite receipt of the MDA's stop sale notices, test results and concerns regarding the damage that was being caused to equipment, Defendants continued to manufacture and sell the products in states that had not banned the products.  Defendants did not in any way change the formula of the 303 THF Products after the State of Missouri's ban.

137.   Rather than pull the 303 THF Products off the market in all states, Defendants decided to continue to sell the 303 THF Products.  Other than the slight name changes, they made one additional change: the colorful photos of modern tractors were removed from the labels and were replaced with older, simpler tractors.  However, in all other respects, the 303 THF Products

35

were made with the same formula, processes, and improper ingredients, and the labels continued to deceptively list the "303" designation, the equipment manufacturers' names, and the false and misleading claims of field testing and performance results.

138.     Despite the MDA findings, Defendants continued to sell the 303 THF Products and make those representations about the quality and performance properties of the product even though they knew the product did not meet or have an equivalency to any manufacturer specifications and that they did not have any data or evidence on which to base or substantiate the performance qualities represented on the label.

139.     Smitty's had no support for its claims of performance, yet Defendants continued to sell the product to purchasers throughout the United States as a fluid recommended for use in almost all manufacturers' equipment, with representations of excellent performance in the areas of anti-wear properties, brake chatter, extreme pressure properties, foam suppression, PTO clutch performance, rust protection and water sensitivity.

140.     In 2018, in stark contrast to the quality represented to purchasers, Smitty's knew and discussed internally that the 303 THF Products did not provide adequate wear protection and that the products could lead to excess deposit buildup inside transmissions and other parts of equipment.

141.     Defendants did not take any action to inform purchasers of the State of Missouri's testing and findings concerning Defendants' 303 THF Products.

### Plaintiffs' Experience with Defendants' Labeling and Products

142.     Plaintiffs each purchased Defendants' 303 THF Products on numerous occasions. Plaintiffs each paid an average price of $20 to $25 per 5-gallon bucket.

36

143.     As with all Members of the Class, in the period prior to the filing of this Class Action, Plaintiffs purchased Defendants' 303 THF Products containing the label representations set forth above.

144.     Plaintiffs Allicks Excavating and Ellen Allicks purchased one of Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiffs Allicks and Allicks Excavating purchased 5-gallon buckets of the Cam2 Pro Tech 303 Tractor Hydraulic Oil and Cam2 303 Tractor Hydraulic Oil at the Rural King retail store located in Peru, Illinois.  The 303 THF Product was used by Plaintiffs Allicks and Allicks Excavating in excavating equipment.

145.     Plaintiff William Anderson purchased Defendants' 303 THF Products in buckets at the Atwoods store in Lonoke, Arkansas and at the Tractor Supply Company store in Stuttgart, Arkansas.  The 303 THF Product was used in Plaintiff Anderson's John Deere and Case tractors, as well as other equipment.

146.     Plaintiff Roger Bias purchased Defendants' 303 THF Products.  In the time period of December 1, 2013 to the present, Plaintiff Bias purchased Defendants' THF Products at the Tractor Supply Company store in West Virginia.  The 303 THF Products were used by Plaintiff Bias in his tractor and other equipment.

147.     Plaintiff Terry Blackmore purchased Defendant's 303 THF Products in Iowa and used the 303 THF Products in heavy machinery and other equipment.

148.     Plaintiff Samuel Blakeney purchased Defendants' 303 THF Products.  In the time period of December 1, 2013 to the present, Plaintiff Blakeney purchased Defendants' 303 THF Products at the Tractor Supply Company store in Laurel, Mississippi.  The 303 THF Products were used by Plaintiff Blakeney in his John Deere 5520, John Deere 5085, John Deere 955, Caterpillar 320C, Caterpillar D3 and other equipment.

37

149.     Plaintiff George Bollin purchased Defendants' 303 THF Products.  In the time period since December 1, 2013, Plaintiff Bolin purchased several 5-gallon buckets of the Super S SuperTrac 303 THF Product and the Super S 303 THF Product at the Tractor Supply Company store and the Orscheln Store located in Lansing, Kansas.  The 303 THF Product was used by Plaintiff Bollin in his John Deere tractor, International tractor, and other equipment.

150.     Plaintiff Kyle Boyd purchased Defendants' 303 THF Products in buckets at the Tractor Supply Company store in Harrison, Arkansas.  The 303 THF Product was used in Plaintiff Boyd's Ford, Deutz, and Kubota tractors and Plaintiff's combines.

151.     Plaintiff Sean Buford purchased Defendants' 303 THF Products in buckets at the Tractor Supply Company store in Newport, Arkansas.  The 303 THF Product was used in Plaintiff Buford's John Deere tractors and Plaintiff's combines.

152.     Plaintiff Steve Burgdorf purchased one of Defendants' 303 THF Products. In the time period of December 1, 2013 to the present, Plaintiff Burgdorf purchased 5-gallon buckets of the Super S Supertrac 303 Tractor Hydraulic Fluid and Super S 303 Tractor Hydraulic Fluid at the Tractor Supply Company Store located in Belleville, Illinois.  The 303 THF Products were used by Plaintiff Burgdorf in his two tractors.

153.     Plaintiff Todd Carusillo purchased Defendants' 303 THF Products.  In the time period of December 1, 2013 to the present, Plaintiff Carusillo purchased Defendants' 303 THF Products at the Tractor Supply Company store in Barkhamstead, Connecticut.  The 303 THF Products were used by Plaintiff Carusillo in his International 706 tractor, Kubota tractor, excavator and other equipment.

154.     Plaintiff Douglas Clough purchased Defendants' 303 THF Products.  In the time period of December 1, 2013 to the present, Plaintiff Clough purchased Defendants' 303 THF

Products at the Tractor Supply Company store in Cadillac, Michigan. The 303 THF Products were used by Plaintiff Clough in his John Deere tractor and other equipment.

155. Plaintiff Clinton Curry most recently purchased Defendants' 303 THF Products in at the Rural King retail store in Cross Lanes, West Virginia. The 303 THF Product was used in Plaintiff's 200 Kumatsu Excavator.

156. Plaintiff Sawyer Dean purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Dean purchased Defendants' 303 THF Products at the Tractor Supply Company stores in Queensbury and Greenwich, New York. The 303 THF Products were used by Plaintiff Dean in his Ford TW-35 tractor, Ford A-64 payloader, International 1086, John Deere 2440 tractor and other equipment.

157. Plaintiff Daniel Denton purchased Defendants 303 THF products several times in the state of Texas, most recently in 2018 at the Tractor Supply Company store in Magnolia, Texas. The 303 THF Product was used in Plaintiff Denton's John Deere tractors, for personal use around his home and property in Plantersville, Texas.

158. Plaintiff Kirk Egner purchased one of Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Egner purchased several 5-gallon buckets of Defendants' 303 Products at the Rural King retail store and the Tractor Supply Company store in Paducah, Kentucky. The 303 THF Product was used by Plaintiff Egner in his tractor and other equipment.

159. Plaintiff Kyle Feldkamp purchased one of Defendants' 303 THF Products. In the time period of Spring 2014 to the present, Plaintiff Feldkamp purchased several 5-gallon buckets of the Cam2 Pro Tech 303 Tractor Hydraulic Oil and the Cam2 303 Tractor Hydraulic Oil at the

Rural King retail store located in Effingham, Illinois. The 303 THF Product was used by Plaintiff Feldkamp in his tractor and other equipment.

160. Plaintiff Norman Fohne purchased one of Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Fohne purchased 5-gallon buckets of the Cam2 Promax 303 Tractor Hydraulic Oil and the Cam2 303 Tractor Hydraulic Oil at the Rural King retail store located in Collinsville, Illinois. Also, in the time period of December 2013 to the present, Plaintiff Fohne purchased 5-gallon buckets of the Super S Supertrac 303 Tractor Hydraulic Fluid and Super S 303 Tractor Hydraulic Fluid at the Tractor Supply Company store in Belleville, Illinois. The 303 THF Products were used by Plaintiff Fohne in his tractor.

161. Plaintiff Duane Fosdick purchased Defendants' 303 THF Products at the Tractor Supply Company store in Chico, California. The 303 THF Products were used in Plaintiff Fosdick's farm and other equipment.

162. Plaintiff Patrick Gisi purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Gisi purchased Defendants' THF Products at the Runnings store in Aberdeen, South Dakota. The 303 THF Products were used by Plaintiff Gisi in his International 706 Tractor.

163. Plaintiff Robert Gosche purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Gosche purchased Defendants' 303 THF Products at the Tractor Supply Company store and the Rural King retail store in Tiffin, Ohio. The 303 THF Products were used by Plaintiff Gosche in his John Deere excavator and other equipment.

164. Plaintiff Arno Graves purchased Defendants' 303 THF Products. On several occasions in the time period of 2013 through 2017, Plaintiff Graves purchased 5-gallon buckets of the Cam2 ProMax 303 Tractor Hydraulic Oil Product at the Atwoods retail store located in Webb

40

City, Missouri and at the Tiff Store in Tiff City, Missouri. In the time period of December of 2013 to the present, Plaintiff Graves has also purchased Defendants' THF Products at the Tractor Supply Company store in Miami, Oklahoma and at the Atwoods store in Vinita, Oklahoma. The 303 THF Products were used by Plaintiff Graves in his John Deere 2030, Case 480E Backhoe, and 1066 International Farmall tractor.

165.    Plaintiff Michael Hamm purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Hamm purchased Defendants' 303 THF Products at the Tractor Supply Company store in New London, Wisconsin. The 303 THF Products were used by Plaintiff Hamm in his International 1086 tractor, International 1486 tractor, International 1440 combine, IH 756 tractor, IH 106 tractor and other equipment.

166.    Plaintiff Alan Hargraves purchased Defendants' 303 THF Products in buckets at the Tractor Supply Company store in Greenwood, Arkansas and at Discount Ag in Marvel, Arkansas. The 303 THF Product was used in Plaintiff Hargraves' John Deere tractor.

167.    Plaintiff Jeffery Harrison purchased Defendants' 303 THF Products in buckets at the Atwoods stores in Hot Springs and Arkadelphia, Arkansas. The 303 THF Product was used in Plaintiff Harrison's Case and Ford tractors, as well as other equipment.

168.    Plaintiff Brian Hayes purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Hayes purchased Defendants' THF Products at the Rural King retail store in Circleville, Ohio. The 303 THF Products were used by Plaintiff Hayes in his tractor and other equipment.

169.    Plaintiff Frank James purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Frank James purchased Defendants' 303 THF Products

at the Tractor Supply Company store and the Rural King retail store in Lafayette, Indiana. The 303 THF Products were used by Plaintiff Frank James in his excavators and other equipment.

170. Plaintiff William James purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff James purchased Defendants' THF Products at the Tractor Supply Company store and the Rural King retail store in Crossville, Tennessee. The 303 THF Products were used by Plaintiff James in his tractor and other equipment.

171. Plaintiff Jack Kimmich purchased Defendants' 303 THF Products at the Tractor Supply Company store in Gilroy, California. The 303 THF Products were used in Plaintiff Kimmich's farm equipment.

172. Plaintiff Jason Klingenberg purchased Defendants' 303 THF Products at the Tractor Supply Company store in Worthington, Minnesota. Plaintiff Klingenberg also purchased Defendant's 303 THF Products in Iowa. The 303 THF Products were used by Plaintiff Klingenberg in his heavy machinery and equipment.

173. Plaintiff Justin Lemonds purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Lemonds purchased Defendants' 303 THF Products at the Tractor Supply Company store in Biscoe, North Carolina. The 303 THF Products were used by Plaintiff Lemonds in his Massey Ferguson 3635 tractor, Long 260 tractor, Ford 7000 tractor, John Deere 250 loader.

174. Plaintiff Josh Lesko purchased one of Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Lesko purchased several 5-gallon buckets of the Cam2 Promax 303 Tractor Hydraulic Oil and the Cam2 303 Tractor Hydraulic Oil at the Rural King retail store located in Plano, Illinois. The 303 THF Product was used by Plaintiff Lesko in his New Holland and John Deere tractors, dump trucks and boom trucks, and other equipment.

42

175.     Plaintiff Larry Wyatt Loeffler purchased Defendants' 303 THF Products.  In the time period of December 2013 to the present, Plaintiff Loeffler purchased Defendants' 303 THF Products at Bomgaars in Scottsbluff, Nebraska.  The 303 THF Products were used by Plaintiff Loeffler in his tractor.

176.     Plaintiff Jacob Mabie purchased Defendants' 303 THF Products in March of 2017 at the Tractor Supply Company store in Baytown, Texas.  The 303 THF Product was used in Plaintiff Mabie's truck, tractor, skid steer, brush-hog, and woodcutter.

177.     Plaintiff Kyle Minich purchased Defendants' 303 THF Products.  In the time period of December 2013 to the present, Plaintiff Minich purchased Defendants' 303 THF Products at the Tractor Supply Company store in Clarion, Pennsylvania.  The 303 THF Products were used by Plaintiff Minich in his tractors and other equipment.

178.     Plaintiff Ron Nash purchased Defendants' 303 THF Products.  On several occasions in the time period of 2013 through 2017, Plaintiff Nash purchased 5-gallon buckets of the Cam2 ProMax 303 Tractor Hydraulic Oil Product at the Atwoods retail store located in Webb City, Missouri.  In the time period of December of 2013 to the present, Plaintiff Nash has also purchased Defendants' THF Products at the Atwoods store in Vinita, Oklahoma.  The 303 THF Products were used by Plaintiff Nash in his International Harvester Backhoe, International Farmall Tractor, Allis Chalmers Backhoe, and other equipment.

179.     Plaintiff Bryan Nelms purchased Defendants' 303 THF Products.  In the time period of December 2013 to the present, Plaintiff Nelms purchased Defendants' THF Products at the Logan's Auto Parts in Fayette, Alabama.  The 303 THF Products were used by Plaintiff Nelms in his Ford 3000 tractor and other equipment.

180.     Plaintiff Matt Ortner purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Ortner purchased Defendants' THF Products at the Rural King retail store in Circleville, Ohio. The 303 THF Products were used by Plaintiff Ortner in his tractor and other equipment.

181.     Plaintiff Ricky Peck purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Peck purchased several 5-gallon buckets of Defendants' 303 Products at the Rural King retail store and the Tractor Supply Company store in Paducah, Kentucky. The 303 THF Product was used by Plaintiff Peck in his tractor and other equipment.

182.     Plaintiff Mike Ping purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Ping purchased Defendants' 303 THF Products at the Tractor Supply Company store in Rock Hill, South Carolina. The 303 THF Products were used by Plaintiff Ping in his New Holland skid steer and tractor.

183.     Plaintiff Stanley Richardson purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Richardson purchased Defendants' 303 THF Products at the Tractor Supply Company store in Marshall, Texas. The 303 THF Products were used by Plaintiff Richardson in his Ford tractor and other equipment.

184.     Plaintiff Wayne Rupe purchased Defendant's 303 THF Products in Iowa and used the 303 THF Products in heavy machinery and other equipment.

185.     Plaintiff Adam Sevy purchased Defendants' 303 THF Products. In 2018 and 2019, Plaintiff Sevy purchased several 5-gallon buckets of the Super S 303 THF Product at the Orscheln retail store located in Louisburg, Kansas. The 303 THF Product was used by Plaintiff Sevy in his Ford 4000 Tractor, Allis 940 wheel loader, John Deere 240 Skid Steer, Ford L8000 dump truck, and hydraulic concrete buggy.

44

186.     Plaintiff Anthony Shaw purchased Defendants' 303 THF Products.  In the time period of December 2013 to the present, Plaintiff Anthony Shaw purchased Defendants' THF Products at the Tractor Supply Company store in Byron, Georgia.  The 303 THF Products were used by Plaintiff Anthony Shaw in his John Deere 4020 tractor, John Deere 4840 tractor and other equipment.

187.     Plaintiff Rusty Shaw purchased Defendants' 303 THF Products.  In the time period of December 2013 to the present, Plaintiff Rusty Shaw purchased Defendants' THF Products at the Tractor Supply Company store in Byron, Georgia.  The 303 THF Products were used by Plaintiff Rusty Shaw in his John Deere 2350 tractor, John Deere 3010 tractor, Masset Ferguson 65 tractor and other equipment.

188.     Plaintiff John Sigmon Entities purchased Defendants' 303 THF Products.  In the time period of December 2013 to the present, John Sigmon Entities purchased Defendants' 303 THF Products at the Tractor Supply Company store in Newton, North Carolina.  The 303 THF Products were used by Plaintiff John Sigmon Entities in tractors, loaders, skidders, and other equipment.

189.     Plaintiff Jay Simpson purchased Defendants' 303 THF Products.  In the time period of December 2013 to the present, Plaintiff Simpson purchased Defendants' THF Products at the Orscheln store in Auburn, Nebraska.  The 303 THF Products were used by Plaintiff Simpson in his New Holland and Ford tractors, as well as other equipment.

190.     Plaintiff Donald Snyder purchased Defendants' 303 THF Products in buckets at the Atwoods store in Harrison, Arkansas.  The 303 THF Product was used in Plaintiff Snyder's New Holland Backhoe.

191.     Plaintiff Charles Strickland purchased Defendants' 303 THF Products.  In the time period of December 2013 to the present, Plaintiff Strickland purchased Defendants' 303 THF Products at the Tractor Supply Company store in Lake City, Florida.  The 303 THF Products were used by Plaintiff Strickland in his Branson 2910 tractor and other equipment.

192.     Plaintiff Tim Sullivan purchased one of Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Tim Sullivan purchased several 5-gallon buckets of Defendants' 303 Products at the Tractor Supply Company store in Paducah, Kentucky.  The 303 THF Product was used by Plaintiff Sullivan in his tractor and other equipment.

193.     Plaintiff Tracy Sullivan purchased one of Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Tracy Sullivan purchased several 5-gallon buckets of Defendants' 303 Products at the Rural King retail store and the Tractor Supply Company store in Paducah, Kentucky.  The 303 THF Product was used by Plaintiff Sullivan in his tractor and other equipment.

194.     Plaintiff Jerry Terry purchased Defendants' 303 THF Products.  In the time period of December 2013 to the present, Plaintiff Terry purchased Defendants' 303 THF Products at a Tractor Supply Company store and a Rural King retail store in Mississippi.  The 303 THF Products were used by Plaintiff Terry  in his Massey Ferguson tractors.

195.     Plaintiff Twin Mills Timber & Tie Co., Inc. purchased one of Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Twin Mills Timber purchased hundreds of 5-gallon buckets of the Cam2 Pro Tech 303 Tractor Hydraulic Oil at the Rural King retail store located in Benton, Illinois.  The 303 THF Product was used by Plaintiff Twin Mills Timber in John Deere forklifts, skidders, Caterpillars, and other equipment.

196. Plaintiff Steve Upchurch purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Upchurch purchased Defendants' 303 THF Products at the Tractor Supply Company store in Biscoe, North Carolina. The 303 THF Products were used by Plaintiff Upchurch in his Massey Ferguson 3635 tractor, Long 260 tractor, Ford 7000 tractor, John Deere 250 loader and other equipment.

197. Plaintiff Randy Vilela purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Vilela purchased Defendants' THF Products at the Atwoods in Webb City, Missouri. The 303 THF Products were used by Plaintiff Vilela in his 950 Caterpillar and other equipment.

198. Plaintiff Ross Waterman purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Waterman purchased Defendants' 303 THF Products at the Tractor Supply Company store in Bennett, Colorado, at Bomgaars in Burlington, Colorado, and at Orscheln in Goodland, Kansas. The 303 THF Products were used by Plaintiff Waterman in his tractor and other equipment.

199. Plaintiff Dale Wendt purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Wendt purchased Defendants' 303 THF Products at Fleet Farm in Waupaca and Appleton, Wisconsin. The 303 THF Products were used by Plaintiff Wendt in his skid steer and hydraulic manure spreader.

200. Plaintiff William White purchased Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff White purchased Defendants' 303 THF Products at the Tractor Supply Company store in Lincolnton and Shelby, North Carolina. The 303 THF Products were used by Plaintiff White in his Ford 1720 tractor and other equipment.

47

201.    Plaintiff Dwayne Wurth purchased one of Defendants' 303 THF Products. In the time period of December 2013 to the present, Plaintiff Wurth purchased several 5-gallon buckets of the Cam2 Pro Tech 303 Tractor Hydraulic Oil at the Rural King retail store located in Paducah, Kentucky.  The 303 THF Product was used by Plaintiff Wurth in his Caterpillar Skid Steers and other equipment.

202.    Plaintiff Terry Zornes purchased Defendants' 303 THF Products. In the fall of 2017 and throughout 2018, Plaintiff Zornes purchased at least eight 5-gallon buckets of the Super S SuperTrac 303 Product at the Orscheln retail store located in Iona, Kansas.  The 303 THF Product was used by Plaintiff Zornes in his Caterpillar track loader.

203.    As a result of Defendants' manufacturing and offering the 303 THF Products for sale, Plaintiffs purchased a tractor hydraulic fluid that was falsely and deceptively offered for sale as a "303" fluid that contained quality base oils and additives, met or had an equivalency to required specifications and was safe for use in equipment when, in reality, the fluid offered was of uncertain quality, lacked adequate viscosity and additives, contained line wash or flush oil, had a value much less than the price offered for sale, and was likely to expose equipment to increased risk of wear and damage.

204.    Plaintiffs reasonably relied upon Defendants' representation that the fluid was a "303" fluid and Defendants' own labeling, statements and advertisements concerning the particular qualities and benefits of the 303 THF Products.

205.    All reasonable purchasers would consider based on the label that Defendants' 303 THF Products were suitable for use in tractors and other equipment and would not have any understanding or way to know that Defendants' 303 THF Products were of uncertain quality, lacked adequate viscosity and additives, contained line wash or flush oil, had a value much less

48

than the price offered for sale, and/or that use of Defendants' 303 THF Products would expose all equipment to increased wear and damage.

206. A reasonable purchaser would consider Defendants' labeling, statements and advertisements when looking to purchase a tractor hydraulic fluid. As a result of using Defendants' 303 THF Products, Plaintiffs and Class Members: (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were deprived of the benefit of the bargain because the 303 THF Products were different than what Defendants represented; (d) were deprived of the benefit of the bargain because the 303 THF Products had less value than what was represented; (e) did not receive a product that measured up to their expectations as created by Defendants; and/or (f) suffered increased and excessive wear and/or damage to their equipment, including damage to gears, seals and hydraulic systems.

207. When Defendants manufactured, named, labeled, marketed, advertised, distributed, and sold Plaintiffs and Class Members their 303 THF Products, Defendants knew or should have known that the products (1) did not meet or have an equivalency to manufacturer specifications and were not acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) were not an adequate substitute for and did not satisfy John Deere's JD-303 or J20A specifications; (3) were not adequate to provide extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) were not adequate to protect against rust and corrosion; and (5) were not appropriate for use in equipment of manufacturers including Allis-Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere, Oliver, Ford and Caterpillar.

208. Plaintiffs used the 303 THF Products in the manner in which Defendants advised they could and should be used.

49

209.     As a result of Defendants' 303 THF Products not meeting or being equivalent to specifications as labeled, advertised, marketed, warranted, and promised, Defendants violated consumer protection acts, breached express and implied warranties, fraudulently or negligently induced Plaintiffs and Class Members to purchase their products through material misrepresentations, acted in a negligent manner, and were unjustly enriched.

210.     Defendants' manufacture, labeling, and sale of the 303 THF Products was deceptive and misleading in at least the following respects:

(a) Defendants' use of "303" in the name of the products was deceptive and misleading.  The 303 THF Products did not use John Deere 303's formula and would not meet the specifications for John Deere 303.  Defendants packaged their 303 THF Products in the yellow bucket with illustrations of modern tractors and equipment so as to further deceive and mislead and create the impression that the 303 THF Products were legitimate tractor hydraulic fluids that met the specifications for John Deere 303 and other John Deere equipment.

(b) Defendants placed a deceptive and misleading statement on the product labels by claiming that John Deere 303 is one of the specifications for which the 303 THF Products were "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended."

(c) Defendants placed a deceptive and misleading statement on the product labels by claiming that J20A is one of the specifications for which the 303 THF Products were "[s]uitable as a replacement fluid for the following

50

manufacturers where a tractor hydraulic fluid of this quality is recommended."

(d) Defendants placed a deceptive and misleading statement on the product labels by listing eleven (11) other manufacturers as those for which the 303 THF Products were "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended," without specifying the equipment/specifications purportedly met for each of those eleven (11) manufacturers.

(e) Defendants engaged in deceptive and misleading conduct in failing to provide an adequate notice, disclaimer, or warning on the labels.

(f) Defendants placed a deceptive and misleading statement on the product labels by listing manufacturers of equipment in which the 303 THF Products purportedly may be used, when in reality the product did not meet many of the specifications for the listed manufacturers' modern or older model equipment.

(g) Defendants made a deceptive and misleading statement on the product labels by representing that the product had been field tested.

(h) Defendants made a deceptive and misleading statement on the product labels when claiming that the 303 THF Products "will provide excellent results in the areas of:

- Anti-wear properties
- Brake Chatter
- Extreme Pressure Properties
- Foam Suppression
- PTO Clutch Performance
- Rust Protection

51

▪ Water Sensitivity"

(i) Defendants engaged in misleading and deceptive conduct with regard to their 303 THF Products in failing to disclose that the products contained flush oil, line flush, waste oil and/or contained other materials that should never be contained in tractor hydraulic fluid.

211. The conduct listed in paragraph 210(a)-(i) constitutes deceptive and unconscionable business practices in violation of consumer protection laws.

212. Defendants concealed any internal test data and the truth about the 303 THF Products at all relevant times during the class period. Accordingly, Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Class, were not reasonably ascertainable to Plaintiffs and Class Members.

213. This action is brought by Plaintiffs against Defendants to recover all money paid by Plaintiffs and Class Members to Defendants for purchase of their 303 THF Products which were labeled, marketed, advertised, and sold in the dishonest, misleading, and deceptive manners noted herein, for recovery of the damage caused to equipment owned by Plaintiffs and the Class Members, for punitive damages, attorneys' fees, costs, and for all other remedies available to those aggrieved by Defendants' conduct.

## CLASS ACTION ALLEGATIONS

214. Plaintiffs bring this Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves, on behalf of a Nationwide Class and on behalf of twenty-six (26) state-specific Sub-Classes as defined below, to redress the wrongful conduct of Defendants in connection with their manufacturing, marketing, and sale of the 303 THF Products.

215.     Plaintiffs seek, on behalf of themselves and all others similarly situated, relief for Defendants' negligence, breach of warranty, unjust enrichment, fraudulent and negligent misrepresentations, and for their violations of various statutes.

216.     Plaintiffs thus seek certification of the following Nationwide Class of similarly situated persons:

> All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in the United States at any point in time from December 1, 2013 to present, excluding purchases of Super S Supertrac 303 Tractor Hydraulic Fluid made in Missouri.

217.     Plaintiffs also seek certification of the following state-specific Sub-Classes of similarly situated persons:

> (a) Alabama:  All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Alabama at any point in time from December 1, 2013 to present.

> (b) Arkansas:  All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Arkansas at any point in time from December 1, 2013 to present.

> (c) California:  All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in California at any point in time from December 1, 2013 to present.

> (d) Colorado:  All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Colorado at any point in time from December 1, 2013 to present.

(e) Connecticut: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Connecticut at any point in time from December 1, 2013 to present.

(f) Florida: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Florida at any point in time from December 1, 2013 to present.

(g) Georgia: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Georgia at any point in time from December 1, 2013 to present.

(h) Illinois: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Illinois at any point in time from December 1, 2013 to present.

(i) Indiana: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Indiana at any point in time from December 1, 2013 to present.

(j) Iowa: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Iowa at any point in time from December 1, 2013 to present.

(k) Kansas: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Kansas at any point in time from December 1, 2013 to present.

(l) Kentucky: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or

Cam2 303 Tractor Hydraulic Oil in Kentucky at any point in time from December 1, 2013 to present.

(m) Michigan:  All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Michigan at any point in time from December 1, 2013 to present.

(n) Minnesota: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Minnesota at any point in time from December 1, 2013 to present.

(o) Mississippi:  All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Mississippi at any point in time from December 1, 2013 to present.

(p) Missouri: All persons and other entities who purchased Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Missouri at any point in time from December 1, 2013 to present.

(q) Nebraska:  All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Nebraska at any point in time from December 1, 2013 to present.

(r) Ohio:   All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Ohio at any point in time from December 1, 2013 to present.

(s) Oklahoma: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Oklahoma at any point in time from December 1, 2013 to present.

(t) Pennsylvania:  All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor

55

Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Pennsylvania at any point in time from December 1, 2013 to present.

(u) South Carolina: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in South Carolina at any point in time from December 1, 2013 to present.

(v) South Dakota: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in South Dakota at any point in time from December 1, 2013 to present.

(w) Tennessee: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Tennessee at any point in time from December 1, 2013 to present.

(x) Texas: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Texas at any point in time from December 1, 2013 to present.

(y) West Virginia: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in West Virginia at any point in time from December 1, 2013 to present.

(z) Wisconsin: All persons and other entities who purchased Super S Supertrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, Cam2 ProMax 303 Tractor Hydraulic Oil, and/or Cam2 303 Tractor Hydraulic Oil in Wisconsin at any point in time from December 1, 2013 to present.

218. Excluded from the Class and Sub-Classes are those who purchased the 303 THF Products for resale.

219. Also excluded from the Class and Sub-Classes are Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents, employees and their immediate family members, as well as the judicial officers assigned to this litigation and members of their staffs and immediate families.

220. The 303 THF Products at issue were sold across the United States through retailers. The Class Members may be identified through use of sales receipts, affidavits, or through sales records.

221. The proposed Class and Sub-Classes are so numerous that joinder of all Class Members and Sub-Class Members is impracticable. Although the exact number of Members of each Class and Sub-Class is not known at this time, there are thousands of Members of the Class and each Sub-Class.

222. There are questions of fact and law common to the Class and each Sub-Class which predominate over questions affecting only individual Class Members. The questions of law and fact common to each Class and Sub-Class arising from Defendants' actions include, without limitation, the following:

(a) The components and qualities of Defendants' 303 THF Products, and the cost to Defendants to manufacture, distribute, market and sell their 303 THF Products;

(b) Whether Defendants were unjustly enriched;

(c) Whether Defendants were negligent;

(d) Whether Defendants breached the express warranties provided with regard to the 303 THF Products;

(e) Whether Defendants breached the implied warranty of merchantability with regard to the 303 THF Products;

(f) Whether Defendants breached the implied warranty of fitness for particular purpose with regard to the 303 THF Products;

(g) Whether Defendants deliberately failed to disclose material facts to consumers regarding the quality of the 303 THF Products and the obsolete nature of the products and the specifications the products claimed to meet;

(h) Whether Defendants' manufacturing, labeling, advertising, marketing, and/or sale of their 303 THF Products was deceptive, unfair, and/or dishonest as alleged above;

(i) Whether Defendants' 303 THF Products were being labeled, advertised and marketed as alleged above;

(j) Whether Defendants' 303 THF Products in actuality were as alleged above;

(k) Whether Defendants studied or tested their labeling and the effect of the labeling on consumers' perceptions, and whether Defendants studied the susceptibility of consumers who might purchase tractor hydraulic fluid;

(l) Whether Defendants' representations regarding their 303 THF Products were false and made knowingly by Defendants;

(m) Whether Defendants' representations were false and made negligently by Defendants; and

(n) Whether use of the 303 THF Products caused and/or exposed equipment to damage.

223.    The claims of each representative Plaintiff are typical of those in the putative Class and each respective Sub-Class because each purchased Defendants' 303 THF Products and was similarly treated.

224.    Plaintiffs are adequate representatives of the Class and each respective Sub-Class because their interests do not conflict with the interests of other Members of the Class or Sub-Class.  The interests of the other Class and Sub-Class Members will be fairly and adequately protected by Plaintiffs and counsel, who have extensive experience prosecuting complex litigation and class actions.

225.    A Class Action is the appropriate method for the fair and efficient adjudication of this controversy.  It would be impracticable, cost prohibitive, and undesirable for each Member of

58

the Class and each Sub-Class to bring a separate action. In addition, the presentation of separate actions by individual Class and Sub-Class Members creates the risk of inconsistent and varying adjudications, establishes incompatible standards of conduct for Defendants, and/or substantially impairs or impedes the ability of Class Members to protect their interests. A single Class Action can determine, with judicial economy, the rights of the Members of the Class and each Sub-Class.

226.    A Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

227.    Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class and each Sub-Class. The Class Action is based on Defendants' acts and omissions with respect to the Class and each Sub-Class as a whole, not on facts or law applicable only to the representative Plaintiffs. All Class and Sub-Class Members who purchased Defendants' products were treated similarly. Thus, all Class and Sub-Class Members have the same legal right and interest in relief for damages associated with the violations enumerated herein.

228.    Class certification is also appropriate for class-wide injunctive relief pursuant to Rule 23(b)(2).

229.    Plaintiffs each assert in Counts I through VI, below, the following claims on behalf of themselves and the Nationwide Class and, alternatively, each state Sub-Class:

- Count I – Negligence

- Count II – Breach of Express Warranty

- Count III – Breach of Implied Warranty of Merchantability

- Count IV – Breach of Implied Warranty of Fitness for Particular Purpose

- Count V – Unjust Enrichment

- Count VI – Fraud/Misrepresentation

- Count VII – Negligent Misrepresentation

230. Plaintiff Nelms asserts Counts I through VII on behalf of himself and the Alabama Sub-Class.

231. Plaintiffs Buford, Anderson, Boyd, Hargraves, Harrison, and Snyder assert Counts I through VII as well as the following on behalf of themselves and the Arkansas Sub-Class:

Count VIII -- Arkansas Deceptive Trade Practices Act, § 4-88-101

232. Plaintiffs Fosdick and Kimmich assert Counts I through VII as well as the following on behalf of themselves and the California Sub-Class:

Count IX -- California Unfair Competition Law, California Civil Code §17200 *et seq*.

Count X-- False and Misleading Advertising in Violation of California Business & Professions Code §17500 *et seq*.

Count XI --  California Consumers Legal Remedies Act, California Civil Code §1750 *et seq*.

233. Plaintiff Waterman asserts Counts I through VII as well as the following on behalf of himself and the Colorado Sub-Class:

Count XII -- Colorado's Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq*.

234. Plaintiff Carusillo asserts Counts I through VII as well as the following on behalf of himself and the Connecticut Sub-Class:

Count XIII – Connecticut Consumer Protection Act, Conn. Gen. Stat. § 42-110g, *et seq*.

235. Plaintiff Strickland asserts Counts I through VII as well as the following on behalf of himself and the Florida Sub-Class:

60

Count XIV -- Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*

Count XV -- Florida Misleading Advertising Law, Fla. Stat. § 817.41.

236.     Plaintiffs Anthony Shaw and Rusty Shaw assert Counts I through VII on behalf of themselves and the Georgia Sub-Class.

237.     Plaintiffs Feldkamp, Lesko, Fohne, Burgdorf, Allicks, and Twin Mills assert Counts I through VII as well as the following on behalf of themselves and the Illinois Sub-Class:

Count XVI -- Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*

238.     Plaintiff Frank James asserts Counts I through VII as well as the following on behalf of himself and the Indiana Sub-Class:

Count XVII – Indiana Consumer Protection Act, Ind. Code § 24-5-0.5-5.

239.     Plaintiffs Blackmore, Rupe, and Klingenberg assert Counts I through VII on behalf of themselves and the Iowa Sub-Class.

240.     Plaintiffs Zornes, Sevy, and Bollin assert Counts I through VII as well as the following on behalf of themselves and the Kansas Sub-Class:

Count XVIII – Kansas Consumer Protection Act, K.S.A. § 50-623 *et seq.*

241.     Plaintiffs Wurth, Egner, Tim Sullivan, Tracy Sullivan, and Peck assert Counts I through VII as well as the following on behalf of themselves and the Kentucky Sub-Class:

Count XIX -- Kentucky Consumer Protection Act, Ky. Rev. Stat. §367.170 (2015).

242.     Plaintiff Clough asserts Counts I through VII as well as the following on behalf of himself and the Michigan Sub-Class:

Count XX – Michigan Consumer Protection Act, MCL 445.901 *et seq.*

243. Plaintiff Klingenberg asserts Counts I through VII as well as the following on behalf of himself and the Minnesota Sub-Class:

> Count XXI -- Minnesota Consumer Fraud Act, Minnesota statute § 325F.67 *et seq.*

244. Plaintiff Blakeney asserts Counts I through VII on behalf of himself and the Mississippi Sub-Class:

245. Plaintiffs Graves, Nash, and Vilela assert Counts I through VII as well as the following claim on behalf of themselves and the Missouri Sub-Class:

> Count XXII – Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010

246. Plaintiffs Loeffler and Simpson assert Counts I through VII as well as the following claims on behalf of themselves and the Nebraska Sub-Class:

> Count XXIII – Nebraska Consumer Protection Act, Neb. Rev. St. §§59-1601

> Count XXIV – Nebraska's Uniform Deceptive Trade Practices Act, Neb. Rev. St. §§ 87-301 *et seq.*

247. Plaintiff Dean asserts Counts I through VII as well as the following claim on behalf of himself and the New York Sub-Class:

> Count XXV -- New York Consumer Protection Law, N.Y.C.P.L.R. § 214, *et seq.*

248. Plaintiffs Lemonds, John Sigmon Entities, Upchurch and White assert Counts I through VII as well as the following claim on behalf of themselves and the North Carolina Sub-Class:

> Count XXVI -- North Carolina Consumer Protection Act, N.C.G.S. § 75-1.1 *et seq.*

249. Plaintiffs Gosche, Hayes and Ortner assert Counts I through VII as well as the following claim on behalf of themselves and the Ohio Sub-Class:

Count XXVII – Ohio Consumer Sales Practices Act ("OCSPA"), R.C. 1345.01

250. Plaintiffs Graves and Nash assert Counts I through VII as well as the following claim on behalf of themselves and the Oklahoma Sub-Class:

Count XXVIII — Oklahoma Consumer Protection Statute.

251. Plaintiff Minich asserts Counts I through VII as well as the following on behalf of himself and the Pennsylvania Sub-Class:

Count XXIX – Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et. seq.*

252. Plaintiff Ping asserts Counts I through VII on behalf of himself and the South Carolina Sub-Class.

253. Plaintiff Gisi asserts Counts I through VII as well as the following claim on behalf of himself and the South Dakota Sub-Class:

Count XXX – South Dakota Consumer Protection Statute.

254. Plaintiff William James asserts Counts I through VII on behalf of himself and the Tennessee Sub-Class.

255. Plaintiffs Mabie and Denton assert Counts I through VII as well as the following claim on behalf of themselves and the Texas Sub-Class:

Count XXXI – Texas Deceptive Trade Practices, Texas Business and Commerce Code § 17.41 *et seq.*

256. Plaintiffs Bias and Curry assert Counts I through VII as well as the following claim on behalf of themselves and the West Virginia Sub-Class:

Count XXXII – West Virginia Consumer Protection Statute, W. Va. Code Ann. § 55-2-12, et seq.

257. Plaintiffs Hamm and Wendt assert Counts I through VII as well as the following claim on behalf of themselves and the Wisconsin Sub-Class:

Count XXXIII – Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18/.

## COUNT I
### Negligence

258. Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

259. Defendants owed a duty of at least reasonable care to the purchasers of their 303 THF Products, including a duty to use reasonable care in the manufacture, sampling, testing, labeling and marketing of the finished 303 THF Products.

260. Defendants breached this duty and were negligent by the acts and omissions alleged herein, including but not limited to:

(a) Distributing and using misleading labeling information regarding the 303 THF Products qualities and OEM specifications met by the products;

(b) Failing to adequately warn and instruct purchasers about the true nature of the 303 THF Products and potential harm to equipment caused by use of the 303 THF Products in equipment for which it does not meet specifications;

(c) Failing to adequately ensure the 303 THF Products manufactured and sold met or had an equivalency to the advertised specifications and/or were suitable for use as tractor hydraulic fluid;

(d) Failing to utilize adequate testing and other controls to ensure the 303 THF Products met the advertised specifications and/or were suitable for use as tractor hydraulic fluid; and

64

(e) Instituting and/or allowing careless and ineffective product manufacturing protocols.

261. As a result of Defendants' negligence, Defendants' 303 THF Products had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics, were not suitable for use as tractor hydraulic fluid and/or did not meet one or more of the manufacturers' specifications.

262. Defendants' negligence caused or contributed to cause injuries and damages to Plaintiffs and the Class and Sub-Class Members and caused Plaintiffs' and the Class and Sub-Class Members' equipment to suffer harm and damage, including wear, damage and leakage in the seals, exposure to damage in the spiral gear in the drive, improper and poor shifting, wear and damage to the wet brakes, high pump leakage, and damage from deposits, sludging and thickening. Defendants' negligence also caused or contributed to cause Plaintiffs and the Class and Sub-Class Members to overpay for a product that was worthless and/or worth much less than the sale price.

263. Defendants concealed any internal test data and the truth about the 303 THF Products at all relevant times during the class period. Accordingly, Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Class, were not reasonably ascertainable to Plaintiffs or Class Members.

264. Plaintiffs and Class and Sub-Class Members are thus entitled to an award of compensatory damages, prejudgment interest and post-judgment interest.

265. Defendants' conduct was grossly negligent and showed a complete indifference to or conscious disregard of the rights of others, including Plaintiffs and Class and Sub-Class Members, such that punitive damages are thus warranted.

65

**COUNT II**
**Breach of Express Warranty**

266.     Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

267.     Plaintiffs and Class Members purchased Defendants' 303 THF Products.

268.     As set forth above, Defendants made common statements of facts regarding quality and use in the name and on the label of the 303 THF Products.

269.     The common statements Defendants made in the name and on the label of the 303 THF Products were made to induce Plaintiffs and Class and Sub-Class Members to purchase the 303 THF Products and/or were a material factor in inducing Plaintiffs and Class and Sub-Class Members to purchase the 303 THF Products, and therefore became part of the basis of the benefit of the bargain and an express warranty.

270.     As set forth above, the THF 303 Products did not conform to the statements of Defendants.  As a result, Plaintiffs and the Class and Sub-Class Members did not receive goods as warranted by Defendants.

271.     Defendants have received from Plaintiffs timely notification of the defects in their THF 303 Products.

272.     The failure of the THF 303 Products to conform to the statements of Defendants has caused injury and damage to Plaintiffs and Class and Sub-Class Members.

**COUNT III**
**Breach of Implied Warranty of Merchantability**

273.     Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

66

274.     Defendants directly or indirectly sold the 303 THF Products to Plaintiffs and Class and Sub-Class Members for use as described above.

275.     As set forth above, at the time Defendants sold the 303 THF Products, the products were not fit for their ordinary use and the use described by Defendants.

276.     Plaintiffs and Class and Sub-Class Members used the 303 THF Products for their ordinary purpose and the use described by Defendants.

277.     Defendants have received from Plaintiffs timely notification of the defects in their 303 THF Products.

278.     The failure of the 303 THF Products to be fit for their ordinary purpose has caused injury and damage to Plaintiffs and Class and Sub-Class Members.

<u>**COUNT IV**</u>
**Breach of Implied Warranty of Fitness for Particular Purpose**

279.     Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

280.     Defendants directly or indirectly sold the 303 THF Products to Plaintiffs and Class and Sub-Class Members for use as described above.

281.     As set forth above, at the time Defendants sold the 303 THF Products, the products were not fit for their particular purpose for use as universal hydraulic fluid for tractors and/or other equipment.

282.     Defendants knew or should have known of the uses for which the 303 THF Products were purchased.

283.     Plaintiffs and Class and Sub-Class Members reasonably relied upon Defendants' judgment that the 303 THF Products were fit for use as universal hydraulic fluid for tractors and/or other equipment.

67

284.    Defendants have received from Plaintiffs timely notification of the defects in their 303 THF Products.

285.    The failure of the 303 THF Products to be fit for their particular purpose has caused injury and damage to Plaintiffs and Class and Sub-Class Members.

**COUNT V**
**Unjust Enrichment**

286.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

287.    As a result of Defendants' deceptive, fraudulent, and misleading naming, labeling, advertising, marketing, and sales of the 303 THF Products, Plaintiffs and the Class and Sub-Class Members purchased Defendants' 303 THF Products and conferred a benefit upon Defendants by purchasing obsolete, worthless and harmful fluid, which benefit Defendants appreciated and accepted.

288.    Those benefits were obtained by Defendants under false pretenses because of Defendants' concealments, misrepresentations, and other deceptive, misleading, and unfair conduct relating to the 303 THF Products.

289.    Defendants were enriched at the expense of Plaintiffs and other Class and Sub-Class Members through the payment of the purchase price for Defendants' 303 THF Products.

290.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and Class and Sub-Class Members have suffered damages in an amount to be determined at trial.

291.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs and the other Class and Sub-Class Members, in light of the fact that the 303 THF Products purchased by Plaintiff and

the other Members of the Class and Sub-Classes were not what Defendants represented them to be. Thus, it would be inequitable or unjust for Defendants to retain the benefit without restitution to Plaintiffs and the other Members of the Class and Sub-Classes for the monies paid to Defendants for the 303 THF Products.

292. By reason of the foregoing, Defendants should be required to account for and disgorge all monies, profits, and gains which they have obtained at the expense of Plaintiffs and Class and Sub-Class Members.

**COUNT VI**
**Fraudulent Misrepresentation**

293. Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

294. Defendants made representations regarding their 303 THF Products, as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, and that the 303 THF Products provided certain qualities, results and benefits.

295. Defendants' representations as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, and that the 303 THF Products provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were false and made knowingly by Defendants, and were therefore fraudulent.

296. Defendants' representations as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met or had an equivalency to specifications, that the 303 THF

Products provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant with the intent that Plaintiffs and other Class and Sub-Class Members rely on such representations.

297. Defendants' representations as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, that the 303 THF Products provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant despite knowing the representations were false at the time the representations were made, and/or without knowledge of the truth or falsity of the representations.

298. Defendants' representations were material to the purchase of the 303 THF Products.

299. Plaintiffs and Class and Sub-Class Members relied on Defendants' representations, and such reliance was reasonable under the circumstances.

300. Defendants' conduct as set forth herein with regard to the name, labeling, marketing and sale of the 303 THF Products constitutes fraud on Plaintiffs and all Class and Sub-Class Members.

301. Plaintiffs and Class and Sub-Class Members have been economically damaged by Defendants' fraudulent conduct with regard to the marketing and sale of the 303 THF Products.

302. As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and Class and Sub-Class Members have suffered ascertainable losses of money and other damages.

303. Defendants concealed any internal test data and the truth about the 303 THF Products at all relevant times during the class period. Accordingly, Defendants'

70

misrepresentations and omissions, and the fact of injury to Plaintiffs and the Class and Sub-Classes, were not reasonably ascertainable to Plaintiffs and Class Members.

304. Defendants' conduct as described herein was intentional and/or in reckless disregard for the rights of Plaintiffs and other Class and Sub-Class Members.

305. Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

**COUNT VII**
**Negligent Misrepresentation**

306. Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

307. Defendants made representations regarding their 303 THF Products, as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, and that the 303 THF Products provided certain qualities, results and benefits.

308. Such representations were made by Defendants with the intent that Plaintiffs and the Class and Sub-Class Members rely on such representations in purchasing Defendants' 303 THF Products.

309. Such representations were material to Plaintiffs' and the Class and Sub-Class Members' purchase of Defendants' 303 THF Products.

310. Such representations were false.

311. Defendants failed to use ordinary care and were negligent in making and/or allowing to be made the representations set forth above.

312. Plaintiffs and the Class and Sub-Class Members relied on such representations and such reliance was reasonable under the circumstances.

71

313.     Plaintiffs and Class and Sub-Class Members have been economically damaged by Defendants' negligent conduct with regard to the marketing and sale of the 303 THF Products.

314.     Defendants concealed any internal test data and the truth about the 303 THF Products at all relevant times during the class period.  Accordingly, Defendants' misrepresentations and omissions, and the fact of injury were not reasonably ascertainable to Plaintiffs and the Class and Sub-Classes.

315.     As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class and Sub-Class Members have suffered ascertainable losses of money.

316.     Defendants concealed any internal test data and the truth about the 303 THF Products at all relevant times during the class period.  Accordingly, Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Class and Sub-Classes, were not reasonably ascertainable to Plaintiffs and Class Members.

317.     Defendants' conduct as described herein was intentional and/or in reckless disregard for the rights of Plaintiffs and other Class and Sub-Class Members.

318.     Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

## COUNT VIII
### Violation of Arkansas Deceptive Trade Practices Act

319.     Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

320.     The Arkansas Deceptive Trade Practices Act, § 4-88-101, *et. seq*. (the "Act"), prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  For example, the Act prohibits suppliers from representing that goods have characteristics or uses or benefits which they do not have.  The Act also prohibits suppliers from representing that their

72

products or goods are of a particular standard, quality, or grade they are not; that the products or goods have been supplied in accordance with a previous representation, if they have not; and that the transaction involves a warranty, rights, remedies, or obligations if that representation is false.

321. Defendants' actions as described throughout this Consolidated Amended Complaint violate the Act, specifically A.C.A. §§ 4-88-107(a)(1), (a)(3), and (a)(10); as well as the provisions found in A.C.A. § 4-88-108(a)(1) and (a)(2).

322. Defendants have violated (and continue to violate) each one of these provisions by misrepresenting that the 303 THF Products have or had certain characteristics, are or were of a particular standard, quality, or grade, and committed and continue to commit various other acts of deception, false pretense, false promise, or misrepresentations in connection with consumer transactions, including, among other things:

    (a) Manufacturing, selling and/or distributing 303 THF Products that fail to meet product specifications as generally understood in the industry;

    (b) Manufacturing, importing, selling and/or distributing 303 THF Products that fail to comply with all applicable laws and regulations; and

    (c) Making false and misleading statements and omitting to disclose material information regarding defects in their 303 THF Products including, without limitation, the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, and that the 303 THF Products provided certain qualities, results and benefits.

323. Plaintiffs and members of the Arkansas Sub-Class have suffered actual financial loss as a result of Defendants' misconduct as alleged herein. Plaintiffs and other members of the

Arkansas Sub-Class paid for defective products based on their reliance on Defendants' representations that the 303 THF Products were fit for their intended use as found on Defendants' packaging, in their advertising and marketing materials, and/or other publicly available information.

324. Accordingly, Plaintiffs and the members of the Arkansas Sub-Class are entitled to recover their damages, attorneys' fees, and punitive damages pursuant to A.C.A. § 4-88-113.

## COUNT IX
### Violation of the California Unfair Competition Law
### California Civil Code §17200 *et seq.*

325. Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

326. This Count is brought on behalf of the entire California Sub-Class.

327. The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising. Cal. Bus. Prof. Code §17200.

328. Defendants' business acts and practices complained of herein were centered in, emanated from and were carried out, effectuated and perfected in the United States and from within the State of California.

329. Beginning in at least December 2013, Defendants committed acts of unfair competition, as defined by California Business and Professions Code § 17200 *et seq.*, by engaging in the acts and practices specified herein.

330. Defendants engaged in "unfair" and deceptive business acts and practices by, among other things, marketing, distributing, and/or selling 303 THF Products, ostensibly under and pursuant to California law while, in truth, intending to commit and in fact committing

wholesale violations of California law, including the False Advertising act, the Consumer Legal Remedies Act, and other violations relating to the misleading labelling of 303 THF Products.

331.    Plaintiffs and all members of the California Sub-Class were harmed by Defendants' aforementioned unlawful unfair and fraudulent business acts and practices occurring in the State of California. As alleged herein, Plaintiffs have been victimized by, and have suffered injury in fact and lost money or property as a result of, Defendants' conduct associated with the distribution, marketing, and sale of 303 THF Products.

332.    Defendants' actions and practices, as alleged in this Consolidated Amended Complaint, were unfair, deceptive, misleading and likely to deceive the consuming public within the meaning of Business & Professions Code §17200 *et seq*.

333.    As stated in this Consolidated Amended Complaint, Defendants' violations of consumer protection laws and their unfair competition resulted in harm to consumers that is ongoing.  Defendants' acts constitute violations of the unfair prong of Business & Professions Code §17200 *et seq*.

334.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

335.    As a result of their deception, Defendants have been able to reap unjust revenue and profit.

336.    Plaintiffs, on behalf of themselves and all other California Sub-Class Members, seek restitution and disgorgement of all money obtained from Plaintiffs and the members of the Class collected as a result of Defendants' misconduct and injunctive relief in the form of an order prohibiting Defendants from undertaking such practices in the future and requiring Defendants to

engage in and undertake corrective measures, and all such other and further relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## COUNT X
**False and Misleading Advertising in Violation of California Business & Professions Code §17500 *et seq*.**

337.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

338.    This Count is brought on behalf of the entire California Sub-Class.

339.    Throughout the period during which they have marketed, distributed, and/or sold 303 THF Products, Defendants engaged in unlawful and/or fraudulent conduct under California Business & Professions Code §§ 17500, *et seq*., by engaging in the sale of 303 THF Products based on publicly disseminated advertisements, and terms and conditions that Defendants knew or reasonably should have known were unfair, deceptive, untrue and/or misleading. Defendants committed such violations of the False Advertising Law with actual knowledge or knowledge fairly implied on the basis of objective circumstances.

340.    Defendants' advertisements, representations, and labeling as described herein were designed to, and did, result in the purchase and use of the 303 THF Products and Defendants profited from the sales of these products to unwary consumers.

341.    As a direct result of Defendants' violations, Plaintiffs and the California Sub-Class Members suffered injury in fact and lost money.

342.    Accordingly, Plaintiffs, on behalf of themselves and all other California Sub-Class Members, seek restitution and injunctive relief against Defendants in the form of an order prohibiting Defendants from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

## COUNT XI
### Violation of the Consumers Legal Remedies Act,
### California Civil Code §1750 *et seq.*

343.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

344.    This Count is brought on behalf of California Sub-Class Members who purchased 303 THF Products for personal, family, or household use.

345.    Defendants are "persons" within the meaning of California Civil Code §§ 1761(c) and 1770, and Defendants provide "goods" within the meaning of Civil Code §§ 1761(a) and 1770. Defendants' customers, including Plaintiffs and California Sub-Class Members, are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770. Each purchase of Defendants' 303 THF Products by Plaintiff and each California Sub-Class Member as alleged herein constitutes a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770. Each California Sub-Class Member purchased goods from Defendants that was primarily for personal, family, or household purposes.

346.    The Consumer Legal Remedies Act makes it unlawful for a company to:

(a) Misrepresent the certification of goods. Cal. Civ. Code § 1770(a)(2)(3);

(b) Represent that goods have characteristics or approval that they do not have. Cal. Civ. Code § 1770(a)(5);

(c) Represent that goods are of a particular standard, quality, or grade, if they are of another. Cal. Civ. Code § 1770(a)(7);

(d) Advertise goods with intent not to sell them as advertised. Cal. Civ. Code § 1770(a)(9); and,

77

(e) Represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not. Cal. Civ. Code § 1770(a)(16).

347.    Defendants' conduct that violated and continues to violate the CLRA includes, without limitation, deceptively representing that 303 THF Products meet or have an equivalency to the obsolete and non-existent "303" designation,  meet or have an equivalency to the other obsolete J14B and J20A specifications, and/or provide the other advertised benefits and are suitable for use as a tractor hydraulic fluid.  This was deceptive because Defendants did not possess generally accepted data to substantiate the claims on the product labels and because there is no known "303" specification and there is no way for manufacturers, sellers, or anyone else to truthfully claim the products meet or are in compliance with any such specification.

348.    Defendants violated the CLRA by representing that 303 THF Products provided the benefits listed on the label, were suitable for use as a tractor hydraulic fluid and/or met of had an equivalency to the "303 designation," as described above when it knew, or should have known, that the representations and advertisements were unsubstantiated, false and misleading.

349.    Throughout the period during which they have marketed, distributed, or sold and offered for sale 303 THF Products, Defendants violated and continue to violate the above-mentioned provisions.

350.    As a direct and proximate result of Defendants' violations, Plaintiff Kimmich and California Sub-Class Members have suffered and are continuing to suffer harm.

351.    Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA because Defendants are continuing to engage in the practices complained of herein and which have injured Plaintiffs and California Sub-Class Members.

352. Pursuant to §1782 of the CLRA, by letters dated September 13, 2019, counsel for Plaintiff Kimmich notified Defendants in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Copies of the letters are attached hereto as "Exhibit A."

353. Plaintiff Kimmich, on behalf of himself and other California Sub-Class Members similarly situated, seeks a court order enjoining the above-described wrongful acts and practices of Defendants and further seek an order and awards for restitution, disgorgement, and for such other relief, including attorneys' fees and costs, as provided in Civil Code § 1780 and the Prayer for Relief.

## COUNT XII
### Violation of the Colorado Consumer Protection Act,
### Colo. Rev. Stat. § 6-1-101, *et seq*.

354. Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

355. Defendants are designers, manufacturers, promoters, marketers, developers, sellers, and/or distributors of the harmful 303 THF Products.

356. Defendants sold the harmful 303 THF Products in Colorado and throughout the United States during the Class Period.

357. Defendants knew or should have known that the 303 THF Products caused their customers, in reasonable probability, to be deceived.

358. Defendants have violated the Colorado Deceptive Trade Practice Act, Sec. 6-1-105. In selling the 303 THF Products at issue to Plaintiff Waterman and the Members of the Colorado Sub-Class, Defendants have used deception, fraud, false pretense, misrepresentation or the

79

concealment, suppression or omission of material facts, either expressly or by implication, by the representations and concealment set forth herein, including, without limitation, representing that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, and that the 303 THF Products provided certain qualities, results and benefits, and through Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications.

359.    Defendants intentionally and knowingly used deception, false pretense, false promise, misrepresentation and/or concealment of material facts regarding the harmful 303 THF Products with intent to mislead Plaintiff Waterman and Members of the Colorado Sub-Class.

360.    As a result of Defendants' unlawful business practices, Plaintiff Waterman and the Members of the Colorado Sub-Class are entitled to an order enjoining such future conduct and to such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to Plaintiff Waterman and Colorado Sub-Class Members any money paid for the harmful 303 THF Products.

361.    Plaintiff Waterman has standing to pursue this claim as he has suffered actual economic damages as a proximate result of Defendants' actions set forth herein.

## COUNT XIII
### Violation of the Connecticut Consumer Protection Act,
### Conn. Gen. Stat. § 42-110g, *et seq*.

362.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

363.    Defendants are each a "person" as defined by Conn. Gen. Stat. § 42-110a(3).

364.    Defendants are engaged in "trade" or "commerce" as those terms are defined by Conn. Gen. Stat. § 42-110a(4).

365. Plaintiffs has sent notice to the Attorney General and Commissioner of Consumer Protection pursuant to Conn. Gen. Stat. § 42-110g(c). Plaintiffs will provide a file-stamped copy of this Complaint to the Attorney General and Commissioner of Consumer Protection.

366. Defendants advertised, offered, or sold goods or services in Connecticut, and engaged in trade or commerce directly or indirectly affecting the people of Connecticut.

367. Defendants engaged in deceptive acts and practices and unfair acts and practices in the conduct of trade or commerce, in violation of Conn. Gen. Stat. § 42-110b, by misrepresenting Defendants' 303 THF Products, concealing the 303 THF Products' defects, concealing the risks associated with use of Defendants' 303 THF Products, and also concealing and misrepresenting the true nature of Defendants' 303 THF Products.

368. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff Carusillo and the Connecticut Sub-Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendants' 303 THF Products, and increased time and expense in dealing with the damages from the use of Defendants' 303 THF Products.

369. Defendants' deceptive acts and practices caused substantial, ascertainable injury to Plaintiff Carusillo and the Connecticut Sub-Class Members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

370. Defendants' violations of Connecticut law were done with reckless indifference to the Plaintiff Carusillo and the Connecticut Sub-Class Members or were done with an intentional or wanton violation of those rights.

81

371.    Plaintiff Carusillo and the Connecticut Sub-Class Members request damages in an amount to be determined at trial, including statutory and common law damages, attorneys' fees, and punitive damages.

**COUNT XIV**
**Violation of the Florida Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. § 501.201, *et seq*.**

372.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

373.    **Violation No. 1 – Deceptive Acts or Practices.** Plaintiff Strickland and the Florida Sub-Class Members are "consumers" within the meaning of Part II of Chapter 501, Florida Statutes, relating to Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

374.    Defendants each qualify as a "person" or "entity" as used in the FDUTPA.

375.    Pursuant to the FDUTPA, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

376.    As set forth above, Defendants have, in the course of trade or commerce, engaged in unconscionable, unfair and/or deceptive acts or practices harming Plaintiff Strickland and Members of the Florida Sub-Class, as described herein.

377.    Plaintiff Strickland and Members of the Florida Sub-Class purchased the 303 THF Products as part of a consumer transaction.

378.    Defendants engaged in deceptive conduct in violation of FDUTPA when they made representations and/or omissions regarding the usability and suitability of the 303 THF Products that are likely to mislead consumes acting reasonably under the circumstances, to the consumer's detriment.

82

379.     In selling the 303 THF Products at issue to Plaintiff Strickland and the Members of the Florida Sub-Class, Defendants have used deception, fraud, false pretense, misrepresentation or the concealment, suppression or omission of material facts, either expressly or by implication, by the representations and concealment set forth herein, including, without limitation, representing that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, and that the 303 THF Products provided certain qualities, results and benefits, and through Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications.

380.     Defendants had a duty to disclose the material characteristics of their 303 THF Products because they (i) knew about these characteristics at the time that Plaintiff Strickland and other Florida Sub-Class Members purchased Defendants' 303 THF Products; (ii) had exclusive knowledge of material facts that were not known to Plaintiff Strickland and other Florida Sub-Class Members; and (iii) made representations regarding the 303 THF Products without adequately disclosing that their 303 THF Products were not suitable for use as tractor hydraulic fluid.

381.     Reasonable consumers would, as a result of Defendants' misrepresentations and omissions, be misled and believe that the 303 THF Products were suitable for use as tractor hydraulic fluid.

382.     It is highly probable that these representations and omissions are likely to cause injury to a reasonable consumer, and Defendants' misrepresentations and omissions are likely to mislead consumers.

383.     As a direct and proximate result of Defendants' deceptive conduct, Plaintiff Strickland and other Florida Sub-Class Members have suffered damages.

384.    Plaintiff Strickland and the Florida Sub-Class Members have been injured in their property by reason of Defendants' deceptive acts alleged herein. The injury consists of purchasing a worthless product that they would not have paid for in the absence of the deceptive acts, as well as the damage done to tractors and other equipment.  This injury is of the type that Fla. Stat. § 501.201, *et. seq.* was designed to prevent and directly results from Defendants' deceptive and unlawful conduct.

385.    In addition to actual damages, Plaintiff Strickland and the Florida Sub-Class Members are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs pursuant to Fla. Stat. § 501.201, *et seq.*

386.    **Violation No. 2 – Unfair Acts or Practices.**  Defendants further violated FDUTPA by engaging in unfair practices against Plaintiff Strickland and the Florida Sub-Class Members.

387.    Given the unsuitability of Defendants' 303 THF Products for use as tractor hydraulic fluid, Defendants' sale of the 303 THF Products, especially accompanied by misrepresentations and omissions as described herein, is a practice that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  Defendants have been preying on consumers of their 303 THF Products, deceiving them into paying for an unsuitable product.

388.    The practices described herein also offend established public policy regarding the protection of consumers against companies, like Defendants, who engage in unfair methods of competition.

389.    Defendants' conduct, which caused substantial injury to Plaintiff Strickland and the Florida Sub-Class Members, could have been avoided and is not outweighed by countervailing benefits to any consumers or competitors.

84

390.    Defendants' business acts and practices are also unfair because they have caused harm and injury-in-fact to Plaintiff and Sub-Class Members and for which Defendants have no justification other than to increase, beyond what Defendants would have otherwise realized, their market share and revenue from the sale of 303 THF Products.

391.    Defendants' conduct lacks reasonable and legitimate justification. Defendants have benefited from such conduct and practices while Plaintiff Strickland and Florida Sub-Class Members have been misled as to the nature, suitability, and integrity of the 303 THF Products and have lost money, including the purchase price of the 303 THF Products and the costs of common repairs.

392.    In addition, Defendants' *modus operandi* constitutes an unfair practice in that Defendants knew and should have known that consumers care about maintaining their tractors and equipment but are unlikely to be aware of and/or able to detect the means by which Defendants were conducting themselves in a manner adverse to their commitments and their customers' interests.

393.    While Defendants conveyed the impression to reasonable consumers that their 303 THF Products were safe to use in their tractors and other equipment, in actuality, their 303 THF Products were not suitable for use as tractor hydraulic fluid.

394.    The practices complained of herein are not limited to a single instance but are done pervasively and uniformly at all times against Plaintiff Strickland and the Florida Sub-Class Members.

395.    As a direct and proximate result of Defendants' unfair conduct, Plaintiff Strickland and the Florida Sub-Class Members have suffered damages.

396. Plaintiff Strickland and Florida Sub-Class Members have been injured in their property by reason of Defendants' unfair acts alleged herein. The injury consists of purchasing a worthless product that they would not have paid for in the absence of the deceptive acts, as well as the damage done to tractors and other equipment. This injury is of the type that Fla. Stat. § 501.201, *et. seq.* was designed to prevent and directly results from Defendants' deceptive and unlawful conduct.

397. In addition to actual damages, Plaintiff Strickland and the Florida Sub-Class Members are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs pursuant to Fla. Stat. § 501.201, *et seq.*

398. **<u>Violation No. 3 – Unlawful Conduct Premised on MAL.</u>** Defendants further violated FDUTPA by violating a "statute … which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. 501.203(3)(c). Here, Defendants violated Florida's Misleading Advertising Law (Fla. Stat. 817.41), as described below.

399. Defendants' misrepresentations, omissions, deceptive acts, unfair practices, and/or violations of other rules or statutes, as described herein as violating FDUTPA, would deceive an objectively reasonable consumer.

400. As a result of Defendants' misrepresentations, omissions, deceptive acts, unfair practices, and/or violations of other rules or statutes, Plaintiff Strickland and Florida Sub-Class Members have suffered actual damages by losing money and by common damage to equipment. Defendants' 303 THF Products were worthless and thus Plaintiff Strickland and the Florida Sub-Class Members' damages are the purchase price of the product. Defendants 303 THF Products were also commonly harmful to equipment.

86

401.     As a result of these FDUTPA violations, Plaintiff Strickland and Florida Sub-Class Members are entitled to actual damages, attorneys' fees, costs, declaratory relief, and injunctive relief.

## COUNT XV
### Violation of the Florida Misleading Advertising Law,
### Fla. Stat. § 817.41, *et seq.*

402.     Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

403.     Through the misrepresentations and omissions made on Defendants' product labels regarding the suitability of Defendants' 303 THF Products for use as tractor hydraulic fluid, Defendants unlawfully disseminated or caused to be made misleading advertisements in Florida, in violation of Fla. Stat. 817.41.

404.     Defendants' misleading labels and advertising is described above and throughout this Consolidated Amended Complaint.

405.     The misrepresentations and omissions as to the suitability of Defendants' 303 THF Products for use as tractor hydraulic fluid are material to Plaintiff Strickland, the Florida Sub-Class Members, and average consumers.

406.     Defendants knew or should have known (through the exercise of reasonable case or investigation) that the advertisements were false, untrue, or misleading.

407.     Defendants' misrepresentations and omissions were designed and intended, either directly or indirectly, for obtaining money from Plaintiff Strickland and the Florida Sub-Class Members under false pretenses by inducing them to purchase Defendants' 303 THF Products. Defendants intended that the representations would induce Plaintiff Strickland and the Florida Sub-Class Members to rely upon it and purchase Defendants' 303 THF Products.

Case 4:20-md-02936-SRB     Document 58     Filed 09/01/20     Page 87 of 130

408.    Plaintiff Strickland and the Florida Sub-Class Members relied to their detriment on Defendants' false advertising, by purchasing Defendants' 303 THF Products that they would not otherwise (but for the false advertising) have purchased.

409.    Pursuant to Fla. Stat. 817.41, Plaintiff Strickland and the Florida Sub-Class Members are entitled to costs, reasonable attorney's fees, actual damages, and punitive damages.

410.    Punitive damages are appropriate here, given that Defendants knowingly misled consumers, including Plaintiff Strickland and the Florida Sub-Class Members, and engaged in the willful, wanton, and/or reckless conduct described herein. Here, Defendants engaged in intentional conduct (or alternatively, gross negligence) as to the misrepresentations and omissions concerning the suitability of the 303 THF Products for use as tractor hydraulic fluid.

## COUNT XVI
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.

411.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

412.    Plaintiffs and Illinois Sub-Class Members are "persons" and "consumers" under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 (c) and (e).

413.    Defendants engaged in "trade" or "commerce" within the meaning of the ICFA, 815 ILCS 505/1 (f).

414.    Section 2 of the ICFA provides, in pertinent part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment or any deception, fraud, false pretense, false promise, misrepresentation or the concealment,  suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5,

88

1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damages thereby."

415. Defendants sold the obsolete and harmful THF Products in Illinois and throughout the United States during the Class Period.

416. Defendants' sales of the THF Products meet the definition of "sale" within the meaning of the ICFA, 815 ILCS 505/1 (d). Defendants' THF Products at issue meet the definition of "merchandise" for purposes of the ICFA, 815 ILCS 505/1 (b).

417. In selling their THF Products and by virtue of the conduct set forth above, Defendants have used deception, fraud, false pretense, misrepresentation or the concealment, suppression or omission of material facts, either expressly or by implication.

418. Defendants intentionally and knowingly used deception, false pretense, false promise, misrepresentation and/or concealment of material facts regarding the 303 THF Products with intent to mislead Plaintiffs and all Illinois Sub-Class Members.

419. At all times material hereto, it was reasonably foreseeable that Plaintiffs, and others similarly situated, would rely on the false and fraudulent statements made by Defendants. Said reliance has caused Plaintiffs, and others similarly situated, to be damaged.

420. The actions of Defendants were done willfully, intentionally and with reckless disregard for harm that would be caused by Plaintiffs, and others similarly situated, and Defendants' conduct warrants imposition of exemplary damages to deter Defendants, and others in similar circumstances, from committing such actions in the future.

421. In addition, as a result of Defendants' unlawful, unfair and deceptive business practices, Plaintiffs and Illinois Sub-Class Members, pursuant to 815 ILCS 505/1 (a), are entitled to an order enjoining such future conduct and such other orders and judgments which may be

necessary to disgorge Defendants' ill-gotten gains and to restore Plaintiffs and Illinois Sub-Class Members any money paid for the 303 THF Products.

422.    Plaintiffs have standing to pursue this claim as each has suffered actual economic damage as a proximate result of Defendants' actions as set forth herein.

423.    An award of punitive damages is also appropriate.

**COUNT XVII**
**Violation of the Indiana Consumer Protection Act,**
**Ind. Code § 24-5-0.5-1, *et seq*.**

424.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

425.    Defendants are each a "person" as defined by Ind. Code § 24-5-0.5-2(a)(2). Defendants are also each a "supplier" as defined by Ind. Code § 24-5-0.5-2(a)(3) because each regular engages in or solicits "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(3)(A).

426.    Defendants engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a).

427.    Defendants' acts and practices were unfair because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.  The injury to consumers was and is substantial because it was non-trivial and non-speculative, and it involved a monetary injury.  The injury to consumers was substantial not only because it inflicted har on a significant number of consumers, but also because it inflicted a significant amount of harm on each consumer.

428.    Defendants' acts and practices were "abusive" for numerous reasons: (a) because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction, interfering with consumers' decision-making; (b) because they took unreasonable advantage of consumers' lack of understanding about material risks and costs; (c) because they took unreasonable advantage of consumers' inability to protect their own interests based on consumers lack of complete information; and, (d) because they took unreasonable advantage of consumers' reasonable reliance that Defendants were providing truthful and accurate information.

429.    Defendants also engaged in "deceptive" acts and practices in violation of Ind. Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b) by:   (a) misrepresenting that the subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and, (b) misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

430.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

431.    Defendants received notice pursuant to Ind. Code § 24-5-0.5-5(a) concerning their wrongful conduct as alleged herein by Plaintiff Frank James and the Indiana Sub-Class Members. Defendants' conduct includes incurable deceptive acts that Defendants engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(2)(a)(8).

432.    As a direct and proximate result of Defendants' uncured or incurable unfair, abusive, and deceptive acts or practices, Plaintiff Frank James and the Indiana Sub-Class Members

have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendants' 303 THF Products and from the damage being done to tractors and equipment by Defendants' 303 THF Products.

433.    Defendants' violations present a continuing risk to Plaintiff Frank James and the Indiana Sub-Class Members as well as to the general public.

434.    Plaintiff Frank James and the Indiana Sub-Class Members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages of $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and punitive damages.

## COUNT XVIII
### Violation of the Kansas Consumer Protection Act,
### K.S.A. § 50-623, *et seq.*

435.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

436.    The Kansas Consumer Protection Act ("KCPA), K.S.A. § 50-623 *et seq.*, prohibits deceptive and unconscionable acts and practices in connection with consumer transactions.

437.    Plaintiffs and the Kansas Sub-Class Members are "consumers" and "persons" for purposes of the KCPA, K.S.A. §50-624(b) and (i).

438.    Defendants are each a "supplier" as defined by K.S.A. § 50-624(l).

439.    The purchase of Defendants' 303 THF Products was and is a "consumer transaction" as defined by K.S.A. § 50-624(c).

440.    Under the KCPA, Defendants have a statutory duty to refrain from both "deceptive acts and practices" and "unconscionable acts and practices."

92

441. Defendants engaged in deceptive and unconscionable acts and practices, including, but not limited to, the use of deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of their 303 THF Products in trade or commerce in the State of Kansas and throughout the United States.

442. Defendants' conduct set forth herein, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met specifications, were deceptive, unconscionable, false and misleading and made knowingly by Defendants or without knowledge as to their truth or falsity.

443. Defendants' conduct set forth herein, including without limitation the label representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were also deceptive and unconscionable in omitting or suppressing a material fact in that Defendants' 303 THF Products were not appropriate for use and did not meet specifications as labeled, advertised, marketed and sold.

444. Defendants' conduct as set forth herein with regard to the marketing and sale of the 303 THF Products constitutes deceptive and unconscionable acts and practices.

445. Defendants engaged in deceptive and unconscionable practices including deception, false promises, misrepresentation, and/or the concealment, suppression or omission of material facts in connection with the marketing and sale of the 303 THF Products.

446. Defendants falsely represented these facts, knowingly or with reason to know, that the 303 THF Products had sponsorship, approval, accessories, characteristics, ingredients, uses, benefits, and/or quantities that it did not have, in violation of K.S.A. § 50-626(b)(1)(A).

93

447.     Defendants falsely represented, knowingly or with reason to know, that the 303 THF Products were of a particular standard, quality, grade, style and/or model when the products materially differed from that representation, in violation of K.S.A. § 50-626(b)(1)(D).

448.     Defendants willfully used in a written representation an exaggeration, falsehood, innuendo, and/or ambiguity as to a material fact, in violation of K.S.A. § 50-626(b)(2).

449.     Defendants willfully failed to state materials facts regarding their 303 THF Products and willfully concealed, suppressed, and omitted material facts, in violation of K.S.A. § 50-626(b)(3).

450.     Defendants engaged in a pattern of conduct toward Plaintiffs and all Kansas Sub-Class Members that, when taken in its totality, is and was deceptive, in violation of K.S.A. § 50-626(a).

451.     Defendants engaged in a pattern of conduct toward Plaintiffs and all Kansas Sub-Class Members that, when taken in its totality, is and was unconscionable, in violation of K.S.A. § 50-627(a).

452.     Defendants' conduct with regard to their 303 THF Products was materially deceptive and unconscionable, and was a proximate cause of economic damage to purchasers.

453.     Plaintiffs and Kansas Sub-Class Members have suffered economic and other damages as a result of Defendants' conduct with regard to the marketing and sale of the 303 THF Products.

454.     As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and Kansas Sub-Class Members have suffered ascertainable losses of money.

455.     Defendants' conduct as described herein was intentional, done knowingly, and was in conscious disregard of the rights of Plaintiffs and other Kansas Sub-Class Members.

456.     Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

## COUNT XIX
### Violation of the Kentucky Consumer Protection Act,
### Ky Rev. Stat. § 367.170, *et seq*.

457.     Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

458.     The Kentucky Consumer Protection Act ("KCPA") prohibits unfair, false, misleading, or deceptive acts and practices in the conduct of any trade of commerce.  Ky. Rev. STAT. §367.170 (2015).

459.     Defendants sold THF Products to Plaintiffs, Kentucky residents, and to other Kentucky Sub-Class Members who reside in Kentucky, and the sales occurred in Kentucky.

460.     Plaintiffs and other Kentucky Sub-Class Members purchased Defendants' 303 THF Products primarily for personal, family, or household purposes.

461.     Defendants engaged in unfair, false, misleading and/or deceptive acts and practices, including, but not limited to, the use of deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of their 303 THF Products in trade or commerce in the State of Kentucky and throughout the United States.

462.     Defendants' conduct set forth herein, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment and that the 303 THF Products met or had an equivalency to specifications, were unfair, false, misleading, and/or deceptive and made knowingly by Defendants or without knowledge as to their truth or falsity.

463.    Defendants' conduct set forth herein, including without limitation the label representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were also unfair, false, misleading, and/or deceptive in omitting or suppressing a material fact in that Defendants' 303 THF Products were not appropriate for use and did not meet specifications as labeled, advertised, marketed and sold.

464.    Defendants intentionally engaged in the above course of conduct knowing that such conduct was unfair, false, misleading and/or deceptive.  The deceptive acts and practices engaged in by Defendants were and are consumer related.

465.    As a result of Defendants' unfair, false, misleading, and/or deceptive acts or practices when selling the 303 THF Products, Plaintiffs and other Kentucky Sub-Class Members have incurred financial damages as well as damage to equipment.

466.    An award of punitive damages to Plaintiffs and Kentucky Sub-Class Members is also appropriate.

**COUNT XX**
**Violation of the Michigan Consumer Protection Act,**
**MCL 445.901, *et seq*.**

467.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

468.    As alleged herein, Defendants' conduct in connection with the manufacturing, distribution, marketing and sale of the 303 THF Products to Plaintiff Clough and the Michigan Sub-Class constitutes unfair, unconscionable, and deceptive acts or practices in the conduct of

trade and commerce in violation of the provisions of the Michigan Consumer Protection Act, MCL 445.901 *et seq.*, as follows:

     (a) Defendants' conduct violates MCL 445.903(1)(c), by representing that the 303 THF Products have characteristics and benefits that they do not have;

     (b) Defendants' conduct violates MCL 445.903(1)(e), by representing that the 303 THF Products are of a particular standard, quality or grade, when it is of another;

     (c) Defendants' conduct violates MCL 445.903(1)(s), by failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

     (d) Defendants' conduct violates MCL 445.903(bb), by representing material facts such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and/or

     (e) Defendants' conduct violates MCL 445.903(cc), by failing to reveal facts that are material to the transaction in light of representations of fact made in positive manner.

469. As a result of such unfair, unconscionable and deceptive conduct, Plaintiff Clough and the Michigan Sub-Class Members have suffered, and will continue to suffer, damages.

470. This Court has the power to enjoin the continuation of the unfair, unconscionable and deceptive conduct alleged herein pursuant to MCL 445.911(1).

471. Plaintiff Clough and the Michigan Sub-Class Members are therefore entitled to damages in an amount to be determined at trial, and to equitable relief in the form of appropriate injunctive relief, as a result of the unfair business conduct alleged herein.

## COUNT XXI
## Violation of the Minnesota Consumer Fraud Act,
## Minnesota Statute § 325F.67, *et seq.*

472.     Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

473.     The Minnesota Consumer Fraud Act, Minnesota statute § 325F.67 *et seq.*, prohibits deceptive and unconscionable acts and practices in connection with consumer transactions, including asserting false statements in advertising

474.     Plaintiff and the Minnesota Sub-Class Members are "persons" for purposes of the MCFA, M.S.A. §325F.68(3).

475.     The goods supplied by Defendants in this matter are "merchandise" as defined by M.S.A. § 325F.68(2).

476.     The purchase of Defendants' 303 THF Products was and is a "sale" as defined by M.S.A. § 325F.68(4).

477.     Under the MCFA, M.S.A. § 325F.69, Defendants have a statutory duty to refrain from all manner of deceptive and/or unconscionable acts and practices when selling merchandise, including, but not limited to, acts or use of fraud, false pretense, false promise, misrepresentation, or misleading statement.

478.     Defendants engaged in deceptive and unconscionable acts and practices, including, but not limited to, the use of deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of their 303 THF Products in trade or commerce in the State of Minnesota and throughout the United States.

479. Defendants' conduct set forth herein, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met or had an equivalency to specifications, were deceptive, unconscionable, false and misleading and made knowingly by Defendants or without knowledge as to their truth or falsity.

480. Defendants' conduct set forth herein, including without limitation the label representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were also deceptive and unconscionable in omitting or suppressing a material fact in that Defendants' 303 THF Products were not appropriate for use and did not meet specifications as labeled, advertised, marketed and sold.

481. Defendants' conduct as set forth herein with regard to the marketing and sale of the 303 THF Products constitutes deceptive and unconscionable acts and practices.

482. Defendants engaged in deceptive and unconscionable practices including fraud, false pretense, false promise, misrepresentation, misleading statement, deception, and/or the concealment, suppression or omission of material facts in connection with the marketing and sale of the 303 THF Products.

483. Defendants falsely represented these facts, knowingly or with reason to know, that the 303 THF Products had sponsorship, approval, accessories, characteristics, ingredients, uses, benefits, and/or quantities that it did not have, in violation of  M.S.A. § 325F.67 and 325F.69(1).

484. Defendants falsely represented, knowingly or with reason to know, that the 303 THF Products were of a particular standard, quality, grade, style and/or model when the products materially differed from that representation, in violation of M.S.A. § 325F.67 and 325F.69(1).

485. Defendants willfully used in a written representation an exaggeration, falsehood, innuendo, and/or ambiguity as to a material fact, in violation of M.S.A. § 325F.67 and 325F.69(1).

486. Defendants willfully failed to state materials facts regarding their 303 THF Products and willfully concealed, suppressed, and omitted material facts, in violation of M.S.A. § 325F.67 and 325F.69(1).

487. Defendants engaged in a pattern of conduct toward Plaintiff and all Minnesota Sub-Class Members that, when taken in its totality, is and was deceptive, in violation of M.S.A. § 325F.67 and 325F.69(1).

488. Defendants engaged in a pattern of conduct toward Plaintiff and all Minnesota Sub-Class Members that, when taken in its totality, is and was unconscionable, in violation of M.S.A. § 325F.67 and 325F.69(1).

489. Defendants' conduct with regard to their 303 THF Products was materially deceptive and unconscionable, and was a proximate cause of economic damage to purchasers, including Plaintiff and Minnesota Sub-Class Members.

490. Plaintiff and Minnesota Sub-Class Members have suffered economic and other damages as a result of Defendants' conduct with regard to the marketing and sale of the 303 THF Products.

491. As a direct and proximate result of Defendants' illegal conduct, Plaintiff and Minnesota Sub-Class Members have suffered ascertainable losses of money.

492.     Defendants' conduct as described herein was intentional, done knowingly, and was in conscious disregard of the rights of Plaintiff and other Minnesota Sub-Class Members.

493.     Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

## COUNT XXII
## Violations of Missouri Merchandising Practices Act

494.     Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

495.     Plaintiffs and Missouri Sub-Class Members purchased Defendants' 303 THF Products for personal, family, or household purposes.

496.     Plaintiffs and Missouri Sub-Class Members are "person[s]" for purposes of the Missouri Merchandising Practices Act ("MMPA").  Mo. Rev. Stat. § 407.010.

497.     Defendants' Cam2 Promax 303 THF Product meets the definition of "merchandise" for purposes of the MMPA.  Mo. Rev. Stat. § 407.010.

498.     Defendants' sale of their Cam2 Promax 303 THF Product is a "sale" within the meaning of the MMPA.  Mo. Rev. Stat. § 407.010.

499.     Defendants engaged in "trade" or "commerce" within the meaning of the MMPA.  Mo. Rev. Stat. § 407.010.

500.     Under the MMPA, Defendants have a statutory duty to refrain from deceptive acts and practices.

501.     Pursuant to the MMPA, an unlawful practice is the use of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . .  in or from the State of Missouri."  Mo. Rev. Stat. § 407.020.

101

502.     Defendants used and employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of their Cam2 Promax 303 THF Product in trade or commerce in the State of Missouri, in violation of the MMPA.

503.     Defendants' conduct set forth above, including without limitation the representations that the Cam2 Promax 303 THF Product was fit to be used in older tractors and other equipment, and that the Cam2 Promax 303 THF Product met or had an equivalency to specifications, were unfair, deceptive, false and misleading and made knowingly by Defendants or without knowledge as to their truth or falsity and were therefore deceptions, frauds, false pretenses, false promises, and misrepresentations as described at § 407.020 RSMo., and therefore a violation of the MMPA.

504.     Defendants' conduct set forth above, including without limitation the label representations that the Cam2 Promax 303 THF Product was fit to be used in older tractors and other equipment, that the Cam2 Promax 303 THF Product met or had an equivalency to specifications, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, also constituted the omission or suppression of a material fact in violation of § 407.020 RSMo in that Defendants' Cam2 Promax 303 THF Product was not appropriate for use and did not meet specifications as labeled, advertised, marketed, and sold.

505.     Defendants' conduct as set forth herein with regard to the marketing and sale of the Cam2 Promax 303 THF Product constitutes unlawful, unfair and/or fraudulent business practices in violation of the MMPA.

506.     Defendants engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression or omission of material facts in connection

with the marketing and sale of the Cam2 Promax 303 THF Product, all in violation of §407.020 RSMo.

507. Defendants' conduct with regard to their Cam2 Promax 303 THF Product was materially misleading and deceptive, and was a proximate cause of economic damage to purchasers.

508. Plaintiffs and the Missouri Sub-Class Members have suffered economic and other damages as a result of Defendants' conduct with regard to the marketing and sale of the Cam2 Promax 303 THF Product.

509. As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and the Missouri Sub-Class Members have suffered ascertainable losses of money.

510. Defendants' conduct as described herein was intentional, done knowingly, in conscious disregard of the rights of Plaintiffs and other Missouri Sub-Class Members, and in violation of § 407.020 RSMo, and the regulations of the Attorney General of Missouri promulgated thereunder.

511. Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

## COUNT XXIII
### Violations of Nebraska Consumer Protection Act
### Neb. Rev. St. §§ 59-1601 *et seq*

512. Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

513. Plaintiffs other Nebraska Sub-Class Members, and Defendants are all "person[s]" for purposes of the NCPA. Neb. Rev. St. §§ 59-1601 *et seq.*

103

514.    Defendants' sale of their 303 THF Products constitutes "Trade or Commerce" as contemplated in the NCPA.  Neb. Rev. St. § 59-1601.

515.    In selling their 303 THF Products to Plaintiffs and the Nebraska Sub-Class, Defendants have engaged in unfair and/or deceptive acts or practices by making misrepresentations of material facts, including without limitation, the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, and the other representations set forth above.

516.    Pursuant to the NCPA, Plaintiffs Simpson and Loeffler have standing to pursue this claim as each has suffered actual economic damages as a proximate result of Defendants' actions as set forth herein.  Plaintiffs Simpson and Loeffler are seeking recovery of actual damages, together with the costs of suit, including reasonable attorney fees, punitive and/or treble damages, and for such further relief as this Court deems just.  Neb. Rev. St. §59-1609.

517.    These representations were materially misleading and deceptive, and were a producing cause of economic damages to consumers.

518.    Defendants violated the NCPA by failing to adequately warn Plaintiffs  and Nebraska Sub-Class Members of the true nature of Defendants' 303 THF Products, of the use of line flush and used oils as components of Defendants' 303 THF Products, of Defendants' failure to meet any equipment manufacturer specifications, and of other limitations to appropriate uses of the 303 THF Products.

519.    Defendants' actions as described herein were done knowingly with conscious disregard of the rights of Plaintiffs and the Nebraska Sub-Class Members, and Defendants were wanton and malicious in their concealment of the same.

520.    Defendants' false, deceptive and misleading business practices constitutes a continuing course of conduct under the NCPA.

521.    Neither Plaintiffs nor the Nebraska Sub-Class Members nor any reasonable consumer would have purchased Defendants' 303 THF Products if they were informed that it was obsolete, failed to meet specifications, made with improper ingredients, did not have the performance benefits listed, and/or would cause damage to their tractors or equipment.

522.    Plaintiffs and the Nebraska Sub-Class Members are entitled to injunctive relief pursuant to Neb. Rev. St. § 59-1609 in the form of enjoining Defendants from (1) selling obsolete tractor hydraulic fluid; (2) expressly or implicitly representing to potential purchasers that their tractor hydraulic fluid products are suitable for use in tractors or other equipment; and (3) providing inadequate warning on tractor hydraulic fluid products as to appropriate uses and potential harm to equipment.  Plaintiffs and other Nebraska Sub-Class Members are also entitled to injunctive relief in the form of corrective advertising requiring Defendants to disseminate truthful, adequate disclosures and warnings about the actual uses, if any, of Defendants' 303 THF Products.

523.    Plaintiffs and the Nebraska Sub-Class Members will be irreparably harmed if such an Order is not granted.

**COUNT XXIV**
**Violations of Nebraska Uniform Deceptive Trade Practices Act**
**Neb. Rev. St. §§ 87-301 *et seq.***

524.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

525.    Plaintiffs bring this claim under Neb. Rev. St. §§ 87-301 *et seq.*, on behalf of themselves and the Nebraska Sub-Class Members, who were subject to Defendants' above-described deceptive trade practices.

526.    The actions of Defendants set forth above constitute a deceptive trade practice in that Defendants represented their 303 THF Products as having characteristics, ingredients, uses, or benefits that those 303 THF Products do not have, all of which is actionable under Neb. Rev. St. § 87-302(a)(5).

527.    The actions of Defendants set forth above constitute a deceptive trade practice in that Defendants represented their 303 THF Products were of a particular standard, quality, or grade that the 303 THF Products were not, all of which is actionable under Neb. Rev. St. § 87-302(a)(7).

528.    The actions of Defendants set forth above constitute an unconscionable action or course of action which was committed knowingly, and which was the producing cause of economic damages to Plaintiffs and Nebraska Sub-Class Members, all of which is actionable under Neb. Rev. St. § 87-302.

529.    Plaintiffs and the Nebraska Sub-Class Members are entitled to injunctive relief pursuant to Neb. Rev. St. § 87-303 in the form of enjoining Defendants from (1) selling obsolete tractor hydraulic fluid; (2) expressly or implicitly representing to potential purchasers that their tractor hydraulic fluid products are suitable for use in tractors or other equipment; and (3) providing inadequate warnings on tractor hydraulic fluid products as to appropriate uses and potential harm to equipment.  Plaintiffs and other Nebraska Sub-Class Members are also entitled to injunctive relief in the form of corrective advertising requiring Defendants to disseminate truthful, adequate disclosures and warnings about the actual uses, if any, of Defendants' 303 THF Products.

## COUNT XXV
### Violation of the New York Deceptive Sales Practices Act
### N.Y. Gen. Bus. § 349 and § 350

530. Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

531. New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce … in this state." N.Y. Gen Bus. L. § 349(a).

532. Defendants willfully or knowingly engaged in deceptive and misleading representations and omissions aimed at causing reasonable consumers and the public in the State of New York to be deceived about the suitability of the 303 THF Products for use in tractors and other equipment as tractor hydraulic fluid. Defendants' conduct described herein constitutes deceptive acts or practices in the conduct of business, trade or commerce.

533. Defendants' unlawful conduct was consumer-oriented in that it was designed to, had the capacity to, and did, deceive consumers and affect consumer purchase decisions in the State of New York.

534. Defendants' conduct described herein affected the public interest, and in particular, the public interest in New York State, because that conduct perpetrated a fraud on consumers in New York.

535. As a direct and proximate cause of Defendants' deception in the State of New York, Plaintiff Sawyer Dean and the New York Sub-Class Members have been injured by the violation of § 349 described herein. This injury is separate from, and not derivative of, the injury to any other person or entity that may have resulted from Defendants' conduct. The injury suffered by Plaintiff Sawyer Dean and the New York Sub-Class Members includes, without limitation, the

cost of the useless and harmful 303 THF Products, and economic injuries flowing from the damage to tractors and other equipment caused by Defendants' 303 THF Products and/or by the use of Defendants' 303 THF Products instead of a tractor hydraulic fluid that would actually protect tractors and equipment.

536. By reason of the foregoing, Defendants are liable to each of Plaintiff Sawyer Dean and each New York Sub-Class Member for actual damages suffered resulting from the above-described violation of New York General Business Law § 349, or, for any whose damages are less than $50, then $50 minimum for each, trebling of those damages, and reasonable attorneys' fees.

537. Plaintiff Sawyer Dean, along with the New York Sub-Class Members, are entitled to injunctive relief pursuant to § 349 enjoining Defendants from (1) selling 303 THF Products or other similar products; (2) expressly or impliedly representing to past, current, and/or potential customers that 303 THF Products are suitable for us as tractor hydraulic fluid; and, (3) providing inadequate warnings as to the harm the 303 THF Products can cause. Plaintiff Sawyer Dean and Members of the New York Sub-Class are also entitled to injunctive relief in the form of corrective advertising and notice to purchasers and requiring Defendants to disseminate truthful, adequate disclosures and warning about use of Defendants' 303 THF Products.

538. New York's General Business Law § 350 declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce …." "False advertising" is defined as "advertising, *including labeling*, of a commodity … if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a.

539. The labeling on the packages of Defendants' 303 THF Products constitutes "advertising" within the meaning of N.Y. Gen. Bus. Law §§ 350 and 350-a.

540.    The labeling on the packages of Defendants' 303 THF Products was misleading in one or more material respects, as detailed above.

541.    The labeling on the packages of Defendants' 303 THF Products constitutes "false advertising" within the meaning of §§ 350 and 350-a.

542.    Plaintiff Sawyer Dean and New York Sub-Class Members each were injured by reason of Defendants' violations of §§ 350 and 350-a. in that each of them purchased useless and harmful 303 THF Products as a result of the misleading product labels.

543.    By reason of the foregoing, Defendants are liable to Plaintiff Sawyer Dean and the New York Sub-Class Members for their actual damages, or for statutory damages of $500 for each violation, whichever is greater, in a total amount to be proved at trial, along with trebling of those damages, and reasonable attorneys' fees.

544.    Plaintiff Sawyer Dean and New York Sub-Class Members, as well as the consuming public of the State of New York, will suffer irreparable injury if Defendants are permitted to continue the deceptive practices described herein.

545.    By reason of the foregoing, Plaintiff Sawyer Dean and the New York Sub-Class Members are entitled to pursuant to § 350 enjoining Defendants from (1) selling 303 THF Products or other similar products; (2) expressly or impliedly representing to past, current, and/or potential customers that 303 THF Products are suitable for us as tractor hydraulic fluid; and, (3) providing inadequate warnings as to the harm the 303 THF Products can cause.  Plaintiff Sawyer Dean and Members of the New York Sub-Class are also entitled to injunctive relief in the form of corrective advertising and notice to purchasers and requiring Defendants to disseminate truthful, adequate disclosures and warning about use of Defendants' 303 THF Products.

**COUNT XXVI**
**Violation of the North Carolina Consumer Protection Act,**
**N.C.G.S. § 75-1.1, *et seq*.**

546.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

547.    As alleged herein, Defendants' conduct in connection with the distribution, marketing and sale of the 303 THF Products to Plaintiffs Lemonds, Sigmon, Upchurch, White and the North Carolina Sub-Class Members constitutes unfair, unconscionable and deceptive acts or practices in conduct or trade and commerce in violation of the provisions of the North Carolina Consumer Protection Act, N.C.G. S. § 75-1.1, *et seq,* as follows:

    (a)  by representing that the 303 THF Products have characteristics and benefits that they do not have;

    (b)  by representing that the 303 THF Products are of a particular standard, quality or grade, when it is of another;

    (c)  by failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

    (d)  by representing material facts such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;

    (e)  by failing to reveal facts that are material to the transaction in light of representations of facts made in positive manner; and/or

    (f)  by causing confusion or misunderstanding as to the legal rights, obligations or remedies of a party to a transaction.

110

548. As a result of such unfair, unconscionable and deceptive conduct, Plaintiffs Lemonds, Sigmon, Upchurch, White and the North Carolina Sub-Class Members have suffered, and will continue to suffer, damages.

549. This Court has the power to enjoin the continuation of the unfair, unconscionable and deceptive conduct alleged herein.

550. Plaintiffs Lemonds, Sigmon, Upchurch, White and the North Carolina Sub-Class Members are therefore entitled to damages in an amount to be determined at trial, and to equitable relief in the form of appropriate injunctive relief, as a result of the unfair business conduct alleged herein.

## COUNT XXVII
### Violations of Ohio Consumer Sales Practices Act

551. Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

552. Plaintiffs Gosche, Hayes, Ortner, Ohio Sub-Class Members, and Defendants are all "person[s]" for purposes of OCSPA, R.C. 1345.01 *et seq.*

553. Plaintiffs Hayes, Ortner, and Ohio Sub-Class Members are all "consumer[s]" for purposes of the OCSPA, R.C. 1345.01 *et seq.*

554. Defendants are all "supplier[s]" for purposes of the OCSPA, R.C. 1345.01 *et seq.*

555. Defendants' sale of 303 THF Products constitutes a "Consumer transaction" for purposes of the OCSPA, R.C. 1345.01 *et seq.*

556. Pursuant to the OCSPA, "no supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.01.

111

557.    Under the OCSPA, the act or practice of a supplier in representing that the subject of a consumer transaction has performance characteristics, uses or benefits that it does not have is deceptive. R.C. 1345.2(B)(1).

558.    Under the OCSPA, the act or practice of a supplier in representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription or model that it is not, is deceptive. R.C. 1345.2(B)(2).

559.    Pursuant to the OCSPA, "no supplier shall commit an unconscionable act or practice in connection with a consumer transaction." R.C. 1345.03.

560.    Under the OCSPA, an unconscionable act occurs where a supplier knew at the time the consumer transaction was entered into that the consumer was unable to receive a substantial benefit from the subject of the consumer transaction. R.C. 1345.03(B)(3).

561.    In selling the 303 THF Products at issue to Plaintiffs Gosche, Hayes, Ortner, and the Ohio Sub-Class Members, Defendants have engaged in deceptive and/or unconscionable acts or practices by misrepresented material facts, including without limitation, the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, and the other representations set forth above.

562.    Pursuant to the NCPA, Plaintiffs Gosche, Hayes and Ortner have standing to pursue this claim as each has suffered actual economic damages as a proximate result of Defendants' actions as set forth herein. R.C. 1345.09(A).

563.    These representations were materially misleading and deceptive, and were a producing cause of economic damages to consumers.

564.    Defendants violated the OCSPA by failing to adequately warn Plaintiffs Gosche, Hayes, Ortner and Ohio Sub-Class Members of the true nature of Defendants' 303 THF Products,

of the use of line flush and used oils as components of Defendants' 303 THF Products, of Defendants' failure to meet any equipment manufacturer specifications, and of other limitations to appropriate uses of the 303 THF Products.

565.    Defendants' actions as described herein were done knowingly with conscious disregard of the rights of Plaintiffs Gosche, Hayes, Ortner, and the Ohio Sub-Class Members, and Defendants were wanton and malicious in their concealment of the same.

566.    Defendants' false, deceptive and misleading business practices constitute a continuing course of conduct under the OCSPA.

567.    Neither Plaintiffs Gosche, Hayes, Ortner, the Ohio Sub-Class Members nor any reasonable consumer would have purchased Defendants' 303 THF Products if they were informed that it was obsolete, failed to meet specifications, made with improper ingredients, did not have the performance benefits listed, and/or would cause damage to their tractors or equipment.

568.    Plaintiffs Gosche, Hayes, Ortner, and the Ohio Sub-Class Members are entitled to injunctive relief pursuant to R.C. 1345.09(D) in the form of enjoining Defendants from (1) selling obsolete tractor hydraulic fluid; (2) expressly or implicitly representing to potential purchasers that their tractor hydraulic fluid products are suitable for use in tractors or other equipment; and (3) providing inadequate warning on tractor hydraulic fluid products as to appropriate uses and potential harm to equipment.    Plaintiffs Gosche, Hayes, Ortner, and other Ohio Sub-Class Members are also entitled to injunctive relief in the form of corrective advertising requiring Defendants to disseminate truthful, adequate disclosures and warnings about the actual uses, if any, of Defendants' 303 THF Products.

569.    Plaintiffs Gosche, Hayes, Ortner, and the Ohio Sub-Class Members will be irreparably harmed if such an Order is not granted.

## COUNT XXVIII
### Violations of Oklahoma Consumer Protection Statute

570.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

571.    Plaintiffs Graves, Nash, and other Oklahoma Sub-Class Members are consumers under the Oklahoma Consumer Protection Act.

572.    Defendants' sale of their 303 THF Products constitute practices in the course of Defendants' businesses under the Oklahoma Consumer Protection Act.

573.    Defendants' conduct set forth above constitutes unlawful practices under the Oklahoma Consumer Protection Act.

574.    In selling their 303 THF Products to Plaintiffs Graves, Nash, and the Oklahoma Sub-Class, Defendants have engaged in unfair trade practices and/or deceptive trade practices under the Oklahoma Consumer Protect Act, by misrepresentations of material facts, including without limitation, the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, and the other representations set forth above.

575.    These representations were materially misleading and deceptive, and were a producing and proximate cause of damages to consumers.

576.    Defendants violated the Oklahoma Consumer Protection Act by failing to adequately warn Plaintiffs Graves, Nash, and the Oklahoma Sub-Class Members of the true nature of Defendants' 303 THF Products, of the use of line flush and used oils as components of Defendants' 303 THF Products, of Defendants' failure to meet any equipment manufacturer specifications, and of other limitations to appropriate uses of the 303 THF Products.

114

577. Defendants' actions as described herein were done knowingly with conscious disregard of the rights of Plaintiffs Graves, Nash, and the Oklahoma Sub-Class Members, and Defendants were wanton and malicious in their concealment of the same.

578. Neither Plaintiff Graves, Nash nor the Oklahoma Sub-Class Members nor any reasonable consumer would have purchased Defendants' 303 THF Products if they were informed that it was obsolete, failed to meet specifications, made with improper ingredients, did not have the performance benefits listed, and/or would cause damage to their tractors or equipment.

**COUNT XXIX**
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**
**73 P.S. § 201-1, *et seq.***

579. Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

580. The Pennsylvania Unfair Trade Practices and Consumer Protection Law Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce…." 73 P. S. § 201-3. Defendants' deceptive acts and practices include:

(a) Knowingly designing, developing, manufacturing, advertising, and selling Defendants' 303 THF Products with false claims and significant defects that result in risks when used so that consumers did not receive the benefit of their bargain;

(b) Marketing and selling Defendants' 303 THF Products that relied upon false claims, while at the same time exposing consumers to risks solely to increase profits;

(c) Making affirmative public representations about the alleged benefits of Defendants' 303 THF Products while, at the same time, not ensuring those

115

benefits were provided and while not ensuring safety with respect to the use of the 303 THF Products;

(d) Concealing material information from consumers regarding the true nature of the defects in Defendants' 303 THF Products in order to impact consumer purchasing behavior.

581.    Defendants violated 73 P. S. § 201-3's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Defendants' 303 THF Products.

582.    As alleged herein, Defendants' marketing and sale of the 303 THF Products, and more specifically the failure to inform customers of the risks inherent in Defendants' 303 THF Products, violated 73 P. S. § 201-3, common law, and other statutes. Plaintiff Minich and the Pennsylvania Sub-Class Members reserve the right to allege other violations of the law, which constitute other unlawful business acts and practices. As alleged herein, Defendants continue to misrepresent the 303 THF Products' abilities and continue to deny that the 303 THF Products pose risks. Defendants have not recalled the 303 THF Products nor provided any remedial efforts including a warning disclosing possible risks.

583.    Defendants violated 73 P. S. § 201-3's prohibitions against unfair conduct by failing to inform customers about Defendants' 303 THF Products' abilities and their potential risks; engaging in a pattern and practice of concealing those facts and continuing to sell those 303 THF Products despite knowledge that they are misrepresented and carry risks; and depriving customers of the value of Defendants' 303 THF Products as represented. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefit. Defendants engaged in

116

this conduct at the expense of their customers' rights when other, lawful alternatives were available (such as providing customers with full information about Defendants' 303 THF Products, including the known risks and potential side effects of use, prior to purchase).

584.    Defendants engaged in this conduct to gain an unfair commercial advantage over their competitors, seeking to avoid public knowledge of the true content and abilities of Defendants' 303 THF Products and their defects to avoid damage to their sales and reputation. Defendants withheld critical and material information from Plaintiff Minich and the Pennsylvania Sub-Class Members, competitors, and the marketplace, all to Defendants' unfair competitive advantage.

585.    Defendants' business practices, as alleged herein, constitute fraudulent conduct because they were likely to deceive, and did deceive, Plaintiff Minich and the Pennsylvania Sub-Class Members into purchasing Defendants' 303 THF Products when those products were misrepresented and defective and otherwise did not perform as advertised.

586.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

587.    As a direct and proximate result of Defendants' unfair, unlawful, and fraudulent act and practices, Plaintiff Minich and the Pennsylvania Sub-Class Members were injured and lost money and property, including from not receiving the benefit of their bargain in purchasing Defendants' 303 THF Products, and increased time and expense in dealing with the tractor and equipment damage caused from the use of Defendants' 303 THF Products.

588.    Defendants recklessly disregarded Plaintiff Minich and the Pennsylvania Sub-Class Members' rights.    Defendants' knowledge of the false claims and risks associated with

117

Defendants' 303 THF Products put Defendants on notice that the 303 THF Products were not as advertised.

589.    Pursuant to 73 P. S. § 201-9.2, Plaintiff Minich and the Pennsylvania Sub-Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive and/or treble damages, costs and reasonable attorneys' fees, and any other just and proper relief available under the Pennsylvania Unfair Trade Practices and Consumer Protection Act.

**COUNT XXX**
**Violations of South Dakota Consumer Protection Act**

590.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

591.    Plaintiffs Gisi and other South Dakota Sub-Class Members are persons covered by the South Dakota Consumer Protection Act.

592.    Defendants' conduct set forth above constitutes unlawful practices under the South Dakota Consumer Protection Act.

593.    In selling their 303 THF Products to Plaintiff Gisi and the South Dakota Sub-Class, Defendants have engaged in deceptive practices under the South Dakota Consumer Protection Act, by misrepresentations of material facts, including without limitation, the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, and the other representations set forth above.

594.    These representations were materially misleading and deceptive, and were a proximate cause of damages.

595.    Defendants violated the South Dakota Consumer Protection Act by failing to adequately warn Plaintiff Gisi and the South Dakota Sub-Class Members of the true nature of

Defendants' 303 THF Products, of the use of line flush and used oils as components of Defendants' 303 THF Products, of Defendants' failure to meet any equipment manufacturer specifications, and of other limitations to appropriate uses of the 303 THF Products.

596.    Defendants' actions as described herein were done knowingly and intentionally and with conscious disregard of the rights of Plaintiff Gisi and the South Dakota Sub-Class Members, and Defendants were wanton and malicious in their concealment of the same.

597.    Neither Plaintiff Gisi nor the South Dakota Sub-Class Members nor any reasonable consumer would have purchased Defendants' 303 THF Products if they were informed that it was obsolete, failed to meet specifications, made with improper ingredients, did not have the performance benefits listed, and/or would cause damage to their tractors or equipment.

## COUNT XXXI
### Violation of the Texas Deceptive Trade Practices Act,
### Texas Business and Commerce Code, § 17.41, *et seq.*

598.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

599.    The Texas Deceptive Trade Practices Act ("DTPA") prohibits false, misleading or deceptive acts and practices in connection with a trade or business.

600.    Plaintiffs and Texas Sub-Class Members are "consumers" within the meaning of § 17.54(4) of  DTPA in that they are individuals who acquired by purchase the goods or products that form the basis of this case and suffered damages for which they did not receive compensation from any third party, person, or entity.

601.    Plaintiffs and Texas Sub-Class Members seek to recover damages against each Defendant under  DTPA, § 17.41 *et seq,* because Defendants knowingly and/or intentionally breached their implied warranties with respect to the 303 THF Products and also engaged in false,

misleading, or deceptive acts or practices in the conduct of their trade of business, as set forth above and in general by (a) representing that the 303 THF Products had characteristics, ingredients, uses, or benefits which they do not; and (b) representing that the 303 THF Products were of a particular standard, quality, or grade, when they were in fact or another.

602.    Defendants engaged in false, misleading or deceptive acts or practices with regard to the 303 THF Products, including, but not limited to, the use of deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of their 303 THF Products in trade or commerce in the State of Texas and throughout the United States.

603.    Defendants' conduct set forth herein, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met specifications, were false, misleading, or deceptive acts or practices.

604.    Defendants' conduct set forth herein, including without limitation the label representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were also false, misleading, or deceptive acts or practices in that Defendants omitted or suppressed material facts in that Defendants' 303 THF Products were not appropriate for use and did not meet specifications as labeled, advertised, marketed and sold.

605.    Defendants engaged in a pattern of conduct toward Plaintiffs and all Texas Sub-Class Members that, when taken in its totality, is and was false, misleading, or deceptive, in violation of the DTPA.

606. Defendants' conduct in engaging in such false, misleading, or deceptive acts or practices constituted a producing cause of the damages suffered by the Plaintiffs and Texas Sub-Class Members such that Plaintiffs and Texas Sub-Class Members have the right and standing to maintain an action against Defendants under the DTPA.

607. The Plaintiffs also have the right and standing to maintain an action against Defendants under the DTPA because Defendants breached their implied warranties and that such a breach constituted a producing cause of the damages suffered by the Plaintiffs and Texas Sub-Class Members.

608. Plaintiffs and Texas Sub-Class Members have suffered economic and other damages as a proximate result of Defendants' conduct with regard to the marketing and sale of the 303 THF Products.

609. Defendants' conduct as described herein was intentional, done knowingly and intentionally, and was in conscious disregard of the rights of Plaintiffs and other Texas Sub-Class Members.

610. Defendants' conduct is such that an award of treble damages against each Defendant is appropriate.

611. Pursuant to the DTPA, Plaintiffs and Texas Sub-Class Members are entitled to be awarded Court costs and reasonable and necessary attorneys' fees.

612. Plaintiffs provided Defendants notice of the defect in their 303 THF Products, although such notice should be deemed unnecessary in light of the MDA action in 2017.

613. Plaintiffs will provide notice of this Complaint to the Consumer Protection Division.

## COUNT XXXII
## Violations of West Virginia Consumer Credit and Protection Act

614.    Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

615.    The West Virginia Consumer Credit and Protection Act ("CCPA") prohibits false, misleading or deceptive acts and practices in connection with a trade or business.

616.    Plaintiffs Bias, Curry and West Virginia Sub-Class Members are "consumers" within the meaning of § 46A-6-102(2) of the CCPA in that they are individuals who acquired by purchase the goods or products that form the basis of this case, and suffered damages for which they did not receive compensation from any third party, person, or entity.

617.    Plaintiffs Bias, Curry, and West Virginia Sub-Class Members seek to recover damages against each Defendant under the CCPA, §46-A-6-101, *et seq,* because Defendants knowingly and/or intentionally breached their implied warranties with respect to the 303 THF Products and also engaged in false, misleading, or deceptive acts or practices in the conduct of their trade of business, as set forth above and in general by (a) representing that the 303 THF Products had characteristics, ingredients, uses, or benefits which they do not; and, (b) representing that the 303 THF Products were of a particular standard, quality, or grade, when they were in fact or another.

618.    Defendants engaged in false, misleading or deceptive acts or practices with regard to the 303 THF Products, including, but not limited to, the use of deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of their 303 THF Products in trade or commerce in the State of West Virginia and throughout the United States.

122

619. Defendants' conduct set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met specifications, were false, misleading, or deceptive acts or practices.

620. Defendants' conduct set forth above, including without limitation the label representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met or had an equivalency to specifications, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were also false, misleading, or deceptive acts or practices in that Defendants omitted or suppressed a material fact in that Defendants' 303 THF Products were not appropriate for use and did not meet specifications as labeled, advertised, marketed and sold.

621. Defendants engaged in a pattern of conduct toward Plaintiff Bias, Curry, and all West Virginia Sub-Class Members that, when taken in its totality, is and was false, misleading, or deceptive, in violation of the CCPA.

622. Defendants' conduct in engaging in such false, misleading, or deceptive acts or practices constituted a producing cause of the damages suffered by the Plaintiffs Bias, Curry, and West Virginia Sub-Class Members such that they have the right and standing to maintain an action against Defendants under the CCPA.

623. The Plaintiffs also have the right and standing to maintain an action against Defendants under the CCPA because Defendants breached their implied warranties and that such a breach constituted a producing cause of the damages suffered by the Plaintiffs Bias, Curry, and West Virginia Sub-Class Members.

123

624.     Plaintiffs Bias, Curry, and West Virginia Sub-Class Members have suffered economic and other damages as a proximate result of Defendants' conduct with regard to the marketing and sale of the 303 THF Products.

625.     Defendants' conduct as described herein was intentional, done knowingly and intentionally, and was in conscious disregard of the rights of Plaintiff Bias, Curry, and other West Virginia Sub-Class Class Members.

626.     Defendants' conduct is such that an award of treble damages against each Defendant is appropriate.

627.     Pursuant to the CCPA, Plaintiffs Bias, Curry, and West Virginia Sub-Class Members are entitled to be awarded Court costs and reasonable and necessary attorneys' fees.

628.     Plaintiffs provided Defendants notice of the defect in their 303 THF Products, although such notice should be deemed unnecessary in light of the MDA action in 2017.

629.     Plaintiffs will provide notice of this Complaint to the Consumer Protection Division.

## COUNT XXXIII
### Violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann. §100.18, *et seq*.

630.     Plaintiffs incorporate by reference all other paragraphs of this Consolidated Amended Complaint as if fully set forth herein.

631.     Defendants are each a "person, firm, corporation or association," as defined by Wis. Stat. § 100.18(1).

632.     Plaintiffs Hamm, Wendt, and the Wisconsin Sub-Class Members are members of "the public," as defined by Wis. Stat. § 100.18(1).

633. With intent to sell, distribute, or increase consumption of merchandise, services, or anything else offered by Defendants to members of the public for sale, use, or distribution, Defendants made, published, circulated, placed before the public or caused (directly or indirectly) to be made, published, circulated, or placed before the public in Wisconsin advertisements, announcements, statements, and representations to the public which contained assertions, representations, or statements of facts which are untrue, deceptive, and/or misleading, in violation of Wis. Stat. § 100.18(1).

634. Defendants have each also engaged in the above-described conduct as part of a plan or scheme, the purpose or effect of which was to sell, purchase, or use merchandise or services not as advertised, in violation of Wis. Stat. § 100.18(9).

635. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

636. Defendants' failure to disclose the facts described herein is the same as actively representing that those facts do not exist.

637. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiffs Hamm, Wendt, and the Wisconsin Sub-Class Members have suffered and will continue to suffer injury, ascertainable losses of money and property, and monetary and non-monetary damages, including from not receiving the benefit of the bargain in purchasing Defendants' 303 THF Products, and increased time and expense in treating the damage they cause.

638. Had Defendants disclosed to Plaintiffs Hamm, Wendt, and the Wisconsin Sub-Class Members that they misrepresented Defendants' 303 THF Products, omitted material information regarding the risk of harm involved and the suitability and true ability of Defendants' 303 THF Products, and were otherwise engaged in common business practices that ultimately hurt

consumers, Defendants would have been unable to continue selling the defective 303 THF Products. Instead, Defendants represented that the 303 THF Products met OEM specifications, provided performance benefits, and could be used as tractor hydraulic fluid.

639. Defendants recklessly disregarded Plaintiff Hamm's, Wendt's, and the Wisconsin Sub-Class Members' rights. Defendants' knowledge of the false claims and risks associated with Defendants' 303 THF Products put Defendants on notice that the 303 THF Products were not as advertised.

640. Plaintiffs Hamm, Wendt, and the Wisconsin Sub-Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive and/or treble damages, attorneys' fees, and any other just and proper relief available under the Wisconsin Deceptive Trade Practices Act.


WHEREFORE, Plaintiffs, on behalf of themselves and the Class and Sub-Classes described in this Consolidated Amended Complaint, respectfully request that:

A. The Court certify the Class and Sub-Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adjudge Plaintiffs and counsel to be adequate representatives thereof;

B. The Court enter an Order requiring each Defendant to pay actual and punitive damages to Plaintiffs and the other Members of the Class and Sub-Classes;

C. The Court enter an Order awarding Plaintiffs, individually and on behalf of the other Members of the Class and Sub-Classes, the expenses and costs of

suit, including reasonable attorneys' fees and reimbursement of reasonable

expenses, to the extent provided by law;

D.  The Court enter an Order awarding to Plaintiffs, individually and on behalf

of other Members of the Class and Sub-Classes, pre-and post-judgment

interest, to the extent allowable; and,

E.   For such other and further relief as may be just and proper.


## DEMAND FOR JURY TRIAL

Plaintiffs and Class and Sub-Class Members hereby demand a jury trial on all issues of fact

and damages in this action.


Date:  September 1, 2020                    Respectfully submitted,


HORN AYLWARD & BANDY, LLC


BY:    */s/ Thomas V. Bender*
          Thomas V. Bender      MO 28099, KS 22860
          Dirk Hubbard          MO 37936, KS 15130
          2600 Grand Boulevard, Ste. 1100
          Kansas City, MO 64108
          (816) 421-0700
          (816) 421-0899 (Fax)
          tbender@hab-law.com
          dhubbard@hab-law.com


WHITE, GRAHAM, BUCKLEY,
& CARR, L.L.C
          Bryan T. White        MO 58805, KS 23255
          19049 East Valley View Parkway
          Independence, Missouri 64055
          (816) 373-9080 Fax: (816) 373-9319
          bwhite@wagblaw.com


127

CLAYTON JONES, ATTORNEY AT LAW
   Clayton Jones          MO 51802
   P.O. Box 257
   405 W. 58 Hwy.
   Raymore, MO 64083
   Office: (816) 318-4266
   Fax: (816) 318-4267
   clayton@claytonjoneslaw.com

EMERSON FIRM, PLLC
   John G. Emerson, TX Bar No. 06602600
   830 Apollo St.
   Houston, TX 77058
   T: (800) 551-8649
   F: (501) 286-4659
   E: jemerson@emersonfirm.com

BRYANT LAW CENTER, P.S.C.
   Mark. P. Bryant        KY 08755
   P.O. Box 1876
   Paducah, KY 42002-1876
   Phone: (270) 442-1422
   Fax: (270) 443-8788
   Mark.bryant@bryantpsc.com

LANGDON & EMISON
   Tricia Campbell        MO 60917
   911 Main St., P.O. Box 220
   Lexington, MO  64067
   Phone: (660) 259-6175
   Fax: (660) 259-4571
   tricia@lelaw.com

SIRO SMITH DICKSON LAW FIRM
   Athena Dickson         MO 55104, KS 21533
   1621 Baltimore Ave.
   Kansas City, MO  64108
   Phone: (816) 471-4881
   Fax: (816) 471-4883
   adickson@sirosmithdickson.com

JOHNSON FIRM
   Christopher D. Jennings    AR 2006306
   610 President Clinton Avenue, Suite 300
   Little Rock, Arkansas 72201
   T: (501) 372-1300

128

F: (888) 505-0909
chris@yourattorney.com

BARRACK, RODOS & BACINE
    Stephen R. Basser      CA-121590
    One America Plaza
    600 West Broadway, Suite 900
    San Diego, CA 92101
    Telephone: (619) 230-0800
    Facsimile: (619) 230-1874
    sbasser@barrack.com
    sward@barrack.com

LUNDBERG LAW FIRM, P.L.C.
    Paul D. Lundberg      IA W00003339
    600 Fourth St., Suite 906
    Sioux City, Iowa 51101
    Tel: 712-234-3030
    paul@lundberglawfirm.com

SANDY LAW FIRM, P.C.
    John M. Sandy      MN 0391728
    304 18th Str., Box 445
    Spirit Lake, IA 51360
    (712) 336-5588
    jmsandy@sandylawpractice.com

GRIFFITH LAW CENTER, PLLC
    Travis A. Griffith, WVSB No. 9343
    One Bridge Place
    10 Hale Street, Suite 203
    Charleston, WV 25301
    T: (304) 345-8999
    F: (304) 345-7638
    E: travis@protectingwv.com

BOLEN ROBINSON & ELLIS, LLP
    Jon D. Robinson – ARDC No. 2356678
    Zachary T. Anderson – ARDC No. 6329384
    202 S. Franklin St., 2nd Floor
    Decatur, IL 62523
    T: 217-429-4296
    E: jrobinson@brelaw.com
       zanderson@brelaw.com
**ATTORNEYS FOR PLAINTIFFS**
**AND CLASS MEMBERS**

129

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that this document was filed electronically with the United States District Court for the Western District of Missouri, with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons this 1st day of September, 2020.

_/s/ Thomas V. Bender_
