## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| IN RE: SMITTY'S/CAM2 303 TRACTOR HYDRAULIC FLUID MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) <br> ) <br> ) MDL No. 2936 <br> ) <br> ) Master Case No. 4:20-MD-02936-SRB |

## ORDER

Before the Court is Defendant Smitty's Supply, Inc. ("Smitty's") and CAM2 International, LLC's ("CAM2") (collectively, "Defendants") Motion to Dismiss Plaintiffs' Fourth Amended Consolidated Complaint. (Doc. #279.) The Court heard oral arguments on this motion on March, 1, 2022. For the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## TABLE OF CONTENTS

I. BACKGROUND ............................................................................................................ 3

II. CHOICE OF LAW ...................................................................................................... 7
      1. Law Applicable to Contract Claims............................................................ 8
      2. Law Applicable to Tort Claims ................................................................ 10

III. LEGAL STANDARD................................................................................................ 12

IV. DISCUSSION ........................................................................................................... 13
    A. Standing ........................................................................................................ 13
      1. Injury-in-Fact............................................................................................ 14
      2. Injunctive Relief ....................................................................................... 15
      3. Unpurchased Products .............................................................................. 16
    B. Failure to Plead Damages ............................................................................. 18
      1. Property Damage ....................................................................................... 19
      2. Purchase Price Damage ............................................................................ 20
      3. Damages Under State Law ........................................................................ 21
    C. Fraud-Based Claims (Counts V–VII & VIII–XLII) .................................... 22
    D. Common Law Claims (Counts I–VII) ......................................................... 23
      1. Boilerplate Recitation (Counts I–VII) ..................................................... 24

2.      Breach of Warranty Claims (Counts II–IV)................................................24

        a.    Lack of Privity ...................................................................24

        b.    Lack of Pre-Suit Notice ....................................................28

3.      Breach of Express Warranty Claims (Count II)......................................30

        a.    Existence of an Express Warranty ....................................30

        b.    Unactionable Puffery ........................................................32

4.      Breach of Implied Warranty of Fitness (Count IV) ...............................34

5.      Unjust Enrichment (Count V)................................................................35

        a.    States Recognizing the Cause of Action ...........................35

        b.    States Requiring Privity ....................................................37

6.      Fraudulent Misrepresentation (Count VI)..............................................39

7.      Negligent Misrepresentation (Count VII)..............................................40

E.      Statutory Fraud Claims (Counts VIII–XLII) ................................................40

   1.      Personal Use ..........................................................................41

   2.      Prior Notice ...........................................................................42

   3.      Public Interest .......................................................................45

F.      State Product Liability Claims .....................................................................46

   1.      State Claims Displaced by Product Liability Acts................................47

        a.    Connecticut .......................................................................47

        b.    Indiana ..............................................................................48

        c.    Kansas ...............................................................................49

        d.    Louisiana...........................................................................50

        e.    Mississippi ........................................................................50

        f.    New Jersey ........................................................................52

        g.    Ohio ..................................................................................53

   2.      Ohio Plaintiffs' Manufacturing Defect Claim (Count XLIX) ...............55

   3.      Louisiana Plaintiffs' Claims (Counts LII–LIV)....................................55

G.      Direct File Plaintiffs....................................................................................55

V.      CONCLUSION.................................................................................................56

2

# I.    BACKGROUND

This multidistrict litigation ("MDL") arises from the manufacture, sale, and marketing of tractor hydraulic fluid ("THF"), a multifunctional lubricant designed to offer certain protective benefits when used in tractors and heavy equipment as a hydraulic fluid, transmission fluid, and gear oil. Plaintiffs represent a putative class of consumers who purchased at least one of four allegedly defective products at issue in this case: Smitty's Super S Super Trac 303 Tractor Hydraulic Fluid ("Smitty's Super Trac 303"), Smitty's Super S 303 Tractor Hydraulic Fluid ("Smitty's Super S 303"), Cam2's Promax 303 Tractor Hydraulic Oil ("Cam 2 Promax 303"), and Cam2's 303 Tractor Hydraulic Oil ("Cam2 303") (collectively, the "303 THF Products"). Defendants Smitty's and CAM2 manufactured the 303 THF Products, which were sold nationwide by multiple retailers under various label names.

Plaintiffs initiated suit against the manufacturers and retailers in multiple federal district courts where the 303 THF products were sold. On February 11, 2020, Defendants requested all pending actions be consolidated and transferred pursuant to 28 U.S.C. § 1407. On June 2, 2020, the Judicial Panel on Multidistrict Litigation ("J.P.M.L.") consolidated the eight then-pending actions to the Western District of Missouri.[1] *See In re: Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2936, 2020 WL 2848377, at *1 (J.M.P.L. June 2, 2020). Following the creation of this MDL, Plaintiffs filed another lawsuit, *Feldkamp v. Smitty's Supply, Inc.*, No. 20-cv-02177, in the U.S. District Court for the Central District of Illinois, which was subsequently transferred to this Court. This Court's Order dated August 3, 2020 permitted Plaintiffs to file a Consolidated Amended Complaint that would serve to supersede all

---

[1] The pending actions consolidated before the undersigned are as follows: *Buford v. Smitty's Supply, Inc.*, No. 19-cv-00082 (E.D. Ark.); *Fosdick v. Smitty's Supply, Inc.*, No. 19-cv-01850 (E. D. Cal.); *Blackmore v. Smitty's Supply, Inc.*, No. 19-cv-04052 (N.D. Iowa); *Zornes v. Smitty's Supply, Inc.*, No. 19-cv-0257 (D. Kan.); *Wurth v. Smitty's Supply, Inc.*, No. 19-cv-00092 (W.D. Ky.); *Mabie v. Smitty's Supply, Inc.*, No. 19-cv-3008 (S.D. Tex.); *Klingenberg v. Smitty's Supply, Inc.*, No. 19-cv-2684 (D. Minn.); *Graves v. Smitty's Supply, Inc.*, No. 19-cv-5089 (W.D. Mo.).

prior pleadings in the individual cases. This Court's August 3, 2020 Order permitted direct joinder of new claims through the Consolidated Amended Complaint. Plaintiffs filed three subsequent amended consolidated complaints. Defendants moved to dismiss (Doc. #253 and Doc. #237) the Third Amended Consolidated Complaint (Doc. #218), but that motion was rendered moot by the filing of the Fourth Amended Consolidated Complaint ("FACC"), which is the operative complaint.

All Plaintiffs from all states assert the following claims against Defendants:

| Count I | Negligence |
| Count II | Breach of Express Warranty |
| Count III | Breach of Implied Warranty of Merchantability |
| Count IV | Breach of Implied Warranty of Fitness for a Particular Purpose |
| Count V | Unjust Enrichment |
| Count VI | Fraudulent Misrepresentation |
| Count VII | Negligent Misrepresentation |

Plaintiffs additionally assert the following state-specific claims on behalf of themselves and their proposed state classes:

| Count VIII | Arkansas Deceptive Trade Practices Act, Ark. Code Ann § 4-88-101 |
| Count IX | California Unfair Competition Law, Cal. Bus. Prof. Code § 17200 |
| Count X | California False and Misleading Advertising, Cal. Bus. Prof. Code § 17500 |
| Count XI | California Consumer Legal Remedies Act, Cal. Civ. Code. § 1770 |
| Count XII | Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 |
| Count XIII | Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110g[2] |
| Count XIV | Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 |
| Count XV | Florida Misleading Advertising Law, Fla. Stat. Ann. § 817.41 |

---

[2] Plaintiffs refer to the "Connecticut Consumer Protection Act," but cite C.G.S.A. § 42-110g, which sets out a cause of action under the Connecticut Unfair Trade Practices Act. (Doc. #260, p. 124.) The Court will construe the claim as being brought under the Connecticut Unfair Trade Practices Act.

| | |
|---|---|
| Count XVI | Illinois Consumer Fraud and Deceptive Business Practices Act, ILCS Ch. 815, ACT 505, *et seq.* |
| Count XVII | Indiana Deceptive Consumer Sales Act, Ind. Code. Ann. § 24-5-0.5-5(b)[3] |
| Count XVIII | Kansas Consumer Protection Act, K.S.A. § 50-623 |
| Count XIX | Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.220 |
| Count XX | Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901 |
| Count XXI | Minnesota Consumer Fraud Act, Minn. Stat. Ann. § 325F.67 |
| Count XXII | Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 |
| Count XXIII | Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601 |
| Count XXIV | Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 |
| Count XXV | New York Consumer Protection Law, N.Y. Code § 20-700 |
| Count XXVI | North Carolina Consumer Protection Act, N.C.G.S. § 75-1.1(a) |
| Count XXVII | Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 |
| Count XXVIII | Oklahoma Consumer Protection Act, Okla. Stat. Ann. tit. 15, § 751, *et seq.*[4] |
| Count XXIX | Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.* |
| Count XXX | South Dakota Deceptive Trade Practices and Consumer Protection, S.D. Codified Laws § 37-24-1, *et seq.*[5] |
| Count XXXI | Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.* |
| Count XXXII | West Virginia Consumer Credit and Protection Act, W. Va. Code Ann. § 46A-6-101, *et seq.* |
| Count XXXIII | Wisconsin Deceptive Trade Practices Act, Wis. Stat. Ann. § 100.18 |
| Count XXIV | Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1521, *et seq.* |
| Count XXXV | Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5, § 205-A, *et seq.* |
| Count XXXVI | New Mexico Unfair Practices Act, N.M. Stat. Ann. § 52-12-1, *et seq.* |

---

[3] Plaintiffs refer to the Indiana Consumer Protection Act, but cite Ind. Code Ann. § 24-5-0.5-5, Indiana's Deceptive Consumer Sales Act. (Doc. #260, p. 134.) The Court will construe this cause of action as asserting a claim under Indiana's Deceptive Consumer Sales Act.

[4] Plaintiffs refer to "Oklahoma Consumer Protection Statute[,]" which the Court construes as asserting a claim under Okla. Stat. Ann. tit. 15, § 751 *et seq.* (Doc. #260, p. 158.)

[5] Plaintiffs refer to "South Dakota Consumer Protection Act[,]" which the Court construes as asserting a claim under S.D. Codified Laws § 37-24-1 *et seq.* (Doc. #260, p. 162.)

| | |
|---|---|
| Count XXXVII | North Dakota Unlawful Sales or Practices Act, N.D. Cent. Code Ann. § 51-15-01, *et seq.* |
| Count XXXVIII | Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, *et seq.* |
| Count XXXIX | Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 9 |
| Count XL | New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.* |
| Count XLI | New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-19 |
| Count XLII | Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq.* |
| Count XLIII | Connecticut Products Liability Act, C.G.S.A. § 52-572m |
| Count XLIV | Indiana Products Liability Act–Design Defect, Ind. Code Ann. § 34-20-4-4 |
| Count XLV | Indiana Products Liability Act–Failure to Warn, Ind. Code Ann. § 34-20-4-2 |
| Count XLVI | Kansas Product Liability Act–Design Defect, K.S.A. § 60-3301[6] |
| Count XLVII | Kansas Product Liability Act–Failure to Warn, K.S.A. § 60-3301 |
| Count XLVIII | Ohio Products Liability Act–Design Defect, Ohio Rev. Stat. Ann. § 2307.75 |
| Count XLIX | Ohio Products Liability Act–Manufacturing Defect, Ohio Rev. Stat. Ann. § 2307.74 |
| Count L | Ohio Products Liability Act–Defect Due to Nonconformance with Manufacturers' Representation, Ohio Rev. Stat. Ann. § 2307.77 |
| Count LI | Tennessee Products Liability Act of 1978, Tenn. Code Ann. § 29-28-101, *et seq.*[7] |
| Count LII | Louisiana Products Liability Act–Nonconformity to Express Warranty, La. Stat. Ann. § 9:2800.58[8] |
| Count LIII | Louisiana Products Liability Act–Design Defect, La. Stat. Ann. § 9:2800.56 |
| Count LIV | Louisiana Products Liability Act–Failure to Warn, La. Stat. Ann. § 9:2800.57 |

---

[6] Plaintiffs refer to "Kansas Product Liability Act" which the Court construes as a claim brought under K.S.A. § 60-3301, *et seq.* (Doc. #206, p. 100.)

[7] Plaintiffs refer to "Tennessee Products Liability Act[,]" which the Court construes as a claim brought under Tenn. Code Ann. § 29-28-101, *et seq.* (Doc. #260, p. 200.)

[8] Plaintiffs refer to "Louisiana Products Liability Act[,]" which the Court construes as a reference to La. Stat. Ann. § 9:2800.51, *et seq.* (Doc. #260, p. 202.)

Defendants Smitty's and Cam2 now move to dismiss all claims asserted in the FACC. Plaintiffs oppose the motion. The parties' arguments are addressed below.

## II.    CHOICE OF LAW

Before addressing Defendants' arguments in support of dismissal, the Court must determine the appropriate law to apply to each claim. "For the purposes of choice of law analysis, an MDL court is not a typical federal court sitting in diversity." *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 999 F.3d 534, 538 (8th Cir. 2021). For claims asserted under federal law, "consolidated cases are controlled by the law of this circuit, rather than that of the various circuits in which they were first filed." *In re Express Scripts, Inc. PBM Litig.*, 522 F. Supp. 2d 1132, 1138 (E.D. Mo. 2007) (citations omitted).

For claims asserted under state law, "the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (citing *In re Air Crash Disaster Near Chicago, Ill.*, 644 F.2d 594, 610 (7th Cir. 1981)); (Doc. #46.) "The threshold question is whether the relevant substantive laws of the different states involved are sufficiently different to require a choice of law analysis." *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 97 F.3d at 1055 (citing *Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994)). "[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." *Phillips v. Marist Soc. of Washington Province*, 80 F.3d 274, 276 (8th Cir. 1996) (citations and quotations omitted). "If no conflict exists between the potentially applicable laws, a single set of laws from one state may be applied to the entire class's claims so long as that state has a significant contact . . . such that choice of law is neither arbitrary nor fundamentally unfair." *In re: Dollar Gen. Corp.*

*Motor Oil Mktg. & Sales Pracs. Litig.*, No. 16-02709-MD-W-GAF, 2019 WL 1418292 at *4 (W.D. Mo. Mar. 21, 2019).

Plaintiffs' FACC asserts fifty-four causes of action against Defendants, seven of which are claims asserted by all Plaintiffs. Defendants have identified several conflicts between the relevant states' laws, and the Court agrees that there are conflicts. Because conflicts exists, it is "necessary to determine the conflict-of-law theories of the forum states and to apply those theories." *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 605 (6th Cir. 1981).

### 1.    Law Applicable to Contract Claims

The FACC asserts three contract claims: Count II, breach of express warranty; Count III, breach of implied warranty of merchantability; and Count IV, breach of implied warranty of fitness for a particular purpose. The parties have identified conflicts for these claims in the following states: Alabama, Arkansas, Colorado, Florida, Georgia, Illinois, Indiana, Iowa, Kentucky, Maryland, Michigan, Mississippi, Nebraska, New Hampshire, New Jersey, North Carolina, Ohio, South Carolina, South Dakota, Texas, Virginia, West Virginia.

Alabama, Florida, Georgia, Maryland, Mississippi, North Carolina, Ohio, South Carolina, and West Virginia apply *lex loci contractus*: the contract is governed by the law of the place the contract was made.[9] Here, any contract existing between the parties was made where Plaintiffs purchased the 303 THF Products. *See David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1316 (S.D. Fla. 2009) ("Because Plaintiff purchased his [product] in Florida, under Florida choice-

---

[9] *Hughes Assocs., Inc. v. Printed Cir. Corp.*, 631 F. Supp. 851, 854 (N.D. Ala. 1986); *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1091–92 (11th Cir. 2004) (applying Florida law); *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 753 (11th Cir. 1998) (applying Georgia law); *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013) (applying Maryland law); *Owens v. Mississippi Farm Bureau Cas. Ins. Co.*, 910 So.2d 1065, 1069–70 (Miss. 2005); *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 601 (4th Cir. 2004) (applying North Carolina law); *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824–25 (6th Cir. 1996) (applying Ohio law) (finding the law of the state the contract was made presumptively applies); *Witt v. Am. Trucking Assocs., Inc.*, 860 F. Supp. 295, 300 (D.S.C. 1994); *Kenney v. Indep. Ord. of Foresters*, 744 F.3d 901, 905 (4th Cir. 2014) (applying West Virginia law).

8

of-law analysis, Florida law applies"). Accordingly, each states' laws will govern the respective Plaintiffs' claims (*e.g.,* Alabama law will govern the Alabama Plaintiff's contract claims).

Arkansas, Colorado, Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, South Dakota, Texas, Virginia, and Wisconsin apply the "most significant relationship" test, or tests the Court finds substantially similar to the most significant relationship test.[10] These states consider factors like "the location of the subject matter, the place of delivery of the contract, the domicile of [the parties], the place of last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Perma-Pipe, Inc. v. Liberty Surplus Ins. Co.*, 38 F. Supp. 3d 890, 894 (N.D. Ill. 2014). Considering any contract formed was delivered at the place of purchase, the same state in which Plaintiffs are domiciled,[11] the Court finds that the states' respective laws will govern (*e.g.,* Arkansas law will govern the Arkansas Plaintiff's contract claims). *See Gray v. BMW of North Am., LLC.*, 22 F. Supp. 3d 373, 381–82 (D.N.J. 2014) (applying the most significant relationship test to conclude that "the court follows a long line of case law on . . . warranty claims that hold the law of the consumers' home state should govern").

---

[10] *Whirlpool Corp. v. Ritter*, 929 F.3d 1318, 1321 (8th Cir. 1991) (applying Arkansas law) (finding Arkansas courts apply the "significant contacts test"); *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 447–48 (1979); *Perma-Pipe, Inc. v. Liberty Surplus Ins. Co.*, 38 F. Supp. 3d 890, 894–95 (N.D. Ill. 2014); *Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 737 (7th Cir. 2008) (applying Indiana law); *Harlan Feeders, Inc. v. Grand Lab'ys, Inc.*, 881 F. Supp. 1400, 1410–11 (N.D. Iowa 1995); *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009); *Johnson v. Ventra Grp., Inc.*, 191 F.3d 732, 738–39 (6th Cir. 1999) (applying Michigan law); *Kender v. Auto-Owners-Ins. Co.*, 329 Wis. 2d 378, 390–91 (2010) (applying Minnesota law); *F.D.I.C. v. Nordbrock*, 102 F.3d 335, 338 (8th Cir. 1996) (applying Nebraska law); *K.J. Quinn & Co., Inc. v. Cont'l Cas.*, 806 F. Supp. 1037, 1040 (D.N.H. 1992); *Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 136 (D.N.J. 2020); *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 336 (2nd Cir. 2005) (applying New York law); *Expansion Cap. Grp., LLC v. Patterson*, 514 F. Supp. 3d 1095, 1116 (D.S.D. 2021); *Weber v. PACT XPP Techs., AG*, 811 F.2d 758, 771 (5th Cir. 2016) (applying Texas law); *Asbestos Removal Corp. of Am., Inc. v. Guaranty Nat. Ins. Co.*, 846, F. Supp. 33, 35 (E.D. Va. 1994); *In re Jafari*, 569 F.3d 644 (7th Cir. 2009) (applying Wisconsin law).

[11] The Court has identified a few exceptions to the general statement. For example, Plaintiff Howard Stembridge asserts claims as part of both the Tennessee and Kentucky classes, despite having purchased his 303 THF Products in Kentucky. (Doc. #260, pp. 25, 30.) However, this fact does not overcome the other factors stated above.

9

## 2.    Law Applicable to Tort Claims

The FACC asserts four tort claims: Count I, negligence; and Count V, unjust enrichment; Count VI, fraudulent misrepresentation; and Count VII, negligent misrepresentation. The parties have identified conflicts in the following states: Arkansas, California, Florida, Illinois, Indiana, Kentucky, Michigan, Texas, New Jersey, New York, Ohio, and Wisconsin.

Arkansas and Indiana courts follow *lex loci delicti*, where the law of the state in which the tort was committed applies.[12] "[T]he court applies the substantive laws of the state where the last event necessary to make an actor liable for the alleged wrong takes place" so long as the state bears some connection to the legal action. *Simon v. U.S.*, 805 N.E.2d 798, 805 (Ind. 2004) (citation and quotations omitted). Here, the last act necessary for Defendants to be liable for a negligent or fraudulent misrepresentation would be where the 303 THF Products' alleged misrepresentations damaged Plaintiffs. Any such damage would occur at the place of purchase or use. As such, the Court finds the states' respective laws govern (*e.g.*, Arkansas law will apply to the Arkansas Plaintiffs' claims).

Florida, Illinois, New Jersey, and Texas apply the "most significant relationship test[,]" in which the court should apply the state with the most significant relationship with the matter.[13] Kentucky, Ohio, and Wisconsin consider similar factors in conducting a choice of law analysis.[14]

---

[12] *Lane v. Celadon Trucking, Inc.*, 543 F.3d 1005, 1010–11 (8th Cir. 2008) (applying Arkansas law); *Simon v. U.S.*, 805 N.E.2d 798, 802 (Ind. 2004). The Court notes that Arkansas applies five factors to "soften the application of the doctrine of *lex loci delicti*" and the Court finds that these factors weigh in favor of applying Arkansas law to the Arkansas Plaintiffs' claims.

[13] *Melton v. Cent. Arms, Inc.*, 243 F. Supp. 3d 1290, 1299 (S.D. Fla. 2017) (citation omitted); *Nat'l Am. Ins. Co. v. ConAgra Foods, Inc.*, 954 F. Supp. 2d 790, 794 (S.D. Ill. 2013); *P.V. ex re. T.V. v. Camp Jaycee*, 197 N.J. 132, 962 A.2d 453, 460 (2008) ("[New Jersey courts] apply the Second Restatement's most significant relationship standard in tort cases."); *Jelec USA, Inc. v. Safety Controls, Inc.*, 498 F. Supp. 2d 945, 950 (S.D. Tex. 2007).

[14] *Memorial Hall Museum, Inc. v. Cunningham*, 455 F. Supp. 3d 347, 358 (W.D. Ky. 2020) (citation omitted) (noting that "if there are 'significant contacts–not necessarily the most significant contacts–with Kentucky, the Kentucky law should be applied'"); *Muncie Power Prod., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873–74 (6th Cir. 2003) (applying Ohio law); *Triad Grp., Inc. v. Vi-Jon, Inc.*, 870 F. Supp. 2d 645, 649–50 (E.D. Wis. 2012).

10

A court should consider "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered."[15]

Here, Defendants are incorporated and primarily conduct business, including the marketing of their 303 THF Products, in Louisiana. Plaintiffs are domiciled in, purchased their 303 THF Products in, used the 303 THF Products, and were allegedly damaged by the 303 THF Products in their respective states. The Court finds that Plaintiffs' home states of Florida, Illinois, Kentucky, New Jersey, Ohio, Texas, and Wisconsin have the most significant relationship with the matter. As such, each Plaintiffs' respective state's laws will govern (*e.g.*, Florida law will apply to the Florida Plaintiffs' claims).

California and New York apply an interests-analysis test.[16] In conducting the interest analysis test, the Court should "determine what interest, if any, each state has in having its own law applied to the case" and "select the law of the state whose interests would be 'more impaired' if its law were not applied." *Washington*, 24 Cal.4th at 919–20; *accord Kashef*, 442 F. Supp. 3d at 818 ("[C]ourts must always weigh the interests of the competing jurisdictions."). Here, California and New York have a strong interest in applying their respective law as those Plaintiffs are domiciled in, purchased the 303 THF Products in, and used the 303 THF Products in their respective states. Louisiana, as the state where Defendants are incorporated and conduct business, has an interest in regulating behavior within its borders. However, as the last act necessary to

---

[15] *Melton*, 243 F. Supp. 3d at 1299; *accord Conagra Foods Inc.*, 954 F. Supp. 2d at 795; *accord Camp Jaycee*, 962 A.2d at 461; *accord Jelec, USA, Inc.*, 498 F. Supp. 3d at 952.

[16] *Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal.4th 906, 919–20 (2001) ("[T]he trial court may analyze the governmental interests of the various jurisdictions involved to select the most appropriate law."); *Kashef v. BNP Paribas SA*, 442 F. Supp. 3d 809, 817 (S.D.N.Y. 2020) ("New York uses an interest-analysis approach to choice of law: the law of the jurisdiction with the greatest interest applies.").

commit the tort occurred in California and New York, these states have stronger interests in protecting their residents from fraudulent acts.[17]  As such, the Court finds the states' respective laws govern (*e.g.*, California law will apply to the California Plaintiffs' claims).

Michigan courts apply Michigan law "unless there is a rational reason to displace it."  *Atlas Techs., LLC v. Levine*, 268 F. Supp. 3d 950, 960 (E.D. Mich. 2017) (citation omitted).  "Michigan courts . . . use another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter."  *Hall v. General Motors Corp.*, 229 Mich.App. 580, 585 (1998).  As discussed above, Louisiana has an interest in having its law applied.  However, the Michigan Plaintiffs are domiciled in Michigan, purchased the 303 THF Products in Michigan, and used the 303 THF Products in Michigan.  "Any interest [Louisiana] may have in the resolution of this dispute is substantially outweighed by Michigan's interest in seeking its residents protected from fraudulent conduct."  *Atlas*, 268 F. Supp. 3d at 961.  Because the Court finds no rational reason to displace Michigan law, it finds that Michigan law applies to the Michigan Plaintiffs' claims.

Applying the relevant choice of law rules, the Court finds that for all identified conflicts of law each Plaintiff's home state's laws shall apply to their respective claims.  The Court will now address Defendants' arguments that Plaintiffs lack standing and have failed to state a claim.

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), a claim may be dismissed for "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to

---

[17] *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 936 (9th Cir. 2019) ("[W]e faithfully appl[y] the principle under California's choice-of-law jurisprudence that 'a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders.'") (citation omitted); *Shaw v. Carolina Coach*, 918 N.Y.S.2d 120, 82 A.D. 3d 98, 101 (2011) ("[T]he law of the place of the tort 'almost invariably obtains' because 'that jurisdiction has the greatest interest in regulating behavior within its borders[.]'") (citation omitted).

state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (citing *Iqbal*, 556 U.S. at 678). Although a complaint need not contain "detailed factual allegations," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. The Court must consider all factual allegations in the complaint as true. *See Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable"). Because whether Plaintiffs failed to state a claim is a question of federal procedure, the Court will apply the law of this circuit. *See In re Express Scripts*, 522 F. Supp. 2d at 1138.

## IV.    DISCUSSION

The parties' remaining arguments are addressed below, starting with the challenges that affect all claims and then proceeding in numerical order.

### A.    Standing

Standing is a threshold jurisdictional requirement. *Steel Co. v. Citizens for a Better Env't*, 532 U.S. 83, 94–95 (1998). Each plaintiff bears the burden of establishing three elements to show standing:

> First, the plaintiff must have suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of–the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely,

as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotation marks omitted). Plaintiffs also bear the burden of establishing standing for each named plaintiff:

> That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of a class to which they belong.

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n. 6 (2016) (citation and quotations omitted).

Because standing is a jurisdictional requirement, challenges to standing are brought pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Lujan*, 504 U.S. at 561.

Defendants argue that Plaintiffs lack standing for three reasons: (1) Plaintiffs fail to plead an injury-in-fact; (2) Plaintiffs do not allege future intent to purchase; and (3) Plaintiffs lack standing to bring claims for products they did not themselves purchase. The parties' arguments are addressed below.

### 1. Injury-in-Fact

Defendants argue that Plaintiffs' claims for purchase price damages fail because they lack Article III standing:

> Plaintiffs' claims for a refund are premised on allegations that the 303 product labels deceived them into paying for a product they allege was overpriced or worthless. Plaintiffs lack standing on these claims, however, because no plaintiff alleges that they read and relied on the [specific] labeling statement prior to purchasing the products.

(Doc. #284, p. 23) (citations and quotations omitted).

"[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing." *Sierra Club v. Morton*, 405. U.S. 727, 733–34 (1972). "Federal courts have required plaintiff to allege something more than overpaying for a defective product." *Johnson v. Atkins Nutritionals, Inc.*, No. 2:16-CV-04213-MDH, 2017 WL 6420199, at *3 (W.D. Mo. Mar. 29, 2017) (citation and quotations omitted). A plaintiff sufficiently pleads an economic injury-in-fact where "[h]e claims that his economic injury stems from Defendant's false, misleading, or deceptive labeling practices, and that he would not have purchased the product had he known that the labels were false or misleading" and "alleges that he saw the labels and relied on them in making his purchasing decision." *Id*.

Here, Plaintiffs allege that Defendant falsely labelled the 303 THF Products to represent they met the 303 THF specification. Additionally, each Plaintiff alleges that they purchased Defendants' products "based on the label described herein, including but not limited to the representation on the front of the label stating that the products were suitable for use as tractor hydraulic lubricants." (Doc. #260, pp. 49–83.) Plaintiffs plead that, as a result of their purchases, "each of the Plaintiffs and Class Members suffered tangible and concrete harm and damage in the form of the purchase price paid for the worthless 303 THF Products[.]" (Doc. #260, p. 85.) These allegations sufficiently plead an economic injury-in-fact.

## 2. Injunctive Relief

Defendants argue that Plaintiffs do not have standing to seek injunctive relief because they do not show they are under the threat of suffering a future injury. A plaintiff "must show that she is likely to suffer some future injury to obtain injunctive relief." *Meagley v. City of Little Rock*, 639 F.3d 348, 391 (8th Cir. 2011). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564 (citation and quotations omitted). In the products

15

liability context, a plaintiff "is not likely to suffer any future injury" and therefore "lacks standing to seek injunctive relief" if they are "not likely to purchase [the product] as they exist at present" and do not allege that "[they] intend[] to purchase [the product] from Defendants in the future." *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 763 (W.D. Mo. 2015); *see Browning v. Anheuser-Busch, LLC*, 539 F. Supp. 3d 965, 976 (W.D. Mo. 2021) (holding plaintiffs may seek injunctive relief where they alleged that "[d]espite being misled by Defendant, Plaintiffs wish to and are likely to continue purchasing the Products in the future.").

Here, the FACC does not support Plaintiffs' claim for injunctive relief. The parties agree that Defendants no longer sell the 303 THF Products that Plaintiffs purchased. Plaintiffs allege that "Defendants continue to manufacture and sell the same fluid . . . under product names such as 'Ag Fluid' and 'Agriculture Fluid.'" (Doc. #260, p. 16.) However, Plaintiffs do not allege that they are likely to purchase Ag Fluid as it exists at present. Plaintiffs also do not allege that they intend to purchase Ag Fluid in the future. The lack of such allegations "do not support a finding of 'actual or imminent' injury that our cases require." *Frost v. Sioux City, Iowa*, 920 F.3d 1158, 1161 (8th Cir. 2019) (quoting *Lujan*, 504 U.S. at 564). Accordingly, the Court finds that Plaintiffs lack standing and Defendants' motion to dismiss Plaintiffs' claims for injunctive relief is granted.

### 3. Unpurchased Products

Defendants argue that certain Plaintiffs' claims should be dismissed for lack of standing because they do not allege they purchased all four 303 THF Products at issue and "a plaintiff cannot show a particularized or actual injury for products he [or she] did not purchase." (Doc. #284, p. 59.) Plaintiffs admit that not all Plaintiffs purchased all four 303 THF Products. However, Plaintiffs argue that fact is irrelevant because:

> Plaintiffs *did* purchase the same offending product–a bad tractor hydraulic fluid– which was manufactured the same but sold under four different labels: The Cam2 Promax 303[THF] was the same fluid as Super S 303 [THF], Super S Trac 303

16

[THF], and Cam2 303 [THF], all also manufactured by [Defendants]. The fluids share the same, common defects that form the basis of Plaintiffs' claims on behalf of the class. They are made by the same company(ies), do not meet specifications, are made with the same type of improper ingredients, and they expose equipment to damage in a common way.

(Doc. #312, p. 78) (citations omitted) (emphasis in original).

"It does not appear that the Missouri Supreme Court or the Eighth Circuit have addressed this exact issue." *Goldman v. Tapestry, Inc.*, 501 F. Supp. 3d 662, 667 (E.D Mo. 2020). Until recently, the Western District of Missouri has followed a strict interpretation of standing in this context, holding that a plaintiff "only has standing as to the exact items she purchased." *Id*. (citing *Smith v. Atkins Nutritionals, Inc.*, No. 2:18-CV-04004-MDH, 2018 WL 9868591, at *7 (W.D. Mo. May 8, 2018); accord *Cape Cod Potato Chip Co.*, 81 F. Supp. 3d at 763. In *Goldman*, the Eastern District of Missouri adopted the position of other district courts that "plaintiffs have standing to assert claims on behalf of a class as to products they have not purchased as long as 'the products and alleged misrepresentations are substantially similar." 501 F. Supp. 3d at 667 (citing *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 541 (S.D.N.Y. 2013)).

Following *Goldman*, this Court was again faced with this issue and found "the 'substantially similar' approach most persuasive." *Browning*, 539 F. Supp. 3d at 977. In *Browning*, the Court noted this position has been found by other district courts to "most closely accord[] with U.S. Supreme Court precedent." *Id*. (citing *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 2d 1024, 1218 (C.D. Cal. 2017) (quotations omitted). "[T]he overarching questions is whether the plaintiff's averred injury is substantially similar to the claims of those she seeks to represent." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1219 (C.D. Cal. 2017). "At the motion to dismiss stage, however, the Court's review of the scope of a named plaintiff's Article III standing is necessarily limited. . . . [and] 'general factual allegations' that raise a

reasonable inference that the products are substantially similar 'may suffice'" *Id.* (citing *Lujan*, 504 U.S. at 561).

This Court has considered products substantially similar enough to warrant standing where "[t]he class claims assert the same causes of actions . . . and are predicated on substantially similar facts, mainly how these [products] were packed, including [defendant's] use of [product names] and associated imagery. *Browning*, 539 F. Supp. 3d at 978; *see also Wagner v. Gen. Nutrition Corp.*, No. 16-CV-10961, 2017 WL 3070772, at *5–*6 (N.D. Ill. July 19, 2017) (holding that a plaintiff had standing regarding dietary supplements that were "materially the same" as supplements he had purchased).

Here, Plaintiffs allege in the FACC, at this stage taken as true, that "the Cam2 Promax 303 [THF] was the same fluid as Super S 303 [THF], Super S Super Trac 303 [THF], and Cam2 303 [THF][.]" (Doc. #260, p. 13.) Plaintiffs allege all products were falsely marketed and packaged as meeting 303 THF specifications, which form the basis of each Plaintiff's cause of action regardless of the specific product purchased. Further, Plaintiffs allege that each product's labeling and branding contained identical or nearly identical representations regarding the products' ingredients, quality, and performance. The FACC's factual allegations raise a reasonable inference the four products are substantially similar. Accordingly, the Court finds that, for the purposes of this motion, Plaintiffs have standing to pursue class claims.

## B. Failure to Plead Damages

Defendants argue that Plaintiffs' claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because Plaintiffs do not sufficiently plead damages. The parties' arguments regarding (1) property damages, (2) purchase price damages, and (3) damages under state law are addressed below.

18

### 1. Property Damage

Defendants argue that Plaintiffs fail to state a claim for property damage because "Plaintiffs' group assertion of generic property damage is the definition of boilerplate, and provides Defendants of no notice of what type of property damage a particular Plaintiff sustained as a result of which particular 303 product or when that damage occurred[.]" (Doc. #284, pp. 21–22.) Defendants also argue that Plaintiffs' claims fail because "the FACC does not contain allegations of specific damage caused to an individual Plaintiff's equipment." (Doc. #344, p. 14.) Plaintiffs disagree, arguing "the FACC clearly states at least eleven places the types of specific damage the Plaintiffs experienced" and that "Plaintiffs plead specific damages in a common way." (Doc. #312, pp. 25–26.)

When pleading property damage, a plaintiff must allege "specific facts" concerning "injury to real or personal property." *Fastrip, Inc v. CSX Corp.*, No. 3:07CV-66-S, 2007 WL 2254357 at *1 (W.D. Ky. Aug. 2, 2007). A plaintiff's allegations of damage "accompanied by extensive factual pleadings elsewhere in the [complaint]" is sufficient to allege a cognizable injury. *In re: Dollar Gen.*, 2017 WL 3863866 at *12.

Here, Plaintiffs have alleged specific facts of injury to personal property. For example:

> [E]ach of the Plaintiffs and Class Members suffered tangible concrete harm and damage . . . in the form of harm and damage to their equipment as the result of using Defendants' 303 THF Products. Because the 303 THF Products did not conform to or have an equivalency to any tractor hydraulic fluid specification, lacked adequate viscosity, and did not contain required performance additives, each of the Plaintiffs' and Class Members' equipment suffered negative impacts and increased and excessive wear to their equipment, hydraulic systems, transmissions, and other components, regardless of any individual variations in the Plaintiffs' and Class Members' equipment or experiences.

(Doc. #260, p. 85.) The FACC clearly alleges that each Plaintiff sustained damage to their farming equipment. (Doc. #260, p. 85.) This allegation of damage, accompanied with the extensive factual allegations of the 219-page FACC, is sufficient to allege a cognizable injury. *Dollar General*,

2017 WL 3863866 at *12 ("Even if Plaintiffs did not include the allegation of property damage
. . . a cursory survey of the laws in play reveals that damage to or diminished value of the product,
taken alone, is sufficient to establish [their claims].").  The Court finds that Plaintiffs have
adequately pled property damage.

### 2. Purchase Price Damage

Defendants argue that Plaintiffs fail to state a claim for purchase price damage because
Plaintiffs "fail to plead their price premium claims in a manner for which damages can be
reasonably assessed[,]" and because "[t]hey allege only, and generally, that they overpaid for a
product that was either 'worth much less than the sale price' or 'worthless' due to the alleged
fraud."  (Doc. #284, p. 24.)

A plaintiff sufficiently pleads an ascertainable loss by alleging payment for a product that
is worthless:

> Plaintiffs allege they paid a premium for the Products and would not have
> purchased the Products absent [Defendant's] alleged misrepresentations.  In
> essence, Plaintiffs allege the Products were overpriced compared to their actual
> value. . . In turn, Plaintiffs adequately plead 'what was obtained or given up' as a
> result of [Defendant's] alleged misrepresentations.

*Browning*, 539 F. Supp. 3d at 972 (citing *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920
(8th Cir. 2001)).  Like *Browning*, Plaintiffs specifically plead what was given up because of
Defendants' alleged misrepresentations. Plaintiffs plead that they "allege they suffered damages
because they paid money for a worthless–or negative benefit–product they would not have
purchased but for Defendants' deceptive conduct and scheme."  (Doc. #312, p. 21) (citations
omitted).  "Plaintiffs need not prove specific damages at this early stage." *Id*.  Accordingly, the
Court finds that Plaintiffs have adequately pled purchase price damages.

### 3.     Damages Under State Law

Defendants argue that Plaintiffs fail to adequately plead a cognizable injury under substantive state law because "Plaintiffs do not allege any [manifestation of defects] in the products they individually purchased, but only generally and in conclusory fashion that equipment was 'damaged' in an unspecified way." (Doc. #284, p. 26.)

"It is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect." *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009). However, if a plaintiff alleges an inherent defect "afflicts all" products, the plaintiff does not need to allege that the defective products "have already caused external damage." *In re Zurn*, 644 F.3d at 616–17; *In re Polaris Mktg., Sales Pracs., and Prods. Liab. Litig.*, 9 F.4th 793, 797 (8th Cir. 2021) (finding plaintiffs did not adequately plead damage where the "purchasers have alleged nothing more than the existence of a defect in a product line or ownership of a product that is at risk for manifesting a defect").

Plaintiffs' allegations are sufficient because Plaintiffs allege an inherent defect afflicting all 303 THF Products. Plaintiffs allege that each product purchased "was not suitable for use," and as a result, "caused damage" to each Plaintiffs' property. (Doc. #260, pp. 49–83.) Plaintiffs do not plead that a defect in the 303 THF Products manifests through use, but that each THF product is defective by virtue of its "poor quality base oils, waste oil, line flush, and used oils and diluted additive packages." (Doc. #250, p. 14.) Like *In re Zurn*, Plaintiffs allege that each THF product exhibits the alleged defect. 644 F.3d at 617. Accordingly, the Court finds that Plaintiffs sufficiently plead a cognizable injury.

## C.        Fraud-Based Claims (Counts V–VII & VIII–XLII)

Defendants argue that the following fraud-based claims are conclusory allegations that do not meet the heightened pleading standard set out in Federal Rule of Civil Procedure 9(b): Counts V–VII, alleging unjust enrichment, fraudulent misrepresentation, negligent misrepresentation; and Counts VIII–XLII, alleging violations of various state consumer acts,

Federal Rule of Civil Procedure 9(b) requires that "in alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . .  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  "In order to satisfy the pleading requirements of Rule 9(b), 'the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.'" *Olson v. Fairview Health Servs. of Minnesota*, 831 F.3d 1063, 1070 (8th Cir. 2016) (citing *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (citations omitted).  Rule 9(b) "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Joshi*, 441 F.3d at 556 (citations omitted).  "Rule 9(b)'s particularity requirements relax when concerning matters within the opposing party's knowledge."  *Webb v. Dr Pepper Snapple Grp., Inc.*, No. 4:17-CV-00624-RK, 2018 WL 1955422, at *4 (W.D. Mo. Apr. 25, 2018) (citation omitted).  However, "the plaintiff does not need to state each element of the fraud claim with particularity; instead, the plaintiff must state sufficient facts such that the pleadings are not conclusory." *Webb*, 2018 WL 1955422, at *4.  Courts have found a plaintiff's pleadings were not conclusory where they alleged:

> The "who" is Defendants, the "what" are the television advertisements, the "where" is the television channels and locations that the advertisements were broadcasted, the "when" are the dates and times the advertisements aired during the class period, and the "how" are the representations in the advertisements that suggested the Product contained ginger.

22

*Id.  See also Thornton v. Pinnacle Foods Grp. LLC*, No. 4:16-CV-00158-JAR, 2016 WL 4073713, at *4 (E.D. Mo. Aug. 1, 2016) (citation omitted).

Upon review of the FACC, Plaintiffs have sufficiently alleged facts satisfying Rule 9(b)'s heightened requirements.  The FACC alleges that "each Plaintiff purchased the [303 THF Products] . . . based on the labels described herein, including but not limited to the representation on the front of the labels stating that the products were suitable for us[e] as 'tractor hydraulic' lubricants, which each viewed in connection with the purchase."  (Doc. #260, p. 83.)  The FACC further alleges that "each Plaintiff reasonably relied upon Defendants' representation . . . concerning the particular qualities and benefits of the 303 THF Products, and Plaintiffs would not have paid for the worthless 303 THF Products in the absence of Defendants' unfair acts."  (Doc. #260, p. 84.)

Plaintiffs satisfy the "who," "what," "when," "where," and "how" requirements:  (1) the "who" is Smitty's and Cam2; (2) the "what" is the "303" labeling on the 303 THF Products that misrepresented the quality of the product to consumers; (3) the "when" is the time-period from December 1, 2013–present; (4) the "where" is specifically the 41 states which Plaintiffs represent; and (5) the "how" is misleading marketing and labelling of the 303 THF Products.  *Olson*, 831 F.3d at 1070.  Plaintiffs allege that Defendants engaged in deceptive marketing and labeling during a specific time-period in stores in the United States and that each plaintiff relied on these representations in purchasing the 303 THF Products.  Accordingly, Defendants' argument that Counts V–VII and VIII–XLII fail to meet Rule 9(b)'s heightened pleading standard is denied.

### D.    Common Law Claims (Counts I–VII)

Defendants argue the Court must dismiss Plaintiffs' common law claims, Counts I–VII, for failure to state a claim for various reasons including failure to plead the elements and failure to plead state-specific requirements.  Each argument is addressed below.

23

## 1.    Boilerplate Recitation (Counts I–VII)

Defendants argue that all common law claims, Counts I–VII, should be dismissed because they "simply allege the elements by rote" and "are pled in an undifferentiated fashion across all 41 states." (Doc. #284, p. 33.) Defendants argue that Plaintiffs' failure to plead each claim as a unique claim for each state, resulting in 287 counts, is "a basic pleading failure [that] independently warrants dismissal of Counts I–VII." (Doc. #284, pp. 33–34.)

The Court is unaware of any requirement that Plaintiffs must separately plead each common law count separately for each state, and Defendants cite no case law supporting such an assertion. A plaintiff may assert common law class claims "with the understanding that, at the class certification stage, Plaintiffs must demonstrate how such a class can both plausibly be managed, as well as conform with the commands of Rule 23." *Dollar General*, 2017 WL 3863866, at *6. At this stage in the litigation, the FACC's structure of pleading each common law claim in one count does not prevent Plaintiffs from sufficiently stating a plausible claim and Defendants' argument is rejected.

## 2.    Breach of Warranty Claims (Counts II–IV)

Defendants argue that Counts II–IV, breach of express and implied warranties, should be dismissed because Plaintiffs fail to plead various state-specific requirements: (1) lack of privity; and (2) failure to plead pre-suit notice.[18] The parties' arguments are addressed below.

### a.    Lack of Privity

Defendants argue that Counts II–IV should be dismissed as to the following states because their respective laws require a contractual buyer-seller relationship, or privity, between the parties:

---

[18] Defendants also argue that Plaintiffs' warranty claims, Counts II–IV, should be dismissed because Plaintiffs do not "allege a defect manifested in the products actually purchased and used." (Doc. #344, p. 24.) The Court addressed this argument *supra* in Section III.B.3 and rejects it here for the same reasons.

Alabama, Arizona, California, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Kentucky, Maryland, Michigan, New York, North Carolina, and Wisconsin. The parties agree that Plaintiffs are not in privity with Defendant.[19]

Plaintiffs have conceded the following claims, both in their briefing and at oral argument: Count II as to Arizona, Connecticut, Kentucky, Maryland, Michigan, and Wisconsin; and Counts III and IV as to Alabama, Arizona, Connecticut, Kentucky, New York, North Carolina, Ohio, and Wisconsin. The Court will address the remaining contested claims and states below.

As to Count II, breach of express warranty, the Court finds that Georgia and Illinois law supports Plaintiffs' breach of express warranty claims such that Plaintiffs have sufficiently stated a claim.[20] However, Alabama, Florida, Indiana, New York, and North Carolina require privity to bring a claim for breach of express warranty.[21] Plaintiffs do not allege they are in privity with

[19] Plaintiffs contend they need not address Defendants' arguments as to the California, Maryland, and Ohio Plaintiffs' warranty claims because "[t]he body of Defendants' brief does not even mention California, Ohio or Maryland in its list of states, yet they are listed in [an exhibit providing legal authority for Defendants' arguments]. Accordingly, no arguments have been raised to those states and Plaintiffs respectfully submit arguments about those three states need not be addressed here." (Doc. #312, p. 49.) However, Defendants do in fact include such an argument as to those three states (albeit, one sentence), along with supporting case law contained in exhibits, in their briefing. (Doc. #284, p. 44.) On a Rule 12 motion, "courts may consider . . . items subject to judicial notice, matters of public record . . . and exhibits attached to the complaint whose authenticity is unquestioned without converting the motion into one for summary judgment." *Williams v. Employers Mutual Casualty Co.*, 845 F.3d 891, 903–04 (8th Cir. 2017) (citations and quotations omitted). The Court finds that Defendants properly raised this argument.

[20] *Lee v. Mylan Inc.*, 806 F. Supp. 2d 1320, 1326 (M.D. Ga. 2011) (citation omitted); *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02 C 8800, 2005 WL 782698, at *15 (N.D. Ill. Apr. 6, 2005). Georgia and Illinois law provide an exception to the privity requirement where, "[i]f the manufacturer expressly warrants to the ultimate consumer that the product will perform in a certain way or that it meets particular standards, privity with that ultimate consumer is deemed to exist." *Lee*, 806 F. Supp. 2d at 1326 (citation omitted); *Canadian Pac. Ry. Co.*, 2005 WL 782698, at *15 ("[M]anufacturer documents [and advertisements] . . . may give rise to an express warranty because the assertions become part of the basis of the bargain[.]"). Here, Plaintiffs plead that Defendants represented to the ultimate consumer the 303 THF Products met the particular "303" standard, including the consumer to purchase the product. The Court finds that the Georgia and Illinois Plaintiffs have sufficiently stated their express warranty claims.

[21] *Rampey v. Novartis Consumer Health, Inc.*, 867 So.2d 1079, 1089 (Ala. 2003) ("Ala. Code 1975 § 7-2-318 abolished privity requirements [for warranty claims] only in actions involving personal injury to natural persons."); *Douse v. Bos. Sci. Corp.*, 314 F. Supp. 3d 1251, 1262–63 (M.D. Fla. 2018) ("[E]xtending warranty liability to include product label representations would swallow the privity rule entirely"); *Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 2016 (N.D. Ind. 2011) ("[V]ertical privity is required for claim of breach of express warranty"); *Koenig v. Boulder Brants, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) ("[U]nder New York law, privity is an essential element of a cause of action for breach of express warranty, unless the plaintiff claims to have been personally injured."); *Leonard*

25

Defendants. Accordingly, Count II is dismissed as to the Alabama, Florida, Indiana, New York, and North Carolina Plaintiffs.

However, in Iowa, the privity requirement is not a total bar to recovery. "[N]onprivity buyers who rely on express warranties are limited to direct economic damages." *Beyond the Garden Gate, Inc. v. Northstar Freeze-Dry Mfg., Inc.*, 526 N.W.2d 305, 310 (Iowa 1995). As such, the Iowa Plaintiffs may only recover direct economic damages and Count II is dismissed as to the Iowa Plaintiffs to the extent they seek other damages.[22]

As to Counts III and IV, California and Illinois require privity in order to bring a claim for implied warranties.[23] Because Plaintiffs are not in privity with Defendants, Counts III and IV are dismissed as to the California and Illinois Plaintiffs. However, that Court finds the Georgia, Iowa, and Michigan Plaintiffs have sufficiently stated a claim for breach of implied warranties.[24]

Florida law does not support Plaintiffs' implied warranty claims. "Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."

---

*v. Bed, Bath, & Beyond, Inc.*, No. 5:15-CV-00284-F, 2015 WL 9582425, at *3 (E.D.N.C. Dec. 30, 2015) ("[T]o sustain a claim for breach of warranty [under North Carolina law], [plaintiff] must show that it was in privity of contract with the third-party defendants").

[22] Direct economic damages are "damages flowing directly from insufficient product quality" and "include ordinary loss of bargain damages: the difference between the actual value of the goods accepted and the value they would have had if they had been as warranted." *Beyond the Garden Gate*, 526 N.W.2d at 309 (citing James J. White & Robert S. Summers, *Uniform Commercial Code* § 11–5, at 536 (3d ed. 1988) (quotations omitted). Under Iowa law, the Iowa Plaintiffs may not recover consequential economic damages, which "include loss of profits resulting from failure of the goods to function as warranted, loss of goodwill, and loss of business reputation, and other loss proximately resulting from a defective product beyond direct economic loss." *Id.* (citing White & Summers, at 536, 539) (quotations omitted).

[23] *U.S. Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal.App.3d 1431, 1441 (Ct. App. 1991) ("Vertical privity is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability") (citations omitted); *Redmon v. Whirlpool Corp.*, No. 20-CV-6626, 2020 WL 9396529, at *5 (N.D. Ill. Apr. 28, 2020) (citation omitted) ("absent an allegation of personal injury, implied warranties arise under Illinois law only between buyers and sellers").

[24] *Lee*, 806 F. Supp. 2d at 1326; *Speight v. Walters Dev. Co., Ltd.*, 744 N.W.2d 108, 114 (Iowa 2008) (Iowa "has eliminated the privity requirement in products liability cases raising a breach-of-implied-warranty claim") (citing *State Farm Mut. Auto Ins. Co. v. Anderson-Weber, Inc.*, 110 N.W.2d 449, 456 (Iowa 1961)); *Pack v. Damon Corp.*, 434 F.3d 810, 820 (6th Cir. 2006) ("Michigan has abandoned the privity requirement for implied-warranty claims").

*Mesa v. BMW of North Am., LLC*, 904 So.2d 450, 458 (Fla. Dist. Ct. App. 2005). Plaintiffs argue that they fall under Florida's "exception to the rule under third-party beneficiary law." *Weiss v. General Motors LLC*, 418 F. Supp. 3d 1173, 1182 (S.D. Fla. 2019). However, "[f]or a third-party beneficiary claim to succeed, [t]he contracting parties' intent to benefit the third party must be specific and must be clearly expressed in the contract in order to endow the third party beneficiary with a legally enforceable right." *Boddison v. General Motors, LLC*, No. 8:20-CV-2139-WFJ-AEP, 2021 WL 2685770, at *1 (M.D. Fla. June 30, 2021) (citing *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 982–83 (11th Cir. 2005)) (quotations omitted). Here, the FACC does not allege facts sufficient for the Florida Plaintiffs' implied warranty claims to fall under the third-party beneficiary exception. As such, Counts III and IV are dismissed as to the Florida Plaintiffs.

Under Indiana law, "vertical privity is required for . . . breach of implied warranty of fitness for a particular purpose." *Atkinson*, 813 F. Supp. 2d at 1026 (citing *Pizel v. Monaco Coach Corp*., 364 F. Supp. 2d 790, 793 (N.D. Ind. 2005). Accordingly, Count IV is dismissed as to the Indiana Plaintiffs. However, "[v]ertical privity is not required for a claim of breach of the implied warranty of merchantability even if that claim sounds in contract." *Id*. (citing *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 959 (Ind. 2005)). Defendants' challenge of Count III is denied as to the Indiana Plaintiffs.

In sum, (1) Count II is dismissed as to the Alabama, Arizona, Connecticut, Florida, Kentucky, Indiana, Maryland, Michigan, New York, North Carolina, and Wisconsin Plaintiffs; (2) Count II is dismissed as to the Iowa Plaintiffs to extent they seek damages beyond direct economic damages; (3) Counts III and IV are dismissed as to the Alabama, Arizona, California, Connecticut, Florida, Illinois, Kentucky, New York, North Carolina, Ohio, and Wisconsin Plaintiffs; and (4) Count IV is dismissed as to the Indiana Plaintiffs.

## b.    Lack of Pre-Suit Notice

Defendants argue that Plaintiffs' breach of warranty claims (Counts II–IV) should be dismissed as to the following states because Plaintiffs were required and failed to provide Defendants with pre-suit notice: Alabama, Arkansas, Colorado, Florida, Illinois, Indiana, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New York, Ohio, South Carolina, South Dakota, Texas, Virginia, and West Virginia.[25]  Plaintiffs argue Defendants had sufficient notice because pre-suit notice was given by one plaintiff from each state, and alternatively, that pre-suit notice applies only to the immediate seller and not the manufacturer.

Contrary to Defendants' assertion, Colorado, Florida, Minnesota, Missouri, South Carolina, and Texas law require that pre-suit notice be pled against an immediate seller only.[26] Further, under South Dakota law, whether a claim fails for a plaintiffs' failure to plead pre-suit notice is a question more appropriately resolved at the summary judgment stage.  *Donat v. Trek Bicycle Corp.*, No. 13-CV-5052, 2016 WL 297346, at *12 (D.S.D. Jan. 22, 2016) ([T]he Court

---

[25] The specific Plaintiffs that Defendants argue do not sufficiently allege pre-suit notice are: Plaintiffs Jackson and Morgan of Alabama; Plaintiff Burford of Arkansas; Plaintiffs Guire and Lempka of Colorado; Plaintiffs Brett, Raburn, and Rumore of Florida; Plaintiffs Feldkamp and Lesko of Illinois; Plaintiff Hardin of Indiana; Plaintiffs Dahlke and Dow of Michigan; Plaintiff Klingenberg of Minnesota; Plaintiff Still of Mississippi; Plaintiffs Graves and Nash of Missouri; Plaintiff Chauncey of Nebraska and South Dakota; Plaintiffs Jacobsen, Lunkwitz, and Riessland of Nebraska; Plaintiff Ouelette of New Hampshire; Plaintiffs Miller and Wachholder of New York; Plaintiffs Hayes and Ortner of Ohio; Plaintiffs Chavis and Kirven of South Carolina; Plaintiff Mabie of Texas; Plaintiffs Bartus, Boone, and Sickelton of Virginia; and Plaintiff Jenkins of West Virginia.

[26] *Cooley v. Big Horn Harvestore Sys., Inc.*, 813 P.2d 736, 741 (Colo. 1991) ("[A] purchaser injured by a product is not required to give notice of such injury to a remote manufacturer prior to initiating a litigation against such manufacturer."); *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., L.P.*, No. 3:12-CV-1366-HES-JBT, 2014 WL 12640371, at *4 (M.D. Fla. Aug. 14, 2014) ("[N]otice is required to be given to the seller, not the manufacturer, under Florida law.") (emphasis omitted); *Church of the Nativity of Our Lord v. WatPro, Inc.*, 474 N.W.2d 605, 610 (Minn. Ct. App. 1991), *aff'd*, 491 N.W. 2d 1 (Minn. 1992) (holding Minnesota law  "requires notice only to a buyer's immediate seller and not to other sellers in the chain of distribution"); *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. banc 1993) ("The buyer is only under a duty to notify the immediate seller, not the manufacturer"); *Seaside Resorts, Inc. v. Club Car, Inc.*, 308 S.C. 47, 59 (Ct. App. 1992) (holding South Carolina law "requires a retail buyer to notify only the retail seller who tendered the goods to him [or her], not wholesalers, distributors, manufacturers, or others who sold the goods further up the chain of commerce") (citations omitted); *Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 888 (Tex. Civ. App. 1979) ("[T]he notice requirement of Section 2.607 applies only as between a buyer and his immediate seller.").

finds that notice need not be specifically [pled] by Plaintiffs"). Defendants' arguments fail as to these states.

As to the remaining states, Plaintiffs' pleadings are sufficient at this stage. In *Dollar General*, this Court held that "general pleading" of notice is sufficient where the complaint states that "each Plaintiff . . . provided notice of Defendants' breach [of warranty] at least of the date (s)he filed this allegation." *Dollar General*, 2017 WL 3863866, at *14 (cleaned up). "This general pleading, taken in light of the Court's survey of relevant elements across the many jurisdictions involved in this action, suffices for the majority of the classes at this stage of the litigation." *Id*. Upon review of the relevant states' laws, the remaining states challenged by Defendants require some affirmative pleading of notice.[27] The FACC states that "Defendants have received from each Plaintiff and/or other sources such as MDA timely notification of the defects in their THF 303 Products." (Doc. #260, p. 107.) This general pleading suffices at this stage in the litigation.

Defendants argue that Plaintiffs are required to allege pre-suit notice each individually, as set out in *Drobnak v. Andersen Corp.*, 561 F.3d 778, 784–85 (8th Cir. 2009). In *Drobnak*, plaintiffs

---

[27] *Smith v. Apple, Inc.*, No. 08-CIV-1948-S, 2009 WL 3958096, at *1 (N.D. Ala. Nov. 4, 2009) ("Affirmatively pleading notice is critical to the stating of a claim for a breach of warranty under Alabama law"); *Williams v. Mozark Fire Extinguisher Co.*, 318 Ark. 792, 797 (1994) ("We have held that the giving of reasonable notice is a condition precedent to recovery under the provisions of the commercial code and that the giving of notice must be alleged in the complaint."); *Whitwell v. Wal-Mart Stores, Inc.*, No. 09-CV-513-GPM, 2009 WL 4894575, at *6 (S.D. Ill. Dec. 11, 2009) ("In view of [Plaintiff's] failure to comply with the pre-suit notice requirement of the Illinois UCC, this case will be dismissed."); *Courtesy Enterprises, Inc. v. Richards Lab'ys*, 457 N.E.2d 572, 579 (Ind. Ct. App. 1983) ("Notice of breach of warranties is a substantive condition precedent to recovery for an asserted breach."); *Gorman v. Am. Honda Motor Co., Inc.*, 302 Mich.App 112, 127 (2013) ("Here, plaintiff provided defendants no notice at all that she believed defendants were in breach [prior to filing suit]. Accordingly, plaintiff is 'barred from any remedy.'") (citation omitted); *Mississippi Chem Corp v. Dresser-Rand Co.*, 287 F.3d 359, 368 (5th Cir. 2002) (holding Mississippi law "requires that a buyer . . . 'must notify the seller of breach or be barred from any remedy'") (citations omitted); *Langner v. Boston Sci. Corp.*, 492 F. Supp. 3d 925, 936 (D. Neb. 2020) ("[T]he Nebraska Supreme Court would strictly construe the notice provision in § 2-607(3)(a) and require a plaintiff to provide the defendant pre-suit notice of the warranty issue."); *Town of Hooksett School Dist. v. W.R. Grace and Co.*, 617 F. Supp. 126, 132 (D.N.H. 1984) ("[T]he Plaintiff's failure to give the notice required by RSA 382–A: 2–607(3)(a) bars the warranty counts of this suit."); *Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 86 (S.D.N.Y. 2020) ("To assert a breach of warranty claim under New York law . . . 'the buyer must . . . notify the seller of breach or be barred from any remedy.'") (citations omitted); *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008) ("If a plaintiff fails to plead pre-litigation notice, her breach of warranty claim must be dismissed.") (citations omitted); *Hebron v. Am. Isuzu Motors Co.*, 60 F.3d 1095, 1097–98 (4th Cir. 1995) (holding Va. Code § 8.2–607(3)(a)'s notice requirements apply "to all buyers of goods"); W.Va. Code § 46-2-607(a)(3) ("[T]he buyer must . . . notify the seller of breach of be barred from any remedy.").

in the first complaint adequately alleged pre-suit notice. *Id.* However, plaintiffs added in the amended complaint pled that "[f]urther notice by additional Plaintiffs and Class members would be futile." *Id.* (citation and quotations omitted). The court dismissed the newly added plaintiffs' UCC claims because "they failed to provide specific notice of their complaints to anyone." *Id.* at 786. *Drobnak* is inapplicable here because Plaintiffs generally allege they provided timely pre-suit notice. *Dollar General*, 2017 WL 3863866, at *14 ("[G]eneral pleading . . . suffices for the majority of the classes at this stage of the litigation."). The Court finds that, for purposes of this motion, Plaintiffs have sufficiently alleged pre-suit notice in order to bring their breach of warranty claims.

### 3. Breach of Express Warranty Claims (Count II)

Defendants argue that Count II, breach of express warranty, should be dismissed because: (1) Plaintiffs do not adequately allege the existence of an express warranty; and (2) any existing express warranty is unactionable puffery.

### a. Existence of an Express Warranty

Defendants contend that "[a]bsent from the FACC is any paragraph identifying which specific language on which specific label or other material is actually alleged to form an express warranty." (Doc. #284, p. 41.)

To adequately state a claim for breach of express warranty, a plaintiff must allege:

> (1) the defendant sold goods to the plaintiff; (2) the seller made a statement of fact about the kind or quality of those goods; (3) the statement of fact was a material factor inducing they buyer to purchase the goods; (4) the goods did not conform to that statement of fact; (5) the nonconformity injured the buyer; and (6) the buyer notified the seller of the nonconformity in a timely fashion.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. 2010).[28]

---

[28] Defendants assert that the laws of the 41 states at issue "uniformly require that plaintiffs plead the terms of the alleged warranty to state a claim." (Doc. #284, p. 40.) Based on a review of the parties' briefings and relevant case law, the Court is satisfied that the relevant state laws are substantially uniform as to this requirement.

"[A] basic description of the express terms of the warranty is needed in order for the Court to determine the viability of Plaintiff[s'] claims." *Miller v. Heil Co.*, 525 F. Supp. 3d 612, 618 (W.D. Pa. 2021) (citation omitted). Plaintiffs sufficiently plead a claim for breach of express warranty where they "allege specific contents of [the] warranty." *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1235 (N.D. Cal. 2012).

Here, Plaintiffs have pled the specific contents of the alleged warranties. The FACC includes photos of the Cam2 Promax and Smitty's Super Trac 303 labels. Plaintiffs plead that the labels of Defendants' other products, Cam2 303 and Smitty's Super S 303, are identical to the labels in the photos provided except for changing photos of modern tractors to "older, simpler tractors." (Doc. #260, pp. 15, 38–40.) Plaintiffs plead that the labels represented to purchasers that the 303 THF Products:

> (1) [met] manufacturer specifications and [were] acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) [were] substitute[s] for and [satisfied] John Deere's JD-303 and J20A specifications; (3) [were] fluid[s] that provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) [were] fluid[s] that protects against rust and corrosion; and (5) [were] fluid[s] designed for use in equipment manufactured by Allis-Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere, Oliver, Ford and Caterpillar.

(Doc. #260, p. 38.)

Further, Plaintiffs sufficiently plead the remaining requirements of an express warranty claim. Plaintiffs each separately plead they purchased Defendants' products "based on the label described herein."[29] Plaintiffs adequately allege Defendants breached the warranty that the 303 THF Products were of 303 quality (Doc. #260, pp. 49–83.) Plaintiffs specifically state that despite

---

[29] The Court is not persuaded by Defendants' contention that Plaintiffs are required to plead that they individually "read" the label in order to state a claim for breach of express warranty. Plaintiffs have sufficiently demonstrated that the label "constituted a material factor inducing Plaintiffs to purchase the goods." *Gannon Joint Venture Ltd. P'ship v. Masonite Corp.*, No. 4:07-CV-1242-JCH, 2008 WL 2074107, at *2 (E.D. Mo. May 14, 2008) (citation omitted).

31

the products' labels, Defendants knew that the products contained "low quality base oil, inadequate additive content, flush oil, line wash, used transformer oil, used turbine oil, and/or other waste oil products containing motor oil components and other additives and contaminants that are never appropriate for use in a tractor hydraulic fluid." (Doc. #260, p. 105.) Finally, Plaintiffs plead that "each of the Plaintiffs and Class Members suffered tangible and concrete harm and damage in the form of the purchase price paid for the worthless 303 THF Products[.]" (Doc. #260, p. 85.) Accordingly, the Court finds that Plaintiffs have sufficiently pled a cause of action for breach of express warranty.

### b.     Unactionable Puffery

Defendants argue that Plaintiffs' breach of express warranty claim fails because the statements on the 303 THF Products' labels are unactionable puffery. Defendants argue that statements regarding product performance are "classic statements of opinion or puffery that are not susceptible to truth or falsity and thus are not actionable," including statements that the product was "field tested" and would "provide excellent results in the areas of anti-wear properties, brake chatter, extreme pressure properties, foam suppression, PTO clutch performance, rust protection, and water sensitivity." (Doc. #284, pp. 35–36) (cleaned up).

In determining whether a statement is puffery, the Eighth Circuit has stated:

> Puffery and statements of fact are mutually exclusive. If a statement is a specific, measurable claim or can be reasonably interpreted as being a factual claim, *i.e.*, one capable of verification, the statement is one of fact. Conversely, if the statement is not specific and measurable, and cannot be reasonably interpreted as providing a benchmark by which the veracity of the statement can be ascertained, the statement constitutes puffery.

*Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004) (discussing puffery in the context of the Lanham Act, 15 U.S.C. § 1125(a)). Here, Plaintiffs provide statements made by Defendants that can be reasonably interpreted as factual claims. For example:

32

- Cam2 Promax "provides performance in the areas of anti-wear, PTO clutch, rust protection, extreme pressure properties, water sensitivity, foam surpression and brake chatter reduction." (Doc. #260, p. 39.)

- Cam2 Promax "is suitable as a replacement for the following manufacturers where a tractor hydraulic fluid of this performance level is recommended: Allis Chalmers, Allison, Caterpillar, Deutz, Ford Tractor, International Harvester, JI Case/David Brown, John Deere 303 J20A, Kubota, Massey Ferguson, Oliver, [and] White." (Doc. #260, p. 39.)

- Smitty's Super Trac 303 "provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pump, protects against rust and corrosion, provides excellent results for foam suppression and water sensitivity, and controlled frictional characteristics permit the wet brakes to hold properly, reduces brake chatter and provides for smooth engagement of power take-off (PTO) clutches." (Doc. #260, p. 40) (cleaned up).

- Smitty's Super Trac 303 "is designed for use as a replacement fluid for the hydraulic, wet brake, and transmission requirements of equipment manufacturers where a product of this quality is recommended, including: Allis Chalmers, Allison, Caterpillar, Deutz, Ford Tractor, International Harvester, JI Case/David Brown, John Deere 303 J20A, Kubota, Massey Ferguson, Oliver, [and] White." (Doc. #260, p. 40.)

- Smitty's Super Trac 303 "has been field tested and is suitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended: Allis Chalmers, Allison, Caterpillar, Deutz, Ford Tractor, International Harvester, JI Case/David Brown, John Deere 303 J20A, Kubota, Massey Ferguson, Oliver, [and] White." (Doc. #260, p. 40.)

These representations made in the advertising and sale of the 303 THF Products are statements of fact capable of verification. These statements are unlike a typical statement of puffery, *e.g.*, "comparative claims, often involving large number, [which] are puffing because a consumer cannot reasonably believe that there is a test behind the claim." *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1531 (E.D. Mo. 1997) (citation omitted), *aff'd* 172 F.3d 623 (8th Cir. 1999). "These statements are specific, do not contain apparently inflated numbers, do not compare one product to another, and a consumer could reasonably believe there was a test behind the claims." *Faltermeier v. FCA U.S. LLC*, No. 4:15-CV-00491-DGK, 2016 WL 4771100, at *7 (W.D. Mo. Sept. 13, 2016).

33

Further, a puffery argument has no merit where "Plaintiffs' claims target a wide-ranging marketing scheme that is greater than the practice's individual components." *Dollar General*, 2017 WL 3863866, at *23. Plaintiffs allege a wide-ranging marketing scheme ranging beyond misrepresentative statements. Plaintiffs allege that Defendants sold obsolete oil to customers by representing the 303 THF Products contained "a superior additive package," when the 303 THF Products had "no additives" and was "totally line wash in a bucket." (Doc. #260, p. 42.) Plaintiffs claim this marketing scheme "deceptively induced these customers into buying a worthless product that would likely damage their" equipment. *Dollar General*, 2017 WL 3863866, at *23. Accordingly, the Court rejects Defendants' argument that the statements constituting Plaintiffs' express warranty claims are unactionable puffery.

### 4.    Breach of Implied Warranty of Fitness (Count IV)

Defendants argue that Count IV, breach of implied warranty of fitness for a particular purpose, fails because "the product labeling . . . specifically advised purchasers" and "limits the implied warranty of fitness for a particular purpose to use in tractors manufactured in 1974 or earlier." (Doc. #284, p. 46–47.) Defendants argue that Count IV should be dismissed as to the ninety-one Plaintiffs who did not allege they used the 303 THF Products in equipment manufactured before 1975.

"A seller can disclaim implied warranties." *Transp. Corp. of Am., Inc. v. Int'l Bus. Machines Corp., Inc.*, 30 F.3d 953, 958 (8th Cir. 1994) (applying Minnesota law). "[T]o exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous."[30]

---

[30] Ala. Code § 7-2-316; Ariz. Rev. Stat. Ann. § 47-2316; Ark. Code Ann. § 4-2-316; Cal. Com. Code § 2316; Colo. Rev. Stat. Ann. § 4-2-316; Conn. Gen. Stat. Ann. § 42a-2-316; Fla. Stat. Ann. § 672.316; Ga. Code Ann. § 11-2-316; 810 Ill. Comp. Stat. Ann. 5/2-316; Ind. Code Ann. § 26-1-2-316; Iowa Code Ann. § 554.2316; Kan. Stat. Ann. § 84-2-316; Ky. Rev. Stat. Ann. § 355.2-316; Me. Rev. Stat. tit. 11, § 2-316; Md. Code Ann., Com. Law § 2-316; Mass. Gen. Laws Ann. ch. 106, § 2-316; Mich. Comp. Laws Ann. § 440.2316; Minn. Stat. Ann. § 336.2-316; Miss. Code. Ann. § 75-2-316; Mo. Ann. Stat. § 400.2-316; Mont. Code Ann. § 30-2-316; Neb. Rev. Stat. Ann. § UCC § 2-316; Nev. Rev. Stat. Ann. § 104.2316; N.H. Rev. Stat. Ann. § 382-A:2-316; N.J. Stat. Ann. § 12A:2-316; N.M. Stat. Ann. § 55-2-316; N.Y. U.C.C. Law § 2-316; N.C. Gen. Stat. Ann. § 25-2-316; N.D. Cent. Code Ann. § 41-02-33;

34

Here, Cam2's Promax 303 includes the following language located on the back of the product in small italic print: "Misapplication may cause severe performance problems. [Cam 2 Promax 303] has not been recommended by any OEM for model years later than 1974. For equipment built after 1974 requiring multi-functional fluid, use [Cam2] Premium Tractor Hydraulic Fluid." (Doc. #260, p. 39.) Smitty's Super Trac 303 contains identical language in the same location. (Doc. #260, p. 40.)

At the motion to dismiss stage, Count IV does not fail because Plaintiffs allege that any disclaimer was inconspicuous. Taken as true, Plaintiffs allege that the disclaimer "was deceptive and misleading with its language and location" such that "its placement in smaller print on the lower back portion of the 303 THF Product labels" was "vague," "inadequate," and "not appropriate in content or in placement." (Doc. #260, pp. 212–14.) Plaintiffs further allege that "a reasonable consumer would not understand or know what the [disclaimer] meant, even if they could locate it." (Doc. #260, p. 214.) Accordingly, Defendants' argument is denied.

### 5.      Unjust Enrichment (Count V)

Defendants argue that Count V, unjust enrichment, fails because (1) four states do not recognize a cause of action for unjust enrichment, and (2) Plaintiffs fail to plead state-specific requirements of privity.[31]

### a.      States Recognizing the Cause of Action

Defendants argue that the California, New Jersey, Texas, and Illinois Plaintiffs' unjust enrichment claims must be dismissed because those "states treat unjust enrichment as a

---

Ohio Rev. Code Ann. § 1310.21; Okla. Stat. Ann. tit. 12A, § 2-316; 13 Pa. Stat. and Cons. Stat. Ann. § 2316; S.C. Code Ann. § 36-2-316; S.D. Codified Laws § 57A-2-316; Tenn. Code Ann. § 47-2-316; Tex. Bus. & Com. Code Ann. § 2.316; Va. Code Ann. § 8.2-316; W. Va. Code Ann. § 46-2-316; Wis. Stat. Ann. § 402.316; Wyo. Stat. Ann. § 34.1-2-316. *See also* La. Civ. Code Ann. art. 2548.

[31] Defendants also argue that Count V should be dismissed because "[t]he failure of each Plaintiff to allege the manifestation of a defect . . . dooms their unjust enrichment claims, just as it defeats their warranty claims." (Doc. #284, p. 48.) The Court addressed this argument *supra* in Section III.B.3 and rejects it here for the same reasons.

35

prerequisite to restitution" and "do not recognize unjust enrichment as a cause of action." (Doc. #284, p. 48.)

California and New Jersey do not recognize unjust enrichment as a standalone cause of action. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (applying California law); *McGuire v. BMW of N. Am., LLC*, No. 13-7356, 2014 WL 2566132, at *3 (D.N.J. June 6, 2014). However, both states allow unjust enrichment to be used "as a basis for quasi-contractual liability," in which "a plaintiff must show both that defendant received a benefit and that retention of the benefit would be unjust." *Castro v. NYT Television*, 851 A.2d 88, 99 (App. Div. 2004) (citations and quotations omitted); *accord Hain Celestial Grp.*, 738 F.3d at 762. Plaintiffs plead a benefit was conferred on Defendants because Plaintiffs purchased Defendants' 303 THF Products when, if they had known the truth, they would not have purchased them. Plaintiffs plead that, as a result of Defendants' misrepresentations, Plaintiffs suffered purchase price and property damages. Based on these allegations, the Court will construe the California and New Jersey Plaintiffs' claims for unjust enrichment as quasi-contractual claims for restitution. The Court finds that Plaintiffs have sufficiently stated a claim. *Castro*, 851 A.2d at 99 (App. Div. 2004); *accord Hain Celestial Grp.*, 738 F.3d at 762.

Contrary to Defendants' assertion, both Texas and Illinois recognize a cause of action for unjust enrichment. *Perales v. Bank of Am., N.A.*, No. 14-CV-1791, 2014 WL 3907793, at *3 (S.D. Tex. Aug. 11, 2014) (quoting *Heldenfels Bros., Inc v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)); *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516–20 (7th Cir. 2011). Defendants' argument is rejected as to the Texas Plaintiffs. However, in Illinois, an unjust enrichment claim is tied to the viability of related claims:

> Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust. . . . [I]f an unjust enrichment claim rests on the same improper

36

conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim–and, of course, unjust enrichment will stand or fall with the related claim.

*Cleary*, 656 F.3d at 516–20. "As Plaintiffs also advance related causes of action, such as the consumer protection claims, and the unjust enrichment claim shares the same underlying facts as those related claims, Plaintiffs have sufficiently stated a cause of action." *Dollar General*, 2017 WL 3863866, at *7 (applying Illinois law). Here, Plaintiffs' six other common law claims are related and share underlying facts, *e.g.,* the alleged fraudulent misrepresentations made in the marketing and sale of the 303 THF Products. Accordingly, Defendants' argument is denied and the Illinois Plaintiffs' claim for unjust enrichment will not be dismissed.

### b. States Requiring Privity

Defendants argue that the Florida, Kentucky, Michigan, New Jersey, Ohio, and Wisconsin Plaintiffs' unjust enrichment claims must be dismissed because "a defendant must receive a direct benefit from plaintiff (*i.e.*, be in privity with plaintiff) in order . . . to maintain a claim for unjust enrichment." (Doc. #284, p. 48.) Defendants contend that because Plaintiffs purchased their 303 THF Products through retailers, any benefit was conferred to the retailers and not to Defendants.

To state a claim for unjust enrichment, Michigan, Ohio, and Wisconsin law require that a plaintiff confer a benefit directly onto the defendant.[32] The parties agree that Plaintiffs are not in

---

[32] *Storey v. Attends Healthcare Prods., Inc.*, No. 15-CV-13577, 2016 WL 3125210, at *13 (E.D. Mich. June 3, 2016) ("Plaintiffs have failed to state a claim for unjust enrichment under Michigan law because . . . . [w]hatever benefit [the consumer plaintiffs] conferred on [the remote manufacturer] Defendant they conferred indirectly."); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 427 (S.D.N.Y. 2017) (applying Michigan law) (collecting cases); *Paulus v. Beck Energy Corp.*, 94 N.E.3d 73, 98 (Ohio Ct. App. 2017) ("As no transaction occurred between the plaintiff and the defendant, the Supreme Court [of Ohio] concluded the plaintiff could not establish that defendant retained any benefit to which it is not justly entitled") (citing *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278 (2005)); *Loeb v. Champion Petfoods USA Inc.*, 359 F. Supp. 3d 597, 605 (E.D. Wisc. 2019) (finding Plaintiff did not establish Defendants were unjustly enriched because "it [was] undisputed that Plaintiff bought [the product] in various pet supply stores, not from Defendants directly").

privity with Defendants. Therefore, Count V is dismissed as to the Michigan, Ohio, and Wisconsin Plaintiffs.

In Florida, "dismissal is not proper if the manufacturer of a product marketed its product directly to consumers but sold its product through an intermediary, i.e., a retail outfit." *Carriuolo v. Gen. Motors LLC*, 72 F. Supp. 3d 1323, 1326 (S.D. Fla. 2014) (citations and quotations omitted). "Determining how and to what extent [Defendants] did or did not receive a direct benefit is a question of fact that cannot be resolved at the motion to dismiss stage." *Rapar, LLC v. Mansfield*, No. 19-CV-22903, 2020 WL 9549665, at *7 (S.D. Fla. Aug. 26, 2020) (citation and quotations omitted). Defendants' argument is better resolved at the summary judgment stage. Accordingly, Defendants' challenge to the Florida Plaintiffs' unjust enrichment claim is denied.

"[Kentucky] state appellate courts have hardly touched upon" this issue, and "the federal courts sitting in Kentucky are split" on whether "an indirect benefit conferred upon the defendant by the plaintiff will suffice to support an unjust enrichment claim under Kentucky law." *Noble Royalties Access Funds V LP v. Elk Horn Coal Co., LLC*, No. 2013-CA-001953-MR, 2015 WL 7352587, at *4 (Ky. Ct. App. Nov. 20, 2015) (dismissing the claim on other grounds). At this stage, the Court finds that an indirect benefit is sufficient to state a claim for unjust enrichment. *See Seye v. Cmty. Yellow Cab*, No. 10-234-WOB-CJS, 2013 WL 1332430, at *12 (E.D. Ky. Feb. 25, 2013). Defendants' motion to dismiss Count V as to the Kentucky Plaintiffs is denied.

In New Jersey, "if a manufacturer is alleged to have engaged in a false marketing campaign or to have failed to disclose[] a defect, plaintiffs have made out a claim for unjust enrichment." *DeFrank v. Samsung Elecs. Am., Inc.*, No. 19-CV-21401-KM-JBC, 2020 WL 6269277, at *25 (D.N.J. Oct. 26, 2020) (citations omitted). Plaintiffs allege that Defendants have both engaged in a false marketing scheme and failed to disclose a defect to Plaintiffs. The Court finds that Plaintiffs have stated a claim for unjust enrichment under New Jersey law.

38

### 6.        Fraudulent Misrepresentation (Count VI)

Defendants argue that Count VI should be dismissed because the alleged misrepresentations could not mislead a reasonable purchaser.[33]  Defendants argue that Plaintiffs' fraud allegations concerning the "303" product name are unactionable because no reasonable consumer could believe "they were purchasing a true equivalent to JD303, which has been obsolete since 1974." (Doc. #284, p. 36.)  Defendants argue that "as a matter of law, [the '303' label cannot] be construed as a representation that the products meet the nearly 50-year-old, JD303 specification, which John Deere discontinued before the overwhelming majority of Plaintiffs' equipment was even made."  (Doc. #284, p. 39.)

> To state a claim for fraudulent misrepresentation, Plaintiffs must plead:
>
> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

*Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) (citation omitted) (alteration in original).[34]

Defendants' reliance on *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021) is misplaced.  In *Moore*, the label at issue complied with specific FDA regulations and, accordingly, unable to mislead a reasonable consumer as a matter of law by statute.  *Id.*  In contrast, Plaintiffs are asserting the common law claim of fraudulent misrepresentation and the Court is unaware of any federal law regulating the marketing and sale of 303 THF Products.  Whether a reasonable

---

[33] Defendants also argue for the dismissal of Count VI because (1) Plaintiffs fail to plead reliance and causation; and (2) the statements constituting any fraudulent misrepresentation are unactionable puffery.  The Court has addressed these arguments *supra* in Sections III.D and III.E.3.b, respectively, and rejects them here for the same reasons.

[34] The Court is satisfied, and the parties do not contend, that there are not material conflicts between the relevant states' laws regarding the basic elements of fraudulent misrepresentation.

39

consumer would know that the "JD303" designation is now obsolete is a factual dispute contested by the parties. Defendants' argument "invite[s] the [C]ourt to assume facts outside the pleading, and opine on the mental state of the average consumer. . . . This is beyond the Court's task on a 12(b)(6) motion." *Dollar General*, 2017 WL 3863866, at *23. Accordingly, the Court rejects Defendants' argument.

### 7. Negligent Misrepresentation (Count VII)

Defendants argue that Count VII, negligent misrepresentation, should be dismissed because (1) Arkansas and Indiana do not recognize the tort of negligent misrepresentation; and (2) New York requires privity to succeed on a claim for negligent misrepresentation.[35] Plaintiffs concede that "Arkansas does not appear to allow a claim for negligent misrepresentation" and "New York does not allow negligent misrepresentation in the absence of a special relationship, which does not exist here." (Doc. #312, p. 62.) Plaintiffs also conceded Count VII as to the Indiana Plaintiffs at oral argument. Therefore, Count VII is dismissed as to the Arkansas, Indiana, and New York Plaintiffs.

### E. Statutory Fraud Claims (Counts VIII–XLII)

Defendants argue that Counts VIII–XLII fail because Plaintiffs fail to plead the following state-specific elements: (1) personal use; (2) prior notice; (3) privity; and (4) and public interest.[36] The parties' arguments are addressed below.

---

[35] Defendants also argue that Count VII, should be dismissed because the statements constituting any negligent misrepresentation are unactionable puffery. The Court has addressed this argument *supra* in Section III.E.3.b and rejects it here for the same reasons.

[36] Defendants also argue that Counts VIII–XLII should be dismissed because (1) Plaintiffs fail to adequately plead reliance and causation; (2) the statements constituting any fraud are unactionable puffery; and (3) the statements constituting any fraud would not mislead a reasonable consumer. The Court has addressed these arguments *supra* in Sections III.D, III.E.3.b, and III.E.6, respectively, and rejects them here for the same reasons.

40

### 1. Personal Use

Defendants argue that the following Plaintiffs' consumer fraud claims fail because those states' consumer protection acts require a plaintiff to allege personal, family, or household use:[37]

| | |
|---|---|
| Count XIX | Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.220; |
| Count XX | Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.902; |
| Count XXVII | Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. § 1345.01; |
| Count XXIX | Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-9.2; |
| Count XXXIX | Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A; |
| Count XLII, | Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-102.[38] |

Defendants argue that "with the sole exception of Michigan Plaintiff Clough, [Plaintiffs] do not allege that they purchased Defendants' [303 THF Products] for purely or primarily personal, family, or household uses. (Doc. #284, p. 51.) The Court will address each state below.

Plaintiff Clough has stated a claim under Michigan's Consumer Protection Act. Michigan's Consumer Protection Act applies "only to purchases by consumers and does not apply to purchases that are primarily for business purposes." *Slobin v. Henry Ford Health Care*, 666 N.W.2d 632, 634–35 (2003). Here, the FACC alleges that Plaintiff Clough of Michigan used a THF product "in his 2010 John Deere 3032E Tractor for personal, family or household use on his

---

[37] Defendants also challenge Count XIX, alleging a violation of Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.220. However, Plaintiffs concede Count XIX as Kentucky "law appears to currently require privity . . . [and] Plaintiffs will not be seeking class certification of Kentucky warranty claims unless there is some change in the law." (Doc. #312, p. 52.) Accordingly, the Court need not address this issue.

[38] Defendants moved to dismiss Count XVI, alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; however, in their reply brief Defendants stated that, "[b]ased on a review of the case law, Defendants no longer seek dismissal of the statutory fraud claims for the Illinois Plaintiffs for failure to allege personal use." (Doc. #344, p. 30.)

41

property, such as moving wood and clearing snow." (Doc. #206, p. 56.) These allegations are sufficient for Plaintiff Clough to state a claim under Michigan law.

Conversely, the FACC contains no allegations of personal use as to Plaintiff Dahlke and Plaintiff Dow. Plaintiffs argue that Plaintiff Dahlke and Plaintiff Dow's consumer protection claims should survive because Defendants "admit Michigan Plaintiff Clough pleads [personal use]." (Doc. #312, p. 64.) But Plaintiff Clough's allegation of personal use does not show personal use by Plaintiff Dahlke and Plaintiff. Therefore, Count XX is dismissed as to Plaintiff Dahlke and Plaintiff Dow.

For similar reasons, Counts XXVII, XXIX, XXXIX, and XLII are dismissed. For a plaintiff to recover under the consumer protection acts of Ohio, Pennsylvania, Massachusetts, and Wyoming, the plaintiff must have purchased the product for personal use.[39] As to the plaintiffs from these states, the FACC makes no allegations that they purchased 303 THF Products primarily for personal use. Plaintiffs argue that "general pleading of use is sufficient." (Doc. #312, p. 65.) However, Plaintiffs cite no case law that "general use," as opposed to personal use, is sufficient.. Accordingly, Counts XXVII, XXIX, XXXIX, and XLII are dismissed.

### 2. Prior Notice

Defendants argue that Count XXVII, violation of the Ohio Consumer Sales Practices Act ("OSCPA"), Ohio Rev. Code Ann. § 1345.09, should be dismissed because Plaintiffs do not allege prior notice.

---

[39] Ky. Rev. Stat. Ann. § 367.220; *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 595 (2010) (citations omitted) ("A consumer cannot recover under the CSPA unless he entered into a 'consumer transaction,' i.e., a purchase made for primarily personal, family, or household purposes."); *Zerpol Corp. v. DMP Corp.*, 561 F. Supp. 404, 415 (E.D. Pa. 1983) (citing 73 Pa. Const. Stat. Ann. § 201–9.2) ("[A] private cause of action under the [PUTPCPL] is available only to purchasers or lessors of goods used 'primarily for personal, family or household purposes.'"); *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 701 (1975) (holding Massachusetts' Consumer Protection Act "is available only to a consumer, that is, a 'person who purchases or leases goods . . . for personal, family or household purposes'"); *Paoluccio v. Washington Mut. Bank, F.A.*, No. 082357A, 2009 WL 2230920, at *2 (Mass. Super. June 26, 2009); Wyo. Stat. Ann. § 40-12-102.

OCSPA "prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions." *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 33 (2006). To bring a claim under OCSPA, a plaintiff must show the defendant "acted in the face of prior notice that its conduct was deceptive or unconscionable." *Id.* at 34. "The prior notice may be in the form of (1) a rule adopted by the Attorney General under [Ohio Rev. Code Ann. §] 1345.05(B)(2) or (2) a court decision made available for public inspection by the Attorney General under [Ohio Rev. Code Ann. §] 1345.05(A)(3)." *Id.* For a rule or decision to constitute prior notice, there must be a "substantial similarity" to the defendant's alleged misconduct, meaning "similarity not in every detail, but in essential circumstances or conditions." *Id.* at 36. Plaintiffs present both a rule and a court decision to argue Defendants had sufficient prior notice. The Court will address both below.

First, Plaintiffs argue that a rule adopted by Ohio's Attorney General gave Defendants prior notice sufficient under OCSPA.[40] Plaintiffs reference Ohio Admin. Code § 109:4-3-10, stating that it is deceptive for a supplier to "[m]ake any representations . . . which would cause a reasonable consumer to believe such statements are true, unless, at the time . . . the supplier possession or relies upon a reasonable basis in fact[.]" Plaintiffs argue that "Defendants' misrepresentations about quality, grade and standards met by the 303 THF Products are sufficiently similar to the rule[.]" (Doc. #312, p. 67.)

However, Ohio Admin. Code 109:4-3-10 "is insufficient to provide prior notice under [Ohio Rev. Code. Ann. §] 1345.09(B) because it does not refer to any particular act or practice." *Marrone*, 850 N.E.3d at 36. "Ohio Admin. Code § 109:4-3-10 is not sufficiently specific or similar

---

[40] Plaintiffs also argue the FACC's reference to Ohio Rev. Code Ann. § 1345.02(B)(2), stating that a supplier representing "that the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription or model, if it is not" is deceptive, constitutes prior notice. (Doc. # 312, p. 66.) However, merely citing the language of OCSPA does not constitute prior notice. Plaintiffs must show "an act or practice determined by a court of this state to violation section 1345.03 . . . and committed after the decision containing the determination has been made available for public inspection[.]" Ohio Rev. Code Ann. § 1345.09(B).

to provide Defendant[s] prior notice [their] actions would violate the OCSPA." *Cassidy v. West Marine Prods., Inc.*, No. 1:05 CV 2223, 2007 WL 9754325 at *3 (N.D. Ohio June 21, 1007).

Second, Plaintiffs present a court decision, *Amato v. Gen. Motors Corp.*, 463 N.E.2d 625, 633 (1982), to argue that Defendants had prior notice that their acts were considered deceptive under OCSPA. In *Amato*, plaintiffs alleged that defendant sold Oldsmobile cars that, unknown to consumers, contained Chevrolet engines. *Id*. at 627. The *Amato* court found that Ohio's "prohibition of promotional advertising which omits material exclusions, reservations, modifications or conditions ([Ohio Admin. Code 109:4-3-02]) and the forbiting of bait and switch tactics ([Ohio Admin. Code 109:4-3-03]) are enough to permit class actions under" OCSPA. *Id*. at 633. Plaintiffs allege that the defendant's conduct in *Amato* is "sufficiently similar" to the conduct at issue such that Defendants were on notice for purposes of OCSPA. (Doc. #312, p. 67.)

Defendants argue that *Amato* is inapplicable because "[c]ourts since *Marrone* have uniformly interpreted the 'substantial similarity' requirement stringently." (Doc. #284, p. 53.) *Marrone* involved a cigarette manufacturer that allegedly "falsely represented [their] cigarettes as light to mislead smokers into believing that [they] delivered lower tar and nicotine and therefore were safer[.]" *Marrone*, 850 N.E.2d 31, 33. In *Marrone*, the court found that the *Amato* case did not give the defendants prior notice because *Amato*, centered around deceptive marketing of cars, involved "industries and conduct very different from the [D]efendant[s']" such that they "do not provide meaningful notice of specific acts or practices that violate" OCSPA. *Marrone*, 850 N.E.3d at 36.

At this stage, the Court finds Defendants had prior notice such that Plaintiffs may bring a claim under OCSPA. Plaintiffs have pled facts sufficient to conclude, at this stage, that Defendants' industry and conduct are substantially similar to the industry and conduct at issue in *Amato*. The automotive and agricultural machinery industries are similar in that both manufacture

44

and sell mechanical equipment for personal and business use. In *Amato*, the car-manufacturer defendant sold plaintiff a car equipped with a different engine than represented. Plaintiff filed "claims for breach of contract, breach of express and implied warranty, common law fraud, and violations of [OCSPA]." *Amato*, 463 N.E.2d at 627. Similarly, Defendants allegedly sold Plaintiffs 303 THF Products with different oil contents than represented. Plaintiffs also bring breach of contract and fraud claims. At the motion to dismiss stage, the Court finds that Plaintiffs have alleged facts substantially similar to those in *Amato* to put Defendants on notice that their alleged conduct was deceptive for the purposes of OCSPA. Accordingly, the Court rejects Defendants' motion to dismiss Count XXVII.

### 3. Public Interest

Defendants argue that the following Counts should be dismissed because Plaintiffs failed to adequately plead deceptive or unfair practices that implicate the public interest: (1) Count XII, violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101; (2) Count XXI, violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.67; and (3) Count XXIV, violation of the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87.301.

Colorado and Nebraska require a plaintiff show that the defendant's alleged conduct impacts the public. *Hall v. Walter*, 969 P.2d 224, 234 (Colo. en banc 1998) (requiring a claim "significantly impact the public as actual or potential consumers of the defendant's goods"); *Nelson v. Lusterstone Surfacing Co.*, 258 Neb. 678, 684 (2000) ("to be actionable under [Nebraska's Consumer Protection Act], . . . the unfair or deceptive act or practice must have an impact on the public interest."). In *Hall*, the defendants' deceptive practice "implicated the public as consumers because the misrepresentations were directed to the market generally, taking the form of widespread advertisement and deception of actual and prospective purchasers." *Id*. at 235.

Case 4:20-md-02936-SRB   Document 451   Filed 03/09/22   Page 45 of 57

Plaintiffs plead that Defendants "used deception . . . representing that the 303 THF Products met or had an equivalency to specifications, and that the 303 THF Products provided certain qualities, results and benefits" which induced Plaintiffs across the United States to buy products with "obsolete specifications[.]"  (Doc. #260, p. 123.)  Plaintiffs also plead that this conduct is ongoing and capable of repetition: "Defendants continue to manufacture and sell the same fluid without disclosing the used oil and line wash/line flush ingredients, selling it under product names such as 'Ag Fluid' and 'Agriculture Fluid.'"  (Doc. #260, p. 16.)  Plaintiffs allege ongoing deceptive conduct, affecting consumers in Colorado and Nebraska and impacting the public interest in both states.  Therefore, the Court finds that Plaintiffs have pled facts sufficient to state claims under Colorado and Nebraska law.

Minnesota law requires that "[a] plaintiff pursuing relief under [Minn. Stat. § 325F.67] must 'demonstrate that their cause of action benefits the public.'"  *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1142 (D. Minn. 2016) (citation and quotations omitted).  "Generally, a public benefit is found when the plaintiff seeks relief primarily aimed at altering the defendant's conduct (usually, but not always, through an injunction) rather than seeking remedies for past wrongs (typically though damages)."  *Gisairo v. Lenovo (U.S.) Inc.*, 516 F. Supp. 3d 880, 889 (D. Minn. 2021) (citation and quotations omitted).  Here, "the primary relief sought by [Plaintiffs] is injunctive relief and monetary damages for *past* harm.  The relief sought does not appear to be primarily directed to altering [Defendants'] conduct but instead to receiving monetary damages." *Id*. at 890 (citations omitted) (emphasis in original).  Accordingly, Plaintiffs have not sufficiently alleged public interest under Minnesota law and Count XXI is dismissed.

### F.    State Product Liability Claims

Defendants argue that Plaintiffs have failed to state a claim by insufficiently pleading various product liability claims under state law.  The Court will address each argument below.

46

## 1.     State Claims Displaced by Product Liability Acts

Defendants argue that seven states have product liability acts ("PLAs") that subsume all common law tort claims for property damage: Mississippi, New Jersey, Indiana, Connecticut, Kansas, Ohio, and Louisiana.

### a.     Connecticut

Defendants argue that Counts I–VII and XIII as to the Connecticut Plaintiffs should be dismissed because they are subsumed by Connecticut's PLA.

Connecticut's PLA "may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability, and warranty, for harm caused by a product." Conn. Gen. Stat. Ann. § 52-572n. The parties appear to agree that Connecticut's PLA subsumes all common law claims for property damage. *Hurley v. Heart Physicians, P.C.*, 278 Conn. 305, 325, 898 A.2d 777 (2006) (holding a claim subsumed where a plaintiff "seeks to recover damages . . . for property damage, including damage to the product itself, caused by the defective product."). Accordingly, Defendants' motion to dismiss Counts I–VII as to the Connecticut Plaintiffs is granted to the extent Plaintiffs seek property damages.

The parties dispute whether Count XIII, a violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), C.G.S.A. § 42-110b, is precluded by Connecticut's PLA. "Determining whether a CUTPA claim is precluded by the CPLA is a flexible test, but courts should be wary of plaintiffs trying to assert a CUTPA claim, that in reality, is one falling within the scope of the product liability act." *Hunte v. Abbott Laboratories, Inc.*, No. 3:20-CV-1626-SRU, 2021 WL 3679303, at *16 (D. Conn. Aug. 19, 2021) (citation omitted) (cleaned up). "Connecticut courts have routinely stricken . . . 'wrongful marketing' claims when cast as CUPTA claims because they are precluded by the CPLA's exclusivity provisions." *Appiah v. Home Depot U.S.A., Inc.*, No. 3:20-CV-00489-VLB, 2020 WL 6263544, at *5 (D. Conn. Oct. 23, 2020) (collecting cases). However, "when

47

plaintiffs assert a CUTPA claim based on financial loss caused by a defendant's deceptive advertising scheme, that claim might survive if it is not based on harm caused by personal injury or death." *Hunte*, 2021 WL 3679303, at *18. Here, Plaintiffs' CUTPA claim is not based on harm caused by personal injury or death. Accordingly, Defendants' motion to dismiss Count XIII is denied.

### b. Indiana

Defendants argue that Counts I, III–VII, and XVII should be dismissed as to the Indiana Plaintiffs because they are subsumed by Counts XLIV–XLV, breach of Indiana's Product Liability Act ("IPLA"), Ind. Code § 34-20-1-1. Plaintiffs agree with Defendants' assertion that Counts I and V–VII are subsumed by the IPLA and they are dismissed as to the Indiana Plaintiffs. However, Plaintiffs argue that Counts II–IV and XVII are not subsumed by the IPLA.

The IPLA "governs all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product; regardless of the substantive legal theory or theories upon which the action is brought." Ind. Code § 34-20-1-1. The IPLA "govern[s] actions in which the theory of liability is negligence or strict liability in tort." *B & B Paint Corp., v. Schrock Mfg., Inc.*, 568 N.E.2d 1017, 1019 (Ind. Ct. App. 1991).

The Indiana Plaintiffs' warranty claims, Counts II–IV, are not subsumed by the IPLA to the extent they seek property damages. Warranty claims based in contract, or warranty claims "[seeking] recovery for damages to [the product] or any economic loss arising from the failure of [the product] to work as expected" are not subsumed by the IPLA. *Hathaway v. Cintas Corporate Servs., Inc.*, 903 F. Supp. 2d 669, 673 (N.D. Ind. 2012) (citing *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 132 (Ind. 2005)). The Indiana Plaintiffs' warranty claims may proceed to the extent they are seeking recovery for damages to the product itself or economic damages. Accordingly,

Defendants' motion to dismiss Counts II–IV as to the Indiana Plaintiffs is granted to the extent Plaintiffs seek property damage.

Count XVII, violation of the Indiana Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-5(b), is not subsumed by the IPLA. "While claims based solely on physical harm caused by a product must be brought under the IPLA, . . . [a] cause of action . . . based on deceptive sales practices . . . is properly governed by the [Indiana Deceptive Consumer Sales Act]." *Elward v. Electrolux Home Prods., Inc.*, 264 F. Supp. 3d 877, 892 (N.D. Ill 2017) (citation omitted). Plaintiffs allege in Count XVII that Defendants engaged in abusive and deceptive sales practices as part of a scheme to deliberately mislead consumers as to the quality of the 303 THF Products. "[T]hese are allegations of deceptive trade practices, not merely of physical damage sustained through faulty products." *Id*. Accordingly, Defendants' motion to dismiss Count XVII is denied.

### c.      Kansas

Defendants argue that Counts I–VII and XVIII should be dismissed as to the Kansas Plaintiffs because they are subsumed by Kansas' Products Liability Act ("KPLA"), K.S.A. § 60-32202(c). The KPLA applies to:

> any claim or action brought for harm caused by the manufacture, production, marketing, packaging, storage, or labeling of the relevant product. It includes, but is not limited to, any action based on, strict liability in tort, negligence, breach of express or implied warranty, breach of, or failure to, discharge a duty to warn or instruct, whether negligent or innocent, misrepresentation, concealment or nondisclosure, whether negligent, innocent, or under any other substantive legal theory.

K.S.A. § 60–3302(c). "Harm" refers to damage to property, but not "direct or consequential economic loss." K.S.A. § 60–3302(d). "[C]laims for economic damage caused by defective products" are not covered by the KPLA and "must be stated under a different legal theory than the KPLA." *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1242 (D. Kan. 2007). Further, claims for unjust enrichment are not subsumed by the KPLA. *Id*. at 1249.

49

The parties do not dispute that the Kansas Plaintiffs' claims for property damage are subsumed by the KPLA. However, Kansas law allows these claims to go forward to the extent that Plaintiffs seek economic damages. Further, Count V, unjust enrichment, is not subsumed by the KPLA. *Id.* at 1249. Accordingly, Defendants' motion to dismiss Counts I–IV, VI–VII, and XVIII as to the Kansas Plaintiffs is granted to the extent Plaintiffs seek property damages. Defendants' motion to dismiss Count V as to the Kansas Plaintiffs is denied.

### d. Louisiana

Defendants argue that Counts I–VII as to the Louisiana Plaintiffs should be dismissed because they are subsumed by Louisiana's PLA. Louisiana's PLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. Stat. Ann. § 9:2800.52. Plaintiffs do not respond to this argument. "A plaintiff's failure to address a defendant's arguments on a motion to dismiss operates as an abandonment of those claims." *Jarrett v. Henkel Corp.*, No. 4:15-CV-0832-DGK, 2016 WL 409819, at *2 (W.D. Mo. Feb. 2, 2016). As such, Counts I–VII are dismissed as to the Louisiana Plaintiffs.

### e. Mississippi

Defendants argue that all claims asserted by the Mississippi Plaintiffs should be dismissed because they are subsumed by Mississippi's Products Liability Act ("MPLA"), Miss. Code Ann. § 11-1-63.

The MPLA applies to "'*any* action for damages caused by a product,' with deviation defects, warnings or instruction defects, design defects, and where a product breached an express [or implied] warranty."[41] *Elliot v. El Paso Corp.*, 181 So. 3d 263, 268 (Miss. 2015) (emphasis in

---

[41] *See also Austin v. Bayer Pharms. Corp.*, No. 5:13-CV-28-KS-MTP, 2013 WL 5406598, at *5 (S.D. Miss. Sept. 25, 2013) (holding a negligence and common law misrepresentation claims "arising from alleged design defect or manufacturing defect" or from a "warning defect" are subsumed by the MPLA); *Knoth v. Apollo Endosurgery US, Inc.*, 425 F. Supp. 3d 678, 688 (S.D. Miss. 2019) (citing Miss. Code Ann. § 11-1-63) ("The common law claim of unjust enrichment is subsumed by the MPLA.").

original).  "[T]he MPLA now provides the roadmap for such claims."  *Id.*  Common law claims are subsumed where they are "brought alongside products liability claims based on the same theory of recovery."  *Knoth v. Apollo Endosurgery US, Inc.*, 425 F. Supp. 3d 678, 687 (S.D. Miss. 2019) (citation and quotations omitted).  Any claim abrogated by the MPLA must be brought "in addition to" an MPLA claim.  *Dykes v. Husqvarna Outdoor Prods., N.A., Inc.*, 859 F. Supp 2d 749, 760 (S.D. Miss. 2012).

Here, the Mississippi Plaintiffs common law claims focus on Defendants' negligence and false representations in designing and marketing the 303 THF Products.  The MPLA expressly abrogates Counts II–IV, breach of express and implied warranties.  Miss. Code Ann. § 11-1-63(a)(i)(4).  Count I, negligence, alleges that "Defendants owed [and breached] a duty of care" in "[d]istributing and using misleading labeling information" and "[f]ailing to adequately ensure the 303 THF Products manufactured and sold met or had an equivalency to the advertised specifications[.]"  (Doc. #260, p. 105.)  Count V, unjust enrichment, alleges that as "a result . . . each Plaintiff . . . conferred a benefit upon Defendants by purchasing obsolete, worthless and harmful fluid[.]"  (Doc. #260, p. 112.)  Count VI, fraudulent misrepresentation, and Count VII, negligent misrepresentation, similarly allege that Defendants "[failed] to inform customers of the true nature of the product and obsolete specifications" or that Defendants "failed to use ordinary care and were negligent in making" representations of the 303 THF Products' quality.  (Doc. #260, pp. 113–15.)  Essential to these allegations are product liability theories of design defect and failure to warn, which are subsumed by the MPLA.  *See Austin v. Bayer Pharms. Corp.*, No. 5:13-CV-28-KS-MTP, 2013 WL 5406598, at *5 (S.D. Miss. Sept. 25, 2013); *see also Knoth*, 425 F. Supp. 3d at 688.  Accordingly, Counts I–VII are dismissed as to the Mississippi Plaintiffs.

### f.   New Jersey

Defendants argue that Counts I, III–VI, and XLI should be dismissed as to the New Jersey Plaintiffs because they are subsumed by the New Jersey Products Liability Act ("NJPLA"), N.J. Stat. Ann. § 2A:58C–5C.

The NJPLA applies to "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J. Stat. Ann. § 2A:58C-1. The NJPLA encompasses "virtually all possible causes of action relating to harms caused by the consumer and other products" as well as "the products at issue . . . and all harms plaintiffs attribute to that product." *In re Lead Paint Litig.*, 191 N.J. 405, 436–37 (2007).

"If a claim is premised upon a product's manufacturing, warning, or design defect, that claim must be brought under the [NJ]PLA with damages limited to those available under that statute." *Sun Chem. Corp. v. Fike Corp.*, 243 N.J. 319, 336 (2020). Common law causes of action that "merely [charge] that defendants misrepresented the safety risks of their products, thus causing [plaintiff's] injury" are subsumed by the NJPLA. *Bailey v. Wyeth, Inc.*, 424 N.J.Super. 278, 332 (Law Div. 2008), *aff'd DeBoard v. Wyeth, Inc.*, 422 N.J.Super 360 (App. Div. 2011).[42] A common law claim is also subsumed by the NJPLA where "the core issue" is "'harm caused by a product.'" *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 704 (D.N.J. 2011) (citing N.J. Stat. Ann § 2A:58C–1(b)(3)). "[S]imply articulating a claim in terms of pure economic harm where the core

---

[42] *Bailey*, 424 N.J.Super. at 322 (finding fraudulent misrepresentation and negligent misrepresentation claims subsumed by the NJPLA where they "involve harm caused by a product"); *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 820 (D.N.J. 2019) (holding "[p]laintiff's breach of implied warranty claims . . . are subsumed by the NJPLA"); *Univ. Underwriters Ins. Grp. V. Pub. Serv. Elec. & Gas Co.*, 103 F. Supp. 2d 744, 748 (D.N.J. 2000) (finding a negligence claim is subsumed by the NJPLA where "the claim asserted" is "related to a defect in the product"); *Arlandson*, 792 F. Supp. 2d at 704 (finding an unjust enrichment claim subsumed by the NJPLA).

issue is the potential injury arising as a consequence of the products' [alleged defects] does not obviate the NJPLA's reach." *Id.* (citation and quotations omitted).

Here, the core issue is harm to Plaintiffs, both economic and property damage, caused to Plaintiffs by Defendants' products:

> The central focus of [P]laintiffs' complaints is that [D]efendants were aware of the dangers associated with [the 303 THF Products]–and by extension, with the dangers of [marketing it as suitable for use]–and failed to warn of those dangers. This classic articulation of tort law duties, that is, to warn of or make safe of, is squarely within the theories included in the [NJ]PLA.

*In re Lead Paint Litig.*, 191 N.J at 437 (citing N.J. Stat. Ann. 2A:58C–2). Accordingly, Counts I and III–VII are subsumed by the NJPLA and are dismissed as to the New Jersey Plaintiffs.

However, Count XLI, alleging a violation of the New Jersey Consumer Fraud Act ("NJCFA") is not subsumed by the NJPLA. "[N]othing about the [NJ]PLA prohibits a claimant from seeking relief under the CFA for deceptive, fraudulent, misleading, and other unconscionable commercial practices in the sale of the product." *Sun Chem.*, 243 N.J. at 226–37. Therefore, Defendants' motion to dismiss Count XLI is denied.

### g. Ohio

Defendants argue that Counts I–VII should be dismissed as to the Ohio Plaintiffs because they are subsumed by Count L, violation of Ohio Products Liability Act ("OPLA"), Ohio Rev. Code § 2307.71. The OPLA abrogates "all common law product liability claims or causes of action." Ohio Rev. Code Ann. § 2307.71(B). In order for a common law claim to be abrogated by the OPLA, the claim must meet "the statutory definition of a product liability claim [as pled]." *Volovetz v. Tremco Barrier Sols., Inc.*, 74 N.E.3d 743, 753 (Ohio Ct. App. 2016) (citations omitted). The OPLA defines a product liability claim as a claim that:

> seeks to recover compensatory damages from a manufacturer or supplier for . . . physical damage to property other than the product in question, that allegedly arose from any of the following:

(a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;

(b) Any warning or instruction, or lack of warning or instruction, associated with that product;

(c) Any failure of that product to conform to any relevant representation or warranty.

Ohio Rev. Code § 2307.71(A)(13)(a)–(c). "Ohio law permits ordinary consumers who are not in privity with product manufacturers to bring [product liability claims] in order to recover damages for economic injury only." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 383, 856 (6th Cir. 2013). "[T]he OPLA does not abrogate common law fraud based on affirmative misrepresentations that constitute active deceit[.]" *Meta v. Target Corp.*, No. 4:14-CV-0832, 2015 WL 10990180, at *1 (N.D. Ohio Mar. 23, 2015).

Count I alleges that Defendants negligently designed and marketed the 303 THF Products, which is a "product liability claim[] as defined by the OPLA." *Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 920–21 (N.D. Ohio 2009). Similarly, Counts II–IV "all relate to the alleged failure of the [303 THF Products] to comply with Defendants' warranties. . . . also constitut[ing] common law products liability claims subject to preemption by the OPLA." *Id.* at 923. Count VII, negligent misrepresentation, is also abrogated by the OPLA because it is "based on [the 303 THF Products'] nonconformance with a manufacturers' representations." *Krumpelbeck v. Breg, Inc.*, 491 Fed. Appx. 713, 721 (6th Cir. 2012). Accordingly, Counts I–IV and VII are dismissed as to the Ohio Plaintiffs.

However, "claims of active misrepresentation (as opposed to failure to warn) . . . are not abrogated by the OPLA." *Meta v. Target Corp.*, 74 F. Supp. 3d 858, 865 (N.D. Ohio 2015). Here, Count VI alleges Defendants made affirmative representations of the quality of the 303 THF Products and "made the knowing misrepresentation in an effort to sell more" products, which is an allegation of "active misrepresentation" that goes "beyond a product liability claim. *Id.*

54

Additionally, Count V, unjust enrichment, is not abrogated under Ohio law. *Id.* at 866. Defendants' motion to dismiss Counts V–VI as to the Ohio Plaintiffs is denied.[43]

### 2. Ohio Plaintiffs' Manufacturing Defect Claim (Count XLIX)

Defendants argue that Count XLIX should be dismissed because Plaintiffs fail to properly plead a manufacturing defect claim under Ohio law. Plaintiffs concede that Ohio law does not support their claim. (Doc. #312, p. 76.) As such, Count XLIX is dismissed.

### 3. Louisiana Plaintiffs' Claims (Counts LII–LIV)

Defendants argue that Counts LII–LIV, violations of the Louisiana Products Liability Act ("LPLA"), are time barred and thus should be dismissed. "With limited exceptions . . . , actions brought under the LPLA are subject to a one[-]year prescriptive period, which commences to run from the day injury or damage is sustained." *Jenkins v. Bristol-Myers Squibb Co.*, 689 F.App'x 793, 795 (5th Cir. 2017) (citing LA Civ. Code Ann. art. 3492) (quotations omitted). "The defendant has the burden of proving that a tort claim has prescribed." *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000) (citation omitted).

Here, Defendants argue that the Louisiana Plaintiffs had constructive notice of their claim "no later than November 2017, when the Missouri Department of Agriculture issued a stop-sale order." (Doc. #284, p. 58) (citations omitted). However, whether the Missouri Plaintiffs had constructive notice in November 2017 has no bearing on whether the Louisiana Plaintiffs had constructive notice at that time. Defendants motion to dismiss Counts LII–LIV is denied.

### G. Direct File Plaintiffs

Defendants "incorporate by reference Defendants' earlier Memorandum in Support of Motion to Dismiss, setting forth bases for dismissal under Rules 12(b)(2), (4) and (5) for lack of

---

[43] Ohio courts are split on whether a plaintiff may maintain both a common law products liability claim and an OPLA claim, and the Court finds that this issue is more appropriately decided on at the summary judgment stage. *Darwish v. Ethicon, Inc.*, No. 1:20-CV-1606, 2020 WL 7129582, at *4–5 (N.D. Ohio Dec. 4, 2020).

55

personal jurisdiction, venue, or sufficient process as to Plaintiffs who directly filed in the MDL without an underlying district court action."  (Doc. #284, p. 48) (citing Doc. #77, pp. 16–38.) Defendants also incorporate by reference briefing on their motion to dismiss the first consolidated amended complaint.  "[I]ncorporation is a pointless imposition on the court's time.  A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record." *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999).  As such, and to the extent not discussed above, the Court will not consider these incorporated arguments.

## V.      CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Consolidated Complaint is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is granted insofar as the following claims are dismissed:

- Plaintiffs' claims for injunctive relief; and
- Count I, negligence, as to the Louisiana, Mississippi, New Jersey, and Ohio Plaintiffs; and
- Count I, negligence, as to the Connecticut and Kansas Plaintiffs to the extent they seek property damages; and
- Count II, breach of express warranty, as to the Alabama, Arizona, Connecticut, Florida, Indiana, Kentucky, Louisiana, Maryland, Michigan, Mississippi, North Carolina, Ohio, and Wisconsin Plaintiffs; and
- Count II, breach of express warranty, as to the Connecticut, Indiana, Iowa, and Kansas Plaintiffs to the extent they seek property damages; and
- Count III, breach of implied warranty of merchantability, as to the Alabama, Arizona, California, Connecticut, Florida, Illinois, Kentucky, Louisiana,  Mississippi, New Jersey, New York, North Carolina, Ohio, and Wisconsin Plaintiffs; and
- Count III, breach of implied warranty of merchantability, as to the Connecticut, Indiana, and Kansas Plaintiffs to the extent they seek property damages; and
- Count IV, breach of implied warranty of fitness for a particular purpose, as to the Alabama, Arizona, California, Connecticut, Florida, Illinois, Indiana, Kentucky, Louisiana, Mississippi, New Jersey, New York, North Carolina, Ohio, and Wisconsin Plaintiffs; and
- Count IV, breach of implied warranty of fitness for a particular purpose, as to the Connecticut, Indiana, and Kansas Plaintiffs to the extent they seek property damages; and
- Count V, unjust enrichment, as to the Louisiana, Michigan, Mississippi, New Jersey, Ohio, and Wisconsin Plaintiffs; and

- Count V, unjust enrichment, as to the Connecticut Plaintiffs to the extent they seek property damages; and

- Count V, unjust enrichment, as to the Illinois Plaintiffs is predicated on the viability of related claims; and

- Count VI, fraudulent misrepresentation, as to the Louisiana, Mississippi, and New Jersey Plaintiffs; and

- Count VI, fraudulent misrepresentation, as to the Connecticut and Kansas Plaintiffs to the extent they seek property damages; and

- Count VII, negligent misrepresentation, as to the Arkansas, Louisiana, Mississippi, New Jersey, New York, and Ohio Plaintiffs; and

- Count VII, negligent misrepresentation, as to the Connecticut and Kansas Plaintiffs to the extent they seek property damages; and

- Count XVIII, a violation of Kansas's Consumer Protection Act, K.S.A. § 50-623, to the extent the Kansas Plaintiffs seek property damages; and

- Count XIX, a violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 376.220; and

- Count XX, a violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, as to Plaintiff Dahlke and Plaintiff Dow; and

- Count XXI, a violation of Minnesota's Consumer Fraud Act, Minn. Stat. Ann. § 325F.67; and

- Count XXVII, a violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15, § 751, *et seq*; and

- Count XXIX, a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq*; and

- Count XXXIX, a violation of Massachusetts's Consumer Protection Act, Mass. Gen. Laws. Ann. ch. 93A, § 9; and

- Count XLII, a violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq*; and

- Count XLIX, a violation of Ohio's Products Liability Act, Ohio Rev. Stat. Ann. § 29-28-101, *et seq*.


**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE


Dated: <u>March 8, 2022</u>