

EXHIBIT 1

## CUSTODIAN/ESCROW AGREEMENT

This Custodian/Escrow Agreement dated September 16, 2024, is made among RG/2 Claims Administration LLC ("Settlement Administrator"), and **THE HUNTINGTON NATIONAL BANK**, as Custodian/Escrow agent ("Custodian/Escrow Agent").

### Recitals

A.  This Custodian/Escrow Agreement governs the deposit, investment and disbursement of the settlement funds that, pursuant to the Class Action settlement Term Sheet (the "Term Sheet") dated August 24, 2024 attached hereto as Exhibit A, entered into by, among others, Class Counsel on behalf of the Lead Plaintiffs, and Defendants Counsel, will be paid to settle the class action captioned In re: Smitty's/CAM2 303 Tractor Hydraulic Fluid Marketing, Sales Practices, and Products Liability Litigation, pending in the United States District Court for the Western District of Missouri, Southern Division (the "Court").

B.  Pursuant to the terms of the Term Sheet, the Defendant has agreed to pay or cause to be paid the total amount of 31.9 million in cash (the "Settlement Amount") in settlement of the claims brought against the Defendant in the Class Action.

C.  The Settlement Amount, together with any interest accrued thereon, is to be deposited into Custodian/Escrow and used to satisfy payments to Authorized Claimants, payments for attorneys' fees and expenses, payments for tax liabilities, and other costs pursuant to the terms of the Settlement Agreement.

D.  Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

### Agreement

1. **Appointment of Custodian/Escrow Agent.** The Custodian/Escrow Agent is hereby appointed to receive, deposit and disburse the Settlement Amount upon the terms and conditions provided in this Custodian/Escrow Agreement, the Settlement Agreement and any other exhibits or schedules later annexed hereto and made a part hereof.

2. **The Custodian/Escrow Account.** The Custodian/Escrow Agent shall establish and maintain one or more Custodian/Escrow accounts titled as Smittys Cam2 Litigation SF (the "Custodian/Escrow Account"). Pursuant to the Term Sheet, the Defendant shall cause the Settlement Amount to be deposited into the Custodian/Escrow Account within 14 days of the execution of the Term Sheet. Custodian/Escrow Agent shall receive the Settlement Amount into the Custodian/Escrow Account; the Settlement Amount and all interest accrued thereon shall be referred to herein as the "Settlement Fund." The Settlement Fund shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Custodian/Escrow Agent in accordance with the terms and conditions hereinafter set forth and set forth in the Term Sheet and in orders of the Court approving the disbursement of the Settlement Fund. In its agreement establishing the escrow account with the escrow agent, Class Counsel shall ensure to Defendants' reasonable satisfaction (i) that the escrow agent shall not identify the payors into the escrow account

or the amount that each contributes to Plaintiffs, Class Counsel, or any other party, unless such disclosure is required by law, regulation, or court order; and (ii) that the agreement contains a provision to notify the payors in the event that the escrow agent believe that disclosure of the payor's identity or the amount of their payment must be disclosed. The Parties shall provide in the Settlement Agreement for a procedure whereby any payor into the Settlement Fund shall be notified in the event that the escrow agent believes that it must disclose the identity of that payor or its contribution amount.

3. **Investment of Settlement Fund.** At the written direction of the Settlement Administrator, Custodian/Escrow Agent shall invest the Settlement Fund exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. Defendants shall not bear any responsibility for or liability related to the investment of the Settlement Fund by the Custodian/Escrow Agent.

4. **Custodian/Escrow Funds Subject to Jurisdiction of the Court.** The Settlement Fund shall remain subject to the jurisdiction of the Court until such time as the Fund shall be distributed, pursuant to the Settlement Agreement and on further order(s) of the Court.

5. **Tax Treatment & Report.** The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1. Class Counsel and, as required by law, the Defendant, shall jointly and timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary to the earliest permitted date. For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be RG/2 Claims Administration. RG2 Claims Administration shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1. RG2 Claims Administration shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(l).

6. **Tax Payments of Settlement Fund.** All Taxes with respect to the Settlement Fund, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Fund and the Custodian/Escrow Agent shall timely pay such Taxes out of the Settlement Fund without prior order of the Court, as directed by RG2 Claims Administration. RG2 Claims Administration shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law. RG2 Claims Administration will prepare any tax reports or the calculation of any tax payments due as set forth in Sections 5 and 6, and the expense of such assistance shall be paid from the Settlement Fund by the Custodian/Escrow Agent at RG2 Claims Administration's direction. The Settlement Fund shall indemnify and hold the Defendant harmless for any taxes that may be deemed to be payable by

2

the Defendant by reason of the income earned on the Settlement Fund, and Custodian/Escrow Agent, as directed by RG2 Claims Administration, shall establish such reserves as are necessary to cover the tax liabilities of the Settlement Fund and the indemnification obligations imposed by this paragraph. If the Settlement Fund is returned to the Defendant pursuant to the terms of the Settlement Agreement, the Defendant shall provide Custodian/Escrow Agent with a properly completed Form W-9.

7. Disbursement Instructions

(a) RG2 Claims Administration may, without further order of the Court or authorization by the Defendant's Counsel, instruct Custodian/Escrow Agent to disburse the funds necessary to pay taxes and Notice and Administration Expenses. Direction from RG2 may be provided by Michael Gillen or Bryan Pennock.

(b) Disbursements other than those described in paragraph 7(a), including disbursements for distribution of Class Settlement Funds, must be authorized by either (i) an order of the Court, or (ii) the written direction of Tom Bender of Class Counsel.

(c) In the event funds transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile, e-mail, telecopier or otherwise, Custodian/Escrow Agent will seek confirmation of such instructions by telephone call back when new wire instructions are established to the person or persons designated in subparagraphs (a) and (b) above only if it is reasonably necessary, and Custodian/Escrow Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. It will not be reasonably necessary to seek confirmation if Custodian/Escrow Agent receives written letters authorizing a disbursement from each of the law firms required in subparagraphs (a) and (b), as applicable, on their letterhead and signed by one of the persons designated in subparagraphs (a) and (b). To assure accuracy of the instructions it receives, Custodian/Escrow Agent may record such call backs. If Custodian/Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it shall not execute the instruction until all issues have been resolved. The persons and telephone numbers for call backs may be validly changed only in a writing that (i) is signed by the party changing its notice designations, and (ii) is received and acknowledged by Custodian/Escrow Agent. Class Counsel will notify Custodian/Escrow Agent of any errors, delays or other problems within 30 days after receiving notification that a transaction has been executed. If it is determined that the transaction was delayed or erroneously executed as a result of Custodian/Escrow Agent's error, Custodian/Escrow Agent's sole obligation is to pay or refund the amount of such error and any amounts as may be required by applicable law. Any claim for interest payable will be at the then-published rate for United States Treasury Bills having a maturity of 91 days.

(d) The Custodian/Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Custodian/Escrow Agent's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The party providing electronic instructions agrees; (i) to assume all risks arising out of the use of such electronic methods to submit instructions and

3

directions to the Custodian/Escrow Agent, including, without limitation, the risk of the Custodian/Escrow Agent acting on unauthorized instructions, and the risk or interception and misuse by third parties; (ii) that it is fully informed of the protections and risks associated with the various methods of transmitting instructions to the Custodian/Escrow Agent and that there may be more secure methods of transmitting instructions than the method(s) selected by the Custodian/Escrow Agent; and (iii) that the security procedures (if any) to be followed in connection with its transmission of instructions provide to it a commercially reasonable degree of protection in light of its particular needs and circumstances.

8. <u>Termination of Settlement</u>. If the Settlement Agreement terminates in accordance with its terms, Class Counsel shall notify Custodian/Escrow Agent of the termination of the Settlement Agreement. Upon such notification, the balance of the Settlement Fund, together with any interest earned thereon, less any Notice and Administration Expenses paid and actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid Taxes due, as determined by Class Counsel and the Defendant, shall be returned to the Defendant in accordance with instruction from the Class Counsel.

9. <u>Fees</u>. The Custodian/Escrow Agent shall be entitled to compensation for its services as stated in the fee schedule attached as Exhibit B. All fees and expenses of Custodian/Escrow Agent shall be paid solely from the Settlement Fund. The Custodian/Escrow Agent may pay itself such fees from the Settlement Fund only after such fees have been approved for payment by Class Counsel. If Custodian/Escrow Agent is asked to provide additional services, such as the preparation and administration of payments to Authorized Claimants, a separate agreement and fee schedule will be entered into.

10. <u>Duties, Liabilities and Rights of Custodian/Escrow Agent</u>. This Custodian/Escrow Agreement sets forth all of the obligations of Custodian/Escrow Agent, and no additional obligations shall be implied from the terms of this Custodian/Escrow Agreement or any other agreement, instrument or document.

(a) Custodian/Escrow Agent may act in reliance upon any instructions, notice, certification, demand, consent, authorization, receipt, power of attorney or other writing delivered to it by Class Counsel, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order. Custodian/Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine, and may assume that such person has been properly authorized to do so.

(b) Custodian/Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected to the extent Custodian/Escrow Agent acts in accordance with the reasonable opinion and instructions of counsel. Custodian/Escrow Agent shall have the right to reimburse itself for reasonable legal fees and reasonable and necessary disbursements and expenses actually incurred from the Custodian/Escrow Account only (i) upon approval by Class Counsel or (ii) pursuant to an order of the Court.

4

(c)     The Custodian/Escrow Agent, or any of its affiliates, is authorized to manage, advise, or service any money market mutual funds in which any portion of the Settlement Fund may be invested.

(d)     Custodian/Escrow Agent is authorized to hold any treasuries held hereunder in its federal reserve account.

(e)     Custodian/Escrow Agent shall not bear any risks related to the investment of the Settlement Fund in accordance with the provisions of paragraph 3 of this Custodian/Escrow Agreement. The Custodian/Escrow Agent will be indemnified by the Settlement Fund, and held harmless against, any an all claims, suits, actions, proceedings, investigations, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Custodian/Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Custodian/Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Custodian/Escrow Agent of, any of the Custodian/Escrow Agent's duties under this Agreement, except as a result of the Custodian/Escrow Agent's bad faith, willful misconduct or gross negligence.

(f)     Upon distribution of all of the funds in the Custodian/Escrow Account pursuant to the terms of this Custodian/Escrow Agreement and any orders of the Court, Custodian/Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Custodian/Escrow Agreement, except as otherwise specifically set forth herein.

(g)     In the event any dispute shall arise between the parties with respect to the disposition or disbursement of any of the assets held hereunder, the Custodian/Escrow Agent shall be permitted to interplead all of the assets held hereunder into a court of competent jurisdiction, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets. The parties further agree to pursue any redress or recourse in connection with such a dispute, without making the Custodian/Escrow Agent a party to same.

11.     <u>Non-Assignability by Custodian/Escrow Agent</u>. Custodian/Escrow Agent's rights, duties and obligations hereunder may not be assigned or assumed without the written consent of Class Counsel and the Defendant.

12.     <u>Resignation of Custodian/Escrow Agent</u>. Custodian/Escrow Agent may, in its sole discretion, resign and terminate its position hereunder at any time following 120 days prior written notice to the parties to the Custodian/Escrow Agreement herein. On the effective date of such resignation, Custodian/Escrow Agent shall deliver this Custodian/Escrow Agreement together with any and all related instruments or documents and all funds in the Custodian/Escrow Account to the successor Custodian/Escrow Agent, subject to this Custodian/Escrow Agreement. If a successor Custodian/Escrow Agent has not been appointed prior to the expiration of 120 days following the date of the notice of such resignation, then Custodian/Escrow Agent may petition the Court for the appointment of a successor Custodian/Escrow Agent, or other appropriate relief. Any such resulting appointment shall be binding upon all of the parties to this Custodian/Escrow Agreement.

5

13. **Notices.** Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, addressed as follows:

| | |
|---|---|
| If to the Settlement Administrator: | RG/2 Claims Administration LLC<br>Michael Gillen<br>30 S 17th Street – 4th Floor<br>Philadelphia, PA 19103<br>Telephone: (609) 335-3407<br>mikegillen@rg2claims.com |
| If to Class Counsel: | Thomas V. Bender<br>Horn Aylward & Bandy, LLC<br>2600 Grand Boulevard, Ste 1100<br>Kansas City, MO 64108<br>Telephone: (816) 421-0700<br>tbender@hab-law.com |
| If to Custodian/Escrow Agent: | THE HUNTINGTON NATIONAL BANK<br>Rose K. Clark, Vice President<br>650 E. Swedesford Road, Suite 310<br>Wayne, PA 19087-1610<br>Telephone: (215) 430-5289<br>E-mail: rose.kohles@huntington.com<br><br>Susan Brizendine, Trust Officer<br>Huntington National Bank<br>7 Easton Oval – EA5W63<br>Columbus, Ohio 43219<br>Telephone: (614) 331-9804<br>E-mail: susan.brizendine@huntington.com |

14. **Patriot Act Warranties.** Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify and record information that identifies each person or legal entity that opens an account (the "Identification Information"). The parties to this Custodian/Escrow Agreement agree that they will provide the Custodian/Escrow Agent with such Identification Information as the Custodian/Escrow Agent may request in order for the Custodian/Escrow Agent to satisfy the requirements of the Patriot Act.

15. **Entire Agreement.** This Custodian/Escrow Agreement, including all Schedules and Exhibits hereto, constitutes the entire agreement and understanding of the parties hereto. Any modification of this Custodian/Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto. To the extent this Custodian/Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

16. <u>Governing Law</u>. This Custodian/Escrow Agreement shall be governed by the law of the State of Ohio in all respects. The parties hereto submit to the jurisdiction of the Court, in connection with any proceedings commenced regarding this Custodian/Escrow Agreement, including, but not limited to, any interpleader proceeding or proceeding Custodian/Escrow Agent may commence pursuant to this Custodian/Escrow Agreement for the appointment of a successor Custodian/Escrow agent, and all parties hereto submit to the jurisdiction of such Court for the determination of all issues in such proceedings, without regard to any principles of conflicts of laws, and irrevocably waive any objection to venue or inconvenient forum.

17. <u>Termination of Custodian/Escrow Account</u>. The Custodian/Escrow Account will terminate after all funds deposited in it, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Custodian/Escrow Agreement.

18. <u>Miscellaneous Provisions</u>.

   (a) <u>Counterparts</u>. This Custodian/Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Custodian/Escrow Agreement.

   (b) <u>Further Cooperation</u>. The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Custodian/Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Custodian/Escrow Agreement in order (a) to give Custodian/Escrow Agent confirmation and assurance of Custodian/Escrow Agent's rights, powers, privileges, remedies and interests under this Agreement and applicable law, (b) to better enable Custodian/Escrow Agent to exercise any such right, power, privilege or remedy, or (c) to otherwise effectuate the purpose and the terms and provisions of this Custodian/Escrow Agreement, each in such form and substance as may be acceptable to Custodian/Escrow Agent.

   (c) <u>Electronic Signatures</u>. The parties agree that the electronic signature (provided by the electronic signing service DocuSign initiated by the Custodian/Escrow Agent) of a party to this Escrow Agreement shall be as valid as an original signature of such party and shall be effective to bind such party to this Escrow Agreement. The parties agree that any electronically signed document shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files.

   (d) <u>Non-Waiver</u>. The failure of any of the parties hereto to enforce any provision hereof on any occasion shall not be deemed to be a waiver of any preceding or succeeding breach of such provision or any other provision.

7

Case 4:20-md-02936-SRB    Document 1225-1    Filed 06/11/25    Page 7 of 10

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Custodian/Escrow Agent

By: *Rose K Clark*
Rose K. Clark, Vice President

RG/2 Claims Administration, LLC (Settlement Administrator)

By: *[signature]*
Michael Gillen

CLASS COUNSEL

By: *[signature]*
Tom Bender

8

*For Settlement Purposes Only*
*Subject to F.R.E. 408*

## Exhibit A

## CONFIDENTIAL CLASS ACTION SETTLEMENT TERM SHEET
## KEY PROVISIONS

Plaintiffs and Defendants Smitty's Supply, Inc. and CAM2 International, LLC (collectively referred to as "Smitty's"), along with Smitty's insurance carriers identified in the attached Mediator statement, agree to enter a settlement (the "**Settlement Agreement**") consistent with the terms of the following key settlement provisions:

## REDACTED -- CONFIDENTIAL

1

# Exhibit B

## Fees of Custodian/Escrow Agent

**Acceptance Fee:**                                                    **Waived**

The Acceptance Fee includes the review of the Custodian/Escrow Agreement, acceptance of the role as Custodian/Escrow Agent, establishment of Custodian/Escrow Account(s), and receipt of funds.

**Annual Administration Fee:**                                         **Waived**

The Annual Administration Fee includes the performance of administrative duties associated with the Custodian/Escrow Account including daily account management, generation of account statements to appropriate parties, and disbursement of funds in accordance with the Custodian/Escrow Agreement. Administration Fees are payable annually in advance without proration for partial years.

**Out of Pocket Expenses:**                                            **Waived**

Out of pocket expenses include postage, courier, overnight mail, wire transfer, and travel fees.